# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* MARK J. O'CONNOR and SARA F. LEIBMAN, | |
| Plaintiffs, | Case No. 20-CV-2070 (TSC) |
| v. | **ORAL HEARING REQUESTED** |
| UNITED STATES CELLULAR CORPORATION, *et al.*, | |
| Defendants. | |

**DEFENDANTS UNITED STATES CELLULAR CORPORATION, USCC WIRELESS INVESTMENT, INC., AND TELEPHONE AND DATA SYSTEMS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DISMISSAL**

## TABLE OF CONTENTS

**Page**

Introduction ................................................................................................................1

Background ................................................................................................................2

    A.    Statutory and Regulatory Background .........................................................2

    B.    FCC Auction 97 and Advantage Spectrum's Partnership with U.S. Cellular ......................................................................................................4

    C.    The Prior Qui Tam Action .........................................................................5

    D.    The Present Qui Tam Action ......................................................................6

Standard of Review ....................................................................................................7

Argument ...................................................................................................................8

    I.    The Complaint Should Be Dismissed Under the Public Disclosure Bar ................8

        A.    Relators' Claims Are Based on Publicly Disclosed Information ...............10

            1.    Public Disclosures in FCC Filings ...............................................11

            2.    Public Disclosures in the Prior Qui Tam Amended Complaint .....................................................................................13

        B.    Relators Are Not An Original Source ......................................................15

    II.    Relators Fail to Plead Essential Elements of a False Claims Act Violation ..........16

        A.    Relators Have Not Plausibly Alleged That U.S. Cellular Made Any Actionable False Statements ....................................................................17

            1.    Advantage Did Not Make Any False Statements Of Fact About its Control by U.S. Cellular ...............................................18

            2.    Advantage Spectrum Did Not Make Any False Statements of Fact about its Affiliation with U.S. Cellular By Other Means ...........................................................................................19

        B.    Relators Have Not Plausibly Alleged That U.S. Cellular Acted With Scienter ..........................................................................................21

            1.    The Complaint essentially fails to allege scienter at all ................21

i

2.     The FCC's repeated, informed approval of this and similar DE arrangements precludes the scienter required by the Act ........22

3.     Reasonable disputes regarding the legal interpretation of statutory or regulatory obligations cannot form the basis for scienter ........................................................................................22

C.     Relators Have Not Plausibly Alleged That Any False Statement Was Material to the FCC's Approval Decision .......................................24

III.    The Complaint Should Be Dismissed with Prejudice............................................27

Conclusion ........................................................................................................................27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ......................................................................................................... 8, 25

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) .............................................................................................................. 7

*United States ex rel. Burke v. Record Press, Inc.,*
816 F.3d 878 (D.C. Cir. 2016) ........................................................................................... 22

*Cimino v. Int'l Bus. Machs. Corp.,*
2019 WL 4750259 (D.D.C. Sept. 30, 2019) ...................................................................... 27

*Corporate Systems Resources v. Washington Metropolitan Area Transit
Authority,*
31 F. Supp. 3d 124 (D.D.C. 2014) ..................................................................................... 27

*Covad Commc'ns Co. v. Bell Atl. Corp.,*
407 F.3d 1220 (D.C. Cir. 2005) ........................................................................................... 5

*Davis v. Bifani,*
2007 WL 1216518 (D. Colo. Apr. 24, 2007) ..................................................................... 20

*United States ex rel. Davis v. District of Columbia,*
679 F.3d 832 (D.C. Cir. 2012) ............................................................................................. 9

*United States ex rel. Doe v. Staples, Inc.,*
773 F.3d 83 (D.C. Cir. 2014) ............................................................................................. 11

*\*United States ex rel. Doe v. Staples, Inc.,*
932 F. Supp. 2d 34 (D.D.C. 2013), *aff'd,* 773 F.3d 83 (D.C. Cir. 2014) .................... 10, 14, 15

*United States ex rel. Folliard v. Comstor Corp.,*
308 F. Supp. 3d 56 (D.D.C. 2018), *reconsideration denied,* 2018 WL 5777085
(D.D.C. Nov. 2, 2018) ........................................................................................................... 9

*United States ex rel. Gardner v. Vanda Pharm., Inc.,*
2020 WL 2542121 (D.D.C. May 19, 2020) ........................................................................ 16

*In re Interbank Funding Corp. Sec. Litig.,*
629 F.3d 213 (D.C. Cir. 2010) ........................................................................................... 27

*United States ex rel. J. Cooper & Assocs., Inc. v. Bernard Hodes Grp., Inc.,*
422 F. Supp. 2d 225 (D.D.C. 2006) ............................................................................... 8, 15

*United States ex rel. Janssen v. Lawrence Mem'l Hosp.*,
　　949 F.3d 533 (10th Cir. 2020), *cert. denied*, 2020 WL 5883407 (Oct. 5, 2020) .................27

*United States ex rel. K&R Ltd. P'ship v. Mass. Hous. Fin. Agency*,
　　530 F.3d 980 (D.C. Cir. 2008) .................................................................................23

*United States ex rel. Kasowitz Benson Torres LLP v. BASF Corp.*,
　　929 F.3d 721 (D.C. Cir. 2019) .................................................................................16

*United States ex rel. Lamers v. City of Green Bay*,
　　168 F.3d 1013 (7th Cir. 1999) ..................................................................................21

*United States ex rel. Maxwell v. Kerr-McGee Oil & Gas Corp.*,
　　540 F.3d 1180 (10th Cir. 2008) ...............................................................................14

*United States ex rel. McBride v. Halliburton Co.*,
　　848 F.3d 1027 (D.C. Cir. 2017) ...............................................................................26

*Minn. Ass'n of Nurse Anesthetists v. Allina Health Sys. Corp.*,
　　276 F.3d 1032 (8th Cir. 2002) ..................................................................................14

*In re Nat. Gas Royalties*,
　　562 F.3d 1032 (10th Cir. 2009) ...............................................................................14

*United States ex rel. O'Connor v. U.S. Cellular Corp.*,
　　No. 15-cv-00370-L (W.D. Okla.) ..............................................................................20

*United States ex rel. Oliver v. Philip Morris USA Inc.*,
　　826 F.3d 466 (D.C. Cir. 2016) ..............................................................................9, 14

*United States ex rel. PCA Integrity Assocs., LLP v. NCO Fin. Sys., Inc.*,
　　2020 WL 686009 (D.D.C. Feb. 11, 2020) ...................................................................8

*Perry Capital LLC v. Mnuchin*,
　　864 F.3d 591 (D.C. Cir. 2017) .................................................................................22

*United States ex rel. Purcell v. MWI Corp.*,
　　807 F.3d 281 (D.C. Cir. 2015) .................................................................17, 18, 21, 23

*United States ex rel. Reed v. Keypoint Gov't Sols.*,
　　923 F.3d 729 (10th Cir. 2019) ............................................................................10, 15

*SEC v. RPM Int'l, Inc.*,
　　282 F. Supp. 3d 1 (D.D.C. 2017) ...........................................................................6, 11

*United States ex rel. Shea v. Verizon Commc'ns, Inc.*,
　　160 F. Supp. 3d 16 (D.D.C. 2015), *aff'd sub nom United States ex rel. Shea v.*
　　*Cellco P'ship*, 863 F.3d 923 (D.C. Cir. 2017) ...........................................................9

*SNR Wireless LicenseCo, LLC v. Federal Communications Commission*,
  868 F.3d 1021 (D.C. Cir. 2017) ........................................................................26

*\*United States ex rel. Springfield Terminal Ry. Co. v. Quinn*,
  14 F.3d 645 (D.C. Cir. 1994) ......................................................................9, 10, 11

*Sturdza v. United Arab Emirates*,
  2010 WL 97986 (D.D.C. Jan. 11, 2010), *aff'd*, 405 F. App'x 512 (D.C. Cir.
  2011) .................................................................................................................20

*United States ex rel. Swafford v. Borgess Med. Ctr.*,
  98 F. Supp. 2d 822 (W.D. Mich. 2000), *aff'd*, 24 F. App'x 491 (6th Cir. 2001) ...................19

*United States ex rel. Totten v. Bombardier Corp.*,
  380 F.3d 488 (D.C. Cir. 2004) .........................................................................22

*Winter ex rel. U.S. v. Gardens Reg'l Hosp. and Med. Ctr.*,
  953 F.3d 1108 (9th Cir. 2020) ........................................................................17

*United States ex rel. Findley v. FPC-Boron Emps.' Club*, 105 F.3d 675 (D.C. Cir.
  1997) ..................................................................................................................9

*United States v. The Boeing Co.*,
  825 F.3d 1138 (10th Cir. 2016) ......................................................................23

*United States v. Kellogg Brown & Root Servs., Inc.*,
  800 F. Supp. 2d 143 (D.D.C. 2011) .............................................................17, 18

*\*Universal Health Servs., Inc. v. United States ex rel. Escobar*,
  136 S. Ct. 1989 (2016) ..................................................................21, 24, 25, 26

*United States ex rel. Williams v. Martin-Baker Aircraft Co.*,
  389 F.3d 1251 (D.C. Cir. 2004) ........................................................................8

*Zukerman v. U.S. Postal Service*,
  961 F.3d 431 (D.C. Cir. 2020) .....................................................................7, 8

**Statutes**

*\*31 U.S.C. § 3729 .........................................................................................16, 21

*\*31 U.S.C. § 3730 ................................................................................... *passim*

47 U.S.C. § 301 ..................................................................................................2

47 U.S.C. § 309 ..................................................................................................2

**Rules**

Fed. R. Civ. P. 8 .................................................................................................20, 22, 25

Fed. R. Civ. P. 9 ..........................................................................................................8, 25

Fed. R. Civ. P. 12 ..............................................................................................................7

**Regulations & Rulemakings**

*47 C.F.R. 1.2110 ...................................................................................... *passim*

47 C.F.R. § 1.2111 .............................................................................................................3

*In re Implementation of Section 309(j) of the Communications Act—Competitive
Bidding*,
9 FCC Rcd. 5532 (1994) ..............................................................................................3

*Updating Competitive Bidding Rules*, 80 Fed. Reg. 56764 (Sept. 18, 2015) .................2

**Agency Adjudications**

*In re Stratos Global Corp.*,
22 FCC Rcd. 21328 (2007) .........................................................................................23

**Other Authorities**

5A Wright & Miller § 1326 (4th ed.) ............................................................................20

Deloitte, *A Roadmap to Consolidation*: *Identifying a Controlling Financial
Interest* (2019), *available at* https://www2.deloitte.com/content/dam/Deloitte/
us/Documents/audit/ASC/Roadmaps/us-aers-a-roadmap-to-consolidation-
identifying-a-controlling-financial-interest.pdf .......................................................13

*Asterisks indicate those cases or authorities on which counsel chiefly relies.  Local Civ. R. 7(a).

## INTRODUCTION

This False Claims Act ("FCA") action, in which the Department of Justice ("DOJ") has declined to intervene, must be dismissed. It is based on allegations and transactions that have been public for years and of which the government has long been fully aware. The Relators are not company insiders purporting to "blow the whistle" on undisclosed conduct; rather, they are private telecom lawyers whose claims are based on agreements publicly filed with the Federal Communications Commission ("FCC") and who do nothing more than reiterate and extend allegations of a supposedly fraudulent scheme that was alleged in an earlier *qui tam* suit more than a decade ago. That prior suit was a failure—voluntarily dismissed after both the FCC and DOJ considered its allegations fully and took no action—and federal law does not permit Relators a new bite from that rotten apple. Their Complaint here, ECF No. 2, is parasitic of the public record, and it must be dismissed under the FCA's public-disclosure bar, 31 U.S.C. § 3730(e)(4).

The Complaint also fails because it does not adequately allege the essential FCA elements of falsity, scienter, and materiality. It does not plead that Defendants made *any* false statement, let alone one that misrepresented an objective fact. Indeed, the challenged statements—certifications that certain businesses were qualified to receive small-business subsidies to participate in FCC spectrum auctions—were factually true, legally reasonable, and based on a series of agreements filed *in full* with FCC. Nor do Relators present well-pleaded allegations that those certifications were knowingly or even recklessly false. And it is clear from the FCC's own conduct that *if* any of the statements Relators challenge were false, they were not material to the Agency's decision to grant the benefits at issue. The FCC had before it all relevant facts underlying the statements and it *still* granted the challenged licenses, and indeed has granted other licenses to the Defendants under similar circumstances.

1

Each of these defects in the Complaint provides an independent basis for dismissal. This case is ultimately about policy disagreements that Relators purport to have with the FCC's licensing and enforcement decisions; it is categorically not about any fraud on the government. A policy disagreement cannot establish an FCA violation. U.S. Cellular[1] therefore moves to dismiss Relators' claims with prejudice.

## BACKGROUND

### A.    Statutory and Regulatory Background

Under the Communications Act, the FCC uses competitive auctions to allocate licenses to use particular cellular radio frequencies, known as spectrum, in specific geographic regions. *See* 47 U.S.C. § 301. Because demand for cellular services is high and the supply of spectrum is limited, prices for commercial licenses reach into the hundreds of millions of dollars. In order to encourage smaller businesses to participate in the wireless spectrum market, Congress and the FCC created the Designated Entity ("DE") Program, which provides subsidies to qualifying small businesses that participate in the auctions. *See id.* § 309(j)(4)(D).

As relevant here, the DE Program provides eligible businesses with "bidding credits (*i.e.*, payment discounts)" against the purchase price of licenses they win at auction. 47 C.F.R. § 1.2110(f)(1) (2014).[2] To be eligible for bidding credits, a business must have gross revenues below thresholds set by the FCC. *Id.* § 1.2110(f)(2).

---

[1] "U.S. Cellular" in this memorandum refers to defendants United States Cellular Corporation, USCC Wireless Investment, Inc., and Telephone and Data Systems, Inc. Telephone and Data Systems, Inc. owns approximately 80 percent of the equity of United States Cellular Corporation, which owns 100 percent of the equity of USCC Wireless Investment, Inc. USCC Wireless Investment, Inc. is a limited partner and 90% equity owner of defendant Advantage Spectrum.
[2] This case is governed by the pre-2015 regulations, which were amended in late 2015. *See Updating Competitive Bidding Rules*, 80 Fed. Reg. 56764 (Sept. 18, 2015).

In calculating eligibility, DE applicants must aggregate their own revenues with other "attributable" revenues and holdings. Specifically, under the regulations, DEs must aggregate revenues of "affiliates," "controlling interests," the "affiliates of [their] controlling interests," and "the entities with which [they have] an attributable material relationship." *Id.* § 1.2110(b)(1)(i)-(ii). Ownership interests that fall outside the definition of "attributable" are not required to be aggregated.

Importantly, these regulations are *not* intended to prevent large wireless companies from investing in DEs. Just the opposite—the FCC recognized that "the primary impediment to participation by designated entities is lack of access to capital," and it explained that the purpose of bid credits is not to bring auction pricing down to a level DEs could afford on their own, but to "encourage large companies to invest in [those] entities." *In re Implementation of Section 309(j) of the Communications Act—Competitive Bidding*, 9 FCC Rcd. 5532 ¶¶ 10, 15 (1994).

Using a two-step application process consisting of a pre-auction "short-form" application (FCC Form 175) and a post-auction "long-form" application for successful bidders (FCC Form 601), the FCC exhaustively reviews a DE's eligibility for small business benefits. The FCC has also established a number of rules with which DEs must comply after they are granted a license. Those rules disincentivize DEs from immediately transferring their subsidized licenses to businesses that would have been ineligible to obtain the subsidies in the first instance. If, within five years of initial license issuance, a DE transfers or assigns its license to, or enters into an attributable relationship with, an entity that is not eligible for DE treatment, the FCC's "unjust enrichment rule" requires the DE to pay back some of the subsidies it received. 47 C.F.R. § 1.2111(b). The rules also require the DE to submit an annual report which, *inter alia*, requires that the DE certify its continuing eligibility for the auction credits. Crucially, all the submissions

required to show a DE's initial and continuing eligibility for benefits—including its Form 175, its Form 601, and its annual reports—are *publicly filed* with the FCC. *See generally* FCC, Universal Licensing System, https://www.fcc.gov/wireless/systems-utilities/universal-licensing-system#searching (searchable public databases of licenses and license applications).

### B.    FCC Auction 97 and Advantage Spectrum's Partnership with U.S. Cellular

U.S. Cellular partnered with the other Defendants in this case to support Advantage Spectrum's participation as a DE in FCC Auction 97. Compl. ¶ 43. Under that partnership, USCC Wireless Investment, Inc. was the limited partner in Advantage Spectrum, L.P. and owned 90% of its equity. Frequency Advantage, L.P. was the controlling general partner and owned 10% of Advantage Spectrum's equity. *Id.* ¶¶ 16, 19. Frequency Advantage, in turn, was owned by its general partner, William Vail, and its limited partner, Allison DiNardo. Compl. ¶ 16.[3] A series of partnership, service, and financing agreements defined the relationships among the Defendants, and the terms on which they would support Advantage Spectrum's participation in Auction 97. *See infra* at 11-12.

Advantage Spectrum submitted its FCC Form 175 short-form application for Auction 97 on November 11, 2014,[4] and was the high bidder on 124 licenses. Compl. ¶ 6. Advantage Spectrum received bid credits as a "very small business" but did not receive the actual licenses at that time. *Id.* ¶ 10.

Nearly one year *after* Relators filed their Complaint in this case, Advantage Spectrum submitted its final amended Form 601 long-form license application to the FCC on March 31,

---

[3] Vail and DiNardo held their respective stakes in Frequency Advantage through wholly-owned corporations. Compl. ¶ 16. For simplicity, this brief refers only to Vail and DiNardo.

[4] Relators refer to this document repeatedly in the Complaint, *see* Compl. ¶¶ 62, 78 & 93, but did not attach it as an exhibit. The document is publicly available and is attached as Volpe Decl. Ex. H.

2016.[5] After reviewing that long-form license application and supporting documents, the FCC on

July 5, 2016, granted the licenses Advantage Spectrum won in Auction 97.[6]

### C.    The Prior *Qui Tam* Action

On May 2, 2007, a Washington, D.C. law firm named Lampert & O'Connor filed in this

Court an FCA *qui tam* complaint against U.S. Cellular and DiNardo (among other defendants),

which they amended about one year later. *See* Amended Complaint, *Lampert & O'Connor, P.C.*

*v. Carroll Wireless, L.P.*, Docket No. 11, No. 1:07-cv-800 (JDB) (D.D.C. April 24, 2008) ("Prior

*Qui Tam* Amended Complaint") (attached as Volpe Decl. Ex. A).[7] Mark J. O'Connor, one of the

two Relators in the present case, was an attorney at Lampert & O'Connor at that time, and he

represented the firm in that case. However, neither O'Connor nor Sara F. Leibman (the other

Relator in the present case) was a relator in, or otherwise a party to, the prior suit.

The Prior *Qui Tam* Amended Complaint pressed the same core allegations, against many

of the same defendants, as Relators do in the present action. *See* Prior *Qui Tam* Amended

Complaint ¶¶ 15-28. Specifically, it alleged the same central theory of fraud—that participants in

FCC auctions falsely certified themselves as eligible for DE treatment when they were in fact

controlled by U.S. Cellular. *See, e.g.*, Prior *Qui Tam* Amended Complaint ¶¶ 2-10, 49, 54, 56–57,

59, 60, 62, 64–68. The Prior *Qui Tam* Amended Complaint itself alleged that the actions of the

specific Defendants in the challenged auctions were not unique, but rather part of a broader

---

[5] Relators refer to this document throughout the Complaint, *see* Compl. ¶¶ 31, 56, 72–73, 78, 80 & 93, but did not attach it as an exhibit. The document is publicly available and is attached as Volpe Decl. Ex. I.
[6] *See* Administrative History of FCC File No. 0006668843, *available at* https://wireless2.fcc.gov/UlsApp/ApplicationSearch/applAdminHistory.jsp?applID=9573766 (noting grant of application on July 5, 2016).
[7] The Court may take judicial notice of this federal court record. *Covad Commc'ns Co. v. Bell Atl. Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005).

"*modus operandi*" by U.S. Cellular. *See* Prior *Qui Tam* Amended Complaint ¶¶ 9, 70. That very same "*modus operandi*" is what Relators allege and challenge here. *See* Compl. ¶ 87.

Both DOJ and the FCC Office of Inspector General ("OIG") investigated the allegations in the Prior *Qui Tam* Amended Complaint, and the FCC asked one DE, King Street Wireless, L.P., to address the prior relator's allegations while King Street's license applications were still pending before the FCC. King Street's public response, published on the FCC docket, is filed with this memorandum. *See* Response to Inquiry from the Wireless Telecomms. Bureau, *In re: Applications of King Street Wireless, L.P. for Licenses in the 700 MHz Lower Band*, File No. 0003379814 (May 8, 2009) (attached as Volpe Decl. Ex. B).[8] DOJ and the FCC OIG closed their investigations without taking any action against either U.S. Cellular or the defendant DEs, and on October 13, 2009, DOJ formally declined to intervene in the Prior *Qui Tam* Action. After the FCC granted King Street's spectrum licenses, Lampert & O'Connor voluntarily dismissed the Prior *Qui Tam* Action in January 2010.

### D.     The Present *Qui Tam* Action

Relators filed their Complaint in this case on May 11, 2015, a month after they filed the Complaint in Case No. 20-cv-2071, which raises the very same types of claims as here against U.S. Cellular and other DEs. As alleged in the Prior *Qui Tam* Action, Relators here claim Defendants falsely claimed bid credits for an entity purportedly controlled by U.S. Cellular, Compl. ¶ 46–47 (Count One); that they submitted false records and false statements in order to deceive the government into granting the bid credits and spectrum licenses, Compl. ¶ 47 (Count Two); that they unlawfully decreased their obligation to pay the full amount of their winning spectrum license bids by falsely claiming to be eligible for bid credits, Compl. ¶ 48 (Count

---

[8] The Court may take judicial notice of this document, which was publicly filed with the FCC. *See, e.g.*, *SEC v. RPM Int'l, Inc.*, 282 F. Supp. 3d 1, 10 n.4 (D.D.C. 2017).

Three); and that they conspired with one another to commit the violations alleged in Counts One through Three, Compl. ¶ 48-49 (Count Four).

Neither Relator was ever an insider to the alleged scheme, or played any part in the facts giving rise to the current Complaint. Rather, they are private citizens who claim that public records show misconduct in Auction 97. At bottom, they simply disagree with the FCC Wireless Telecommunications Bureau, which granted the challenged credits and licenses; with the FCC OIG, which investigated near-identical allegations against many of the Defendants in the two cases and took no action; and with DOJ, which has now declined to intervene in three *qui tam* lawsuits about Relators' alleged "scheme."[9] Relators' obsession has not persuaded the government. Indeed, more than a year after Relators filed the present case launching their attack on Defendants' conduct in Auction 97, the FCC granted Advantage Spectrum the licenses—and credits—it won in Auction 97.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12, a complaint must be dismissed unless it contains factual allegations sufficient "to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also, e.g.*, *Zukerman v. U.S. Postal Service*, 961 F.3d 431, 441 (D.C. Cir. 2020) ("[T]o survive . . . [a] motion to dismiss for failure to state a claim . . . , [the] complaint [must] 'contain[] sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."'"). Although the Court "assume[s] the truth" of the Complaint's

---

[9] In addition to declining to intervene in both the present action and the Prior *Qui Tam* Action, DOJ also declined to intervene in another *qui tam* action that Relators here filed just before they filed the present action, and which was transferred from the Western District of Oklahoma to this Court along with the present action. *See* Notice of Election to Decline Intervention, *United States ex rel. O'Connor v. U.S. Cellular Corp.*, No. 20-cv-2071 (TSC), ECF No. 47.

allegations and draws all reasonable inferences in favor of the plaintiff, *Zukerman*, 961 F.3d at

441, bare legal conclusions in a complaint are not entitled to the assumption of truth; rather,

"they must be supported by factual allegations" to state a claim for relief. *Ashcroft v. Iqbal*, 556

U.S. 662, 679 (2009).

For claims sounding in fraud, like those under the FCA, Rule 9(b)'s particularity standard

applies. *United States ex rel. Williams v. Martin-Baker Aircraft Co.,* 389 F.3d 1251, 1256 (D.C.

Cir. 2004). FCA claims comply with Rule 9(b) when they plead "the who, what, when, where,

and how with respect to the circumstances of the fraud." *United States ex rel. PCA Integrity*

*Assocs., LLP v. NCO Fin. Sys., Inc.*, 2020 WL 686009, at *21 (D.D.C. Feb. 11, 2020).

## ARGUMENT

Relators' Complaint should be dismissed for two reasons. First, the allegations and

transactions at the heart of Relator's Complaint were publicly disclosed before the Complaint

was filed, and Relators are not an original source under the FCA. *See* 31 U.S.C. § 3730(e)(4).

Second, the Complaint fails to plead, either plausibly or with particularity, key elements of

Relators' FCA claims, including objective falsity, scienter, and materiality.

## I.    The Complaint Should Be Dismissed Under the Public Disclosure Bar[10]

The FCA's public disclosure bar prohibits relators from bringing "parasitic" lawsuits

based—even in part—on information already in the public domain. *United States ex rel. J.*

*Cooper & Assocs., Inc. v. Bernard Hodes Grp., Inc.*, 422 F. Supp. 2d 225, 235 n.10 (D.D.C.

2006) ("The FCA's [public disclosure] bar precludes suits by 'individuals who base *any part of*

*their allegations* on publicly disclosed information.'"). "The court shall dismiss" *qui tam* claims

---

[10] The public disclosure bar applies to any *qui tam* "action or claim" brought under the FCA's
enforcement provisions, and therefore to each of Relators' causes of action. *See* 31 U.S.C.
§ 3730(e)(4)(A).

"if *substantially* the same allegations or transactions as alleged in the action or claim were publicly disclosed" unless the relator qualifies as an "original source" of the information. 31 U.S.C. § 3730(e)(4)(A), (B) (emphasis added).[11]

"Substantially the same" does not mean "identical"—the bar is triggered where "the relator . . . describe[s] allegations or transactions substantially similar to those in the public domain." *United States ex rel. Findley v. FPC-Boron Emps.' Club*, 105 F.3d 675, 682 (D.C. Cir. 1997). The question is whether "the government already ha[d] enough information 'to investigate the case and to make a decision whether to prosecute' or whe[ther] the information 'could at least have alerted law-enforcement authorities to the likelihood of wrongdoing.'" *United States ex rel. Davis v. District of Columbia*, 679 F.3d 832, 836 (D.C. Cir. 2012). If that standard is met, the public disclosure bar applies even if Relators do provide some new information. "Merely providing 'more specific details' about what happened does not negate substantial similarity." *United States ex rel. Oliver v. Philip Morris USA Inc.*, 826 F.3d 466, 472 (D.C. Cir. 2016). Nor does "a relator's ability to reveal [additional] specific instances of fraud where the general practice has already been publicly disclosed." *Id.* Finally, the public disclosures need not allege any False Claims Act violations. It is enough to reveal "the critical elements of the fraudulent transactions themselves." *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 654 (D.C. Cir. 1994). The D.C. Circuit has framed the inquiry in terms of a formula: "[I]f X+Y=Z, Z represents the allegation of fraud and X and Y represent its essential elements. In

---

[11] The public disclosure bar was amended in 2010, and the amended version applies to claims "based on post-March 23, 2010 conduct." *United States ex rel. Shea v. Verizon Commc'ns, Inc.*, 160 F. Supp. 3d 16, 24 (D.D.C. 2015), *aff'd sub nom United States ex rel. Shea v. Cellco P'ship*, 863 F.3d 923 (D.C. Cir. 2017). Where the former version of the statute imposed a jurisdictional bar, the 2010 amendments "merely deprive[] the plaintiff of his claim." *Id.* at 24. The relevant analysis is unchanged. *See, e.g. United States ex rel. Folliard v. Comstor Corp.*, 308 F. Supp. 3d 56, 71-72 (D.D.C. 2018), *reconsideration denied,* 2018 WL 5777085 (D.D.C. Nov. 2, 2018).

order to disclose the *transaction* publicly, the combination of X and Y must be revealed, from which readers or listeners may infer Z, *i.e.* the conclusion that fraud has been committed." *Id.*

"Public disclosures" for purposes of the Act include disclosures made "in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party," in a "Federal report, hearing, audit, or investigation," and in the "news media." 31 U.S.C. § 3730(e)(4)(A)(i)–(iii). Because the Government or a relator acting as its agent is a party to every *qui tam* action, a filed *qui tam* complaint is a public disclosure. *Id.* § 3730(e)(4)(A)(i); *see United States ex rel. Reed v. Keypoint Gov't Sols.*, 923 F.3d 729, 752 (10th Cir. 2019).

To be an original source under the FCA, in relevant part, the relator must have "knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions," and have "voluntarily provided the information to the Government before filing" a *qui tam* action. 31 U.S.C. § 3730(e)(4)(B)(2)*.* In other words, "a relator is not an original source 'simply because he conducted some collateral research and had background knowledge that allowed him to understand the significance of publicly disclosed information." *United States ex rel. Doe v. Staples, Inc.*, 932 F. Supp. 2d 34, 41 (D.D.C. 2013), *aff'd*, 773 F.3d 83 (D.C. Cir. 2014).[12]

A.      **Relators' Claims Are Based on Publicly Disclosed Information**

The gravamen of Relators' Complaint is that Advantage Spectrum did not qualify as a DE because it was controlled by U.S. Cellular, but that Defendants obtained bid credits and spectrum licenses by falsely certifying that it did. However, the key materials underlying those

---

[12] The original source exception may also apply where a relator establishes that, "[p]rior to a public disclosure . . . [he or she] has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based." 31 U.S.C. § 3730(e)(4)(B). Relators, however, do not allege that they made such a disclosure. *See* Compl. ¶ 24 (alleging only that they made a disclosure to the government "before filing this *qui tam* action").

allegations—partnership and other agreements that supposedly gave U.S. Cellular power to control Advantage Spectrum—had been publicly filed with the FCC before this case began. Likewise, Relators' theory of fraud—U.S. Cellular's purported "*modus operandi*" of setting up DEs that it purportedly controlled—is identical to the one alleged years ago in the Prior *Qui Tam* Amended Complaint. *See* Compl. ¶ 87. Put in the D.C. Circuit's terms, this is a case where both "X+Y"—the alleged fraud's "underlying factual elements"—and "Z"—"the allegation of fraud itself"—were public knowledge years before Relators sued. *See United States ex rel. Doe v. Staples, Inc.*, 773 F.3d 83, 86 (D.C. Cir. 2014).

### 1.     Public Disclosures in FCC Filings

To allege that U.S. Cellular controlled Advantage Spectrum, Relators' Complaint principally relies on regulatory documents that Defendants publicly filed with the FCC.[13]

First, Relators rely on five agreements to show that U.S. Cellular and defendant Allison DiNardo managed and had the power to control Advantage Spectrum. But each of those agreements was provided in full to FCC—as recorded on the agency's public docket and subject to judicial notice—on March 20, 2015, before Relators filed their Complaint on May 11, 2015:

- **The Frequency Advantage, L.P. partnership agreement** defined the relationship between DiNardo (as limited partner) and defendant William Vail (as general partner) regarding their joint ownership of Frequency Advantage. It provided that DiNardo would contribute "services" that included "establish[ing] a bidding room" and "assist[ing] in the conduct [of] the bidding activities," and limited Vail's ability to make certain major partnership decisions without DiNardo's agreement. Compl. ¶¶ 60–61; Frequency Advantage, L.P. Partnership Agreement (Volpe Decl. Ex. C) §§ 3.4, 5.3, 8.1, 9.1.

---

[13] Regulatory filings are public disclosures under the FCA, and an FCC auction is a "Federal . . . administrative hearing in which the Government or its agent is a party" under Section 3730(e)(4)(A)(i). *See United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 652 (D.C. Cir. 1994). The records of such a proceeding are publicly-filed and subject to judicial notice. *See, e.g., RPM Int'l,* 282 F. Supp. 3d at 10 n.4.

- **The Advantage Spectrum, L.P. partnership agreement** defined the relationship between Frequency Advantage (as general partner) and U.S. Cellular (as limited partner) with regard to their joint ownership of Advantage Spectrum. The agreement required U.S. Cellular's approval for certain significant decisions, charged Frequency Advantage with managing the partnership, and fixed the broad outlines of Advantage's business plan. Compl. ¶¶ 74–75, 77, 91–92; Advantage Spectrum, L.P. Partnership Agreement (Volpe Decl. Ex. D) §§ 5.3, 5.5, 5.6, 9.1(a), 9.5.

- **The "Bidding Protocol"** defined how Advantage Spectrum would conduct its bidding during Auction 97. It provided for a "Bidding Council" made up of Vail, DiNardo, and a U.S. Cellular representative and required the Bidding Council's authorization before Vail could exceed either the per-license or overall bid limits set out in the Protocol. Compl. ¶¶ 58–59; Bidding Protocol (Volpe Decl. Ex. E) §§ 2, 4–6.

- **The "Frequency Loan and Security Agreement" and the "Advantage Loan and Security Agreement"** governed U.S. Cellular's extension of credit to Frequency Advantage for the purpose of financing its equity contribution to Advantage Spectrum. Compl. ¶ 87; Frequency Advantage Loan and Security Agreement (Volpe Decl. Ex. F) § 1.01; Advantage Spectrum Loan and Security Agreement (Volpe Decl. Ex. G) § 1.01.

These documents – on which Relators base claims making up nearly the entirety of their Complaint – were publicly filed with the FCC and were public disclosures under the FCA. *See, e.g.*, Compl. ¶¶ 9, 16, 18, 37, 56, 58–61, 64–65, 67, 72–78, 80, 82, 84, 87 & 91–92.

Thus, the core of the Complaint—U.S. Cellular's relationship with Advantage Spectrum and the existence of agreements under which Relators contend that Advantage Spectrum was subject to U.S. Cellular's control—was no secret. It was all documented in filings with the FCC.[14] And it is no surprise that these FCC filings are precisely where Relators got the

---

[14] Relators also rely on an SEC filing by U.S. Cellular, alleging that "[a]s U.S. Cellular stated in its 2014 annual report to shareholders, U.S. Cellular 'anticipates benefiting from or absorbing a majority of [Advantage's] expected gains or losses' and 'it has a controlling financial interest and is the primary beneficiary' in Advantage." Compl. ¶ 90 (second alteration in original).

information: Relators have no other basis to know facts as they were not insiders at all. Rather they are private telecom lawyers, Compl. ¶¶ 11–12, who appear to have merely read documents that were in the public record. The allegations and transactions in their Complaint are thus not only substantially similar to, but are *precisely*, what was disclosed in those public filings.

<h3 style="text-align:center">2.    Public Disclosures in the Prior *Qui Tam* Amended Complaint</h3>

Relators' claims are also barred because they challenge the same core "scheme" that was disclosed in the Prior *Qui Tam* Action. The Prior *Qui Tam* Action alleged—just like this one— that U.S. Cellular caused entities it controlled to certify falsely that they were eligible for bid credits and other DE benefits.

The only real difference between this case and the Prior *Qui Tam* Action is that this case focuses on an FCC auction that occurred *after* those at issue in the Prior *Qui Tam* Action. U.S. Cellular's central role in the alleged scheme and the core conduct, however, are essentially identical. Indeed, the Complaint in the present case specifically asserts that the conduct it alleges is part of a continuing pattern that includes the conduct at issue in the Prior *Qui Tam* Amended

---

At the threshold, this argument inappropriately conflates technical accounting rules used for SEC reporting with the FCC's test for control, which serves an entirely different purpose. Under the SEC's accounting rules, "controlling financial interest" (along with the synonymous term "primary beneficiary") is a term of art indicating only that one legal entity has consolidated another onto its balance sheet. Deloitte, *A Roadmap to Consolidation*: *Identifying a Controlling Financial Interest* 14, 19 (2019), *available at* https://www2.deloitte.com/content/dam/Deloitte/us/Documents/audit/ASC/Roadmaps/us-aers-a-roadmap-to-consolidation-identifying-a-controlling-financial-interest.pdf.

Under the complex rules governing such consolidation, one entity may have a "controlling financial interest" in another for accounting purposes without possessing the actual power to control as required under the FCC rules. For example, when related parties share the power to direct an entity's activities (as U.S. Cellular and King Street's general partner did with respect to King Street), such that neither of them has actual control, one may nevertheless be deemed the entity's "controlling financial interest" if (as U.S. Cellular did here) it has the greatest exposure to the entity's gains and losses. *Id.* at 225-26, 228-29. But if Relators *are* correct that these statements show control, they are fatal to Relators claim because SEC filings are public documents.

Complaint. *See* Compl. ¶¶ 51-54. The present case merely alleges another example of what the Prior *Qui Tam* Action pled was the USCC Defendants' "*modus operandi*."[15] Compl. ¶ 87.

It is irrelevant that the Relators' allegations cover a different auction that occurred after those challenged in the Prior *Qui Tam* Amended Complaint. The law is clear that claims may be substantially similar to public disclosures, thus triggering the bar, even where a relator "provid[es] more specific details" about a known scheme, *Oliver*, 826 F.3d at 472, or "had background knowledge that allowed him to understand the significance of publicly disclosed information," *Doe*, 932 F. Supp. 2d at 41. And the D.C. Circuit holds specifically that "a relator's ability to reveal [additional] specific instances of fraud where the general practice has already been publicly disclosed is insufficient to prevent operation of the [public disclosure] bar." *Oliver*, 826 F.3d at 472; *see also United States ex rel. Maxwell v. Kerr-McGee Oil & Gas Corp.*, 540 F.3d 1180, 1187 (10th Cir. 2008) ("a subsequent lawsuit can be 'based upon' allegations made in a prior lawsuit even when the two suits cover different periods of time, [if] the 'essential claim[s]' [are] substantially 'similar'" (second alteration in original)). That is precisely the case here.

---

[15] Even if Relators were to argue that Relator O'Connor was essentially the relator in the Prior *Qui Tam* Action – an argument that would be strikingly at odds with the fact that in the earlier case O'Connor affirmatively chose to be the attorney for the relator law firm and not the relator himself—that would not preclude the Prior *Qui Tam* Action from qualifying as a dispositive public disclosure. The statutory definition of "original source" "does not distinguish between those who first bring a claim to light and others who later make the same discovery independently," *Minn. Ass'n of Nurse Anesthetists v. Allina Health Sys. Corp.*, 276 F.3d 1032, 1048 & n.11 (8th Cir. 2002), and there is "no basis . . . for such an exception" to the public disclosure bar even for prior *qui tam* actions by the *same* relator, *In re Nat. Gas Royalties*, 562 F.3d 1032, 1039 n.3 (10th Cir. 2009).

Thus, the Prior *Qui Tam* Amended Complaint undoubtedly provided the government with the "essence of" the allegations brought here and was "sufficient to set the government on the trail of the alleged fraud." *Reed*, 923 F.3d at 744. That is all the public disclosure bar requires.

### B.    Relators Are Not An Original Source

Because the core of Relators' Complaint was publicly disclosed prior to filing, Relators must qualify as an "original source" under the FCA in order to maintain this action. 31 U.S.C. § 3730(e)(4)(B). But Relators' only allegation that they were an original source is the conclusory statement that "[t]he Relators have independent material knowledge of the information on which the allegations are based and have voluntarily provided the information to the Government before filing this *qui tam* action based on that information." Compl. ¶ 24.

The Complaint contains no other factual allegations showing Relators are an original source. For example, it does not allege when or how Relators obtained the information underlying the Complaint. It also pleads no facts regarding what information they voluntarily provided to the government, to which agency or officer they provided it, or even when they did so. Fundamentally, Relators provide nothing more than a recitation of the legal standard for being an original source—and this is not enough to avoid dismissal. *Staples*, 932 F. Supp. 2d at 41–42 (relator "failed to 'allege specific facts—as opposed to mere conclusions—showing exactly how and when he . . . obtained direct and independent knowledge of the fraudulent acts alleged in the complaint,'" and therefore "has not satisfied the original source exception" (quoting *In re Nat. Gas Royalties*, 562 F.3d 1032, 1045 (10th Cir. 2009))); *see also J. Cooper & Assocs.*, 422 F. Supp. 2d at 237 ("The court, therefore, cannot accept the plaintiff's conclusory

and unsupported statement that it is the original source of the information contained in the OIG Report.").[16]

Because the facts underlying the alleged scheme and even the alleged scheme itself were matters of public record before the Complaint was filed, and Relators are not original sources of this information, Relators claims should be dismissed under the public disclosure bar.

## II.    Relators Fail to Plead Essential Elements of a False Claims Act Violation

Each of the FCA counts[17] in Relators' Complaint shares three common elements: they require Relators to plead facts demonstrating that Defendants (1) made a false statement of objective fact, (2) with scienter, (3) that was material to the government's decision to pay. *See United States ex rel. Gardner v. Vanda Pharm., Inc.*, 2020 WL 2542121, at \*6-7 (D.D.C. May 19, 2020) ("an FCA claim requires the trifecta of falsity, materiality, and scienter"); *see also United States ex rel. Kasowitz Benson Torres LLP v. BASF Corp.*, 929 F.3d 721, 728 (D.C. Cir. 2019)

---

[16] Relators' handful of other allegations add nothing material to their extensive discussion of the partnership, bidding, and financing agreements. Relators' alleged "surveillance" of Advantage Spectrum's participation in Auction 97 revealed only that it took place in a bidding room provided by DiNardo (as described in the Frequency LP Agreement), *see* Compl. ¶ 60; that one of DiNardo's employees provided "bidding services" (as expressly described by that same contract), Compl. ¶¶ 60, 62; that it was attended by the Bidding Council (as described in the Bidding Protocol), Compl. ¶ 60; and that Vail is not close with his landlord, Compl. ¶ 64. Similarly, the description of Advantage Spectrum in U.S. Cellular's 2014 Annual Report, Compl. ¶ 88—that U.S. Cellular is ultimately responsible for Advantage Spectrum's losses and has "shared" control of certain major decisions—is fully consistent with the agreements filed with FCC, which disclosed that U.S. Cellular held 90% of Advantage Spectrum's equity and was required to approve the same actions listed in the Annual Report. *Compare* U.S. Cellular 2014 Annual Report at 66, https://s24.q4cdn.com/321867585/files/doc_financials/archive/2014_United_States_Cellular_AR_v001_y40pvz.pdf, *with* Advantage Spectrum, L.P. Agreement (Ex. D) §§ 3.1, 5.2, 5.3. Nor do Relators add anything material by speculating as to the contents of a "management services agreement" that they have never seen. Compl. ¶ 78.

[17] *See* Compl. Count One (false claims for payment under § 3729(a)(1)(A)); *id.* Count Two (knowingly making false statements material to a false claim under § 3729(a)(1)(B)); *id.* Count Three (knowingly making false statements material to an obligation to pay the Government under § 3729(a)(1)(G)); *id.* Count Four (conspiracy under § 3729(a)(1)(C)).

(conspiracy liability depends on "establish[ing] an underlying FCA violation"). The Complaint here should be dismissed because Relators have failed adequately to plead any of these three elements.

### A. Relators Have Not Plausibly Alleged That U.S. Cellular Made Any Actionable False Statements

"[T]he FCA does not reach an innocent, good-faith mistake about the meaning of an applicable rule or regulation. Nor does it reach those claims made based on reasonable but erroneous interpretations of a defendant's legal obligations." *United States ex rel. Purcell v. MWI Corp.*, 807 F.3d 281, 287–88 (D.C. Cir. 2015); *cf. United States v. Kellogg Brown & Root Servs., Inc.*, 800 F. Supp. 2d 143, 155 (D.D.C. 2011) (the FCA reaches both factual and legal *falsity*). Here, Relators allege that *as a legal matter* U.S. Cellular's revenues were attributable to Advantage Spectrum, rendering it ineligible for credits, and that Defendants' representations to the contrary were therefore *legally* false. But even claims based on so-called "legally false" certifications ultimately depend on showing that the submissions "implie[d] the existence of *facts* . . . that d[id] not exist." *See Winter ex rel. U.S. v. Gardens Reg'l Hosp. and Med. Ctr.*, 953 F.3d 1108, 1119 (9th Cir. 2020) (emphasis added) (citing *United States ex rel. Polukoff v. St. Mark's Hosp.*, 895 F.3d 730, 742–43 (10th Cir. 2018); *United States v. AseraCare, Inc.*, 938 F.3d 1278, 1297 (11th Cir. 2019)). The Complaint make no such showing.

Relators assert two primary theories of falsity, both aimed at establishing that U.S. Cellular's revenues were legally attributable to Advantage Spectrum, rendering it ineligible for bid credits (and its corresponding certifications false). First, Relators assert that U.S. Cellular had such pervasive control over Advantage Spectrum that FCC rules required its revenues to be counted as Advantage's. Compl. ¶¶ 66-95; *see also* 47 C.F.R. 1.2110(c)(2)(i) ("[C]ontrolling interest includes . . . entities with . . . *de facto* control of the applicant."). Second, Relators allege

that Advantage Spectrum was affiliated with DiNardo—because she controlled it as a *de facto*

manager, Compl. ¶¶ 56-62—and with another DE partnership called King Street—because

Advantage Spectrum used King Street's office space during Auction 97, Compl. ¶¶ 63-65.

Relators further allege that DiNardo and King Street were in turn affiliated with U.S. Cellular.

Compl. ¶¶ 46-54. Accordingly, they argue, Advantage Spectrum was affiliated with U.S. Cellular.

Compl. ¶ 63. However, under neither theory does Relator allege that any Defendant made an

objectively false statement.

### 1.    Advantage Did Not Make Any False Statements Of Fact About its Control by U.S. Cellular

Relators' theory that U.S. Cellular was a "controlling interest" of Advantage Spectrum for

purposes of the FCC DE rules is based entirely on the formal legal agreements discussed *supra* at

Part I.A.1. However, Advantage Spectrum disclosed every agreement that was the basis of this

alleged control and provided all of them *in full* to the FCC. Importantly, Relators do not allege

that Advantage Spectrum concealed any agreement from the FCC, or that the agreements they

disclosed misrepresented the truth of the relationships among the parties. Rather, Relators allege

that the agreements showed on their face that Advantage Spectrum's conclusion as to its

eligibility for DE benefits was wrong. In other words, Relators do not complain that Advantage

concealed or misstated any facts. Relators only point is that Advantage (and the FCC) reached

the wrong legal conclusion based upon those facts.

It is settled law, however, that disagreements over legal interpretations do not give rise to

FCA liability. *Purcell*, 807 F.3d at 287; *cf. Kellog Brown & Root*, 800 F. Supp. 2d at 155 (holding

that "if every dispute involving contractual performance were to be transformed into an FCA

suit," the statute's distinct application to fraud on the government "could evaporate"). Relators'

attempt to hang liability on the basis of contracts that were fully disclosed to the FCC "devolves

18

to a dispute over the meaning of" FCC regulations, "rather than a factual claim," and "[s]uch a

legal dispute is . . . insufficient to establish falsity under the FCA." *United States ex rel. Swafford*

*v. Borgess Med. Ctr.*, 98 F. Supp. 2d 822, 831-32 (W.D. Mich. 2000), *aff'd*, 24 F. App'x 491 (6th

Cir. 2001).

### 2. Advantage Spectrum Did Not Make Any False Statements of Fact About its Affiliation with U.S. Cellular By Other Means

Relators' backup theory of falsity is that even if U.S. Cellular did not itself hold a

controlling interest in Advantage, its revenues were nevertheless attributable because U.S.

Cellular was *affiliated* with DiNardo and King Street, and DiNardo and King Street were in turn

*affiliated* with Advantage (Relators do not allege that either DiNardo or King Street held a

controlling interest in Advantage). Thus, Relators conclude, when Advantage certified that it

qualified as a DE and failed to include U.S. Cellular's revenues with its own, that certification

was false. This theory of falsity fails for two separate reasons.

First, the Complaint does not plead, with particularity or otherwise, that under FCC

regulations U.S. Cellular was or is affiliated with either DiNardo or King Street. As relevant

here, FCC defines "affiliation" as a relationship in which one entity controls another, two entities

are controlled by the same third party, or two entities have an "identity of interest." *See* 47 C.F.R.

§ 1.2110(c)(5). Relators do not allege any facts demonstrating that U.S. Cellular controls

DiNardo or King Street, that the two are controlled by a common third party, or that they share

an identify of interests. Rather, as to DiNardo, Relators allege only that she and U.S. Cellular

have a longstanding business relationship and have repeatedly partnered as investors in DEs.

Compl. ¶ 46-54. That does not come anywhere close to what is required under the regulations to

show an improper affiliation.

As to King Street, Relators allege next to nothing about U.S. Cellular's supposed control of or identity of interest with that entity. Indeed, they do nothing more than summarize in a single paragraph a pleading they filed in a *different case*. Compl. ¶ 52 (summarizing *United States ex rel. O'Connor v. U.S. Cellular Corp.*, No. 15-cv-00370-L (W.D. Okla.), transferred to this Court and now docketed as No. 20-cv-2071 (TSC)). That tactic violates Rule 8(a) which prohibits incorporating another complaint by reference. *See Sturdza v. United Arab Emirates*, 2010 WL 97986, at *1 n.1 (D.D.C. Jan. 11, 2010) (rejecting "attempts to overcome" total failure to allege relevant facts as to multiple defendants "by incorporating by reference the factual allegations of a complaint filed in a separate case."), *aff'd*, 405 F. App'x 512 (D.C. Cir. 2011); *see also* 5A Wright & Miller § 1326 n.9 (4th ed.) (collecting cases); *Davis v. Bifani*, 2007 WL 1216518, at *1 (D. Colo. Apr. 24, 2007).

Second, even if Relators' had alleged that King Street and DiNardo were affiliates of U.S. Cellular, there still is no false statement, because that affiliation would not render U.S. Cellular's revenues attributable to Advantage. This is because the FCC rules do not require attribution of revenues from *affiliates of affiliates*. The FCC's attribution rule is straightforward and unambiguous on this point: a DE must disclose revenues from 1) its affiliates, 2) its controlling interests, and 3) the affiliates of its controlling interests. 47 C.F.R. § 1.2110(b)(1)(i).[18] There is no provision, by contrast, for attribution of revenues earned by the affiliates of a DE's affiliates, or the controlling interests of a designated entity's affiliates. Affiliation, in other words, is not transitive. Since Relators do not allege that U.S. Cellular was affiliated with Advantage's

---

[18] The rule in place at the time of Auction 97 also required attribution of revenues from "the entities with which [the designated entity] has an attributable material relationship." 47 C.F.R. § 1.2110(b)(1)(i) (2014). Relators do not allege in this case that any "attributable material relationship" existed between Advantage Spectrum and U.S. Cellular.

controlling interests, and cannot show any false statement as to U.S. Cellular's affiliation with or control of Advantage itself, *see supra* Part II.A.1, they have failed to show a false statement—and cannot use DiNardo or King Street to bridge that gap.

Therefore, Relators have not pled under either theory that Defendants made an objective false statement of fact.

### B.    Relators Have Not Plausibly Alleged That U.S. Cellular Acted With Scienter

Even if Defendants were legally mistaken, however, as to whether Advantage Spectrum was a valid DE, there would be no liability under the FCA because Relators have not pled the scienter the Act requires. The FCA punishes only false statements made with knowledge, deliberate ignorance, or reckless disregard of their falsity, and "does not reach an innocent, good-faith mistake about the meaning of an applicable rule." *Purcell*, 807 F.3d at 287; *see also* 31 U.S.C. § 3729(b). "The FCA is a fraud prevention statute," not a "vehicle for policing technical compliance with administrative regulations," *United States ex rel. Lamers v. City of Green Bay*, 168 F.3d 1013, 1020 (7th Cir. 1999), and there is no liability under the statute for "claims made based on reasonable but erroneous interpretations of a defendant's legal obligations." *Purcell*, 807 F.3d at 288. The Supreme Court has recently reiterated the need for "strict enforcement" of the FCA's scienter requirement. *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2002 (2016). Relators' claims fall far short of adequately alleging scienter, for three reasons.

### 1.    The Complaint essentially fails to allege scienter at all

Relators' Complaint makes nothing more than a single conclusory allegation that Defendants had "knowledge" that U.S. Cellular's revenues should have been attributed to Advantage Spectrum. *See* Compl. ¶ 94. The Complaint contains no well-pleaded *facts* as to how, why, or when defendants knew this. Nor could it—as discussed *supra*, Relators are outsiders to

the alleged fraud whose lawsuit is based on public documents, not first-hand knowledge of

Defendants' decisions. This sparse legal conclusion does not pass muster under Rule 8. *See Perry*

*Capital LLC v. Mnuchin*, 864 F.3d 591, 610 n.9 (D.C. Cir. 2017) ("Nor does a complaint suffice

if it tenders naked assertions devoid of further factual enhancement") (quoting *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009)).

## 2.   The FCC's repeated, informed approval of this and similar DE arrangements precludes the scienter required by the Act

Relators also cannot establish scienter as a matter of law because the FCC approved

Advantage Spectrum as a DE knowing all of the material facts regarding Defendants'

relationships. "'[T]he knowledge possessed by officials of the United States may be highly

relevant' under the False Claims Act because it 'may show that the defendant did not submit its

claim in deliberate ignorance or reckless disregard of the truth.'" *United States ex rel. Burke v.*

*Record Press, Inc.*, 816 F.3d 878, 881 (D.C. Cir. 2016) (quoting *United States ex rel. Hagood v.*

*Sonoma Cty. Water Agency*, 929 F.2d 1416, 1421 (9th Cir. 1991)); *see also United States ex rel.*

*Totten v. Bombardier Corp.*, 380 F.3d 488, 496 (D.C. Cir. 2004) (discussing "government

knowledge defense"). As the Complaint shows, Advantage Spectrum disclosed to the FCC each

agreement upon which Relators rely, and did so nearly two months before this Complaint was

filed and more than a year before the FCC granted Advantage Spectrum's licenses. *See supra*

Part II.A.1. Under these facts, of which the Court may take judicial notice, there can be no

scienter as a matter of law.

## 3.   Reasonable disputes regarding the legal interpretation of statutory or regulatory obligations cannot form the basis for scienter

Relators plead, at most, disagreements as to the technical meaning of FCC regulations.

"Consistent with the need for a knowing violation, the FCA does not reach . . . claims made

based on reasonable but erroneous interpretations of a defendant's legal obligations," and

because the Complaint identifies no facts that were misstated to or concealed from FCC, it alleges nothing more. *Purcell,* 807 F.3d at 287-88.

That settled principle refutes any inference of scienter as to either of Relators' two primary theories of falsity. First, with respect to whether U.S. Cellular's revenues are attributable to Advantage Spectrum through King Street and DiNardo, Relators have raised nothing more than, at the very most, a regulatory dispute over the reach of FCC's decision to limit attribution to "affiliates," "controlling interests," and the affiliates of controlling interests. *See* 47 C.F.R. § 1.2110(b)(1)(i). The fact that U.S. Cellular's interpretation of that rule was at least objectively reasonable, *see supra* Part II.A.2, conclusively negates scienter.

Second, the Complaint does not support any inference of scienter as to U.S. Cellular or DiNardo's alleged "control" over Advantage Spectrum. The FCC evaluates "control" according to a complex six-factor balancing test.[19] In light of FCC's repeated prior approval of similar arrangements, Relators have failed to show that U.S. Cellular's belief that there was no improper control under that open-ended standard was so "indisputably [in]correct as to render [its] certifications '*knowingly* false as a matter of law.'" *United States v. The Boeing Co.*, 825 F.3d 1138, 1151 (10th Cir. 2016) (emphasis added); *see also Purcell*, 807 F.3d at 287-88 ("[T]he FCA does not reach an innocent, good-faith mistake about the meaning of an applicable rule or regulation. Nor does it reach those claims made based on reasonable but erroneous interpretations of a defendant's legal obligations."); *United States ex rel. K&R Ltd. P'ship v.*

---

[19] *See, e.g.*, *In re Stratos Global Corp.*, 22 FCC Rcd. 21328, 21343 (2007) ("(1) does the licensee have unfettered use of all the facilities and equipment? (2) who controls daily operations? (3) who determines and carries out the policy decisions, including preparing and filing applications with the Commission? (4) who is in charge of employment, supervision, and dismissal of personnel (5) who is in charge of the payment of financing obligations, including expenses arising out of operations and (6) who receives monies and profits derived from the operation of the facilities?").

*Mass. Hous. Fin. Agency*, 530 F.3d 980, 982-84 (D.C. Cir. 2008) (finding no inference of scienter based on defendant's reasonable interpretation of ambiguous mortgage note, even if defendant's was not ultimately "the better reading"). In other words, Advantage Spectrum's conclusion that it was not "controlled" by either U.S. Cellular or DiNardo, per FCC regulations, was not unreasonable as a matter of law. So even if that certification was determined later to be legally wrong, there is no basis to infer that it was *knowingly* wrong when made.

### C.     Relators Have Not Plausibly Alleged That Any False Statement Was Material to the FCC's Approval Decision

"[A] misrepresentation about compliance with a statutory, regulatory, or contractual requirement must be material to the Government's payment decision in order to be actionable under the False Claims Act." *Escobar*, 136 S. Ct. at 2002. The FCA's "materiality standard is demanding," because the statute is not "a vehicle for punishing garden-variety . . . regulatory violations." *Id.* at 2003. And as with scienter, the Supreme Court has emphasized that the materiality requirement should be "rigorous[ly]" enforced. *Id.* at 2002.

A false certification is not material if it would not affect the government's payment decision—this means not only that the government *could* deny payment based on the false certification, but in fact *would* deny payment if it knew the certification were false. *Id.* at 2004 (rejecting government's suggestion that materiality depends on whether "the government *could* lawfully withhold payment") (emphasis added). In assessing materiality, the Supreme Court directs courts to take into account the government's actual behavior. If the "Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material." *Id.* at 2003–04. Likewise if the government regularly "pay[s] claims in the mine run of cases" despite that type of noncompliance, it is presumptively not material. *Id.*

Relators' pleadings regarding materiality fail for three reasons.

First, the Complaint alleges materiality only in conclusory terms. *See, e.g.*, Compl. ¶¶ 59 ("Advantage's statement to the FCC . . . was materially false"). Simply restating the elements of an FCA claim is facially insufficient under either Rule 8(a) or Rule 9(b). *Iqbal*, 556 U.S. at 687. Likewise, the Complaint stops short of alleging that the FCC *actually would have denied or reclaimed the bidding credits or denied the licenses* based upon Defendants' purportedly false certifications. Bare recitals that Advantage Spectrum "would have owed" money under FCC's regulations, *see* Compl. ¶ 93, or that the Commission awarded bid credits "[i]n reliance upon" its certifications are insufficient, *see* Compl. ¶ 94. "A misrepresentation cannot be deemed material merely because the Government designates compliance with a particular . . . requirement as a condition of payment. Nor is it sufficient for a finding of materiality that the Government would have the option to decline to pay if it knew of the defendant's noncompliance." *Escobar*, 136 S. Ct. at 2003.

Second, facts alleged in the Complaint—along with others of which this Court can take notice—demonstrate that *if* any of the statements or certifications in issue were false, that falsity was not material to FCC's decision to grant Advantage Spectrum's bid credits and, later, its spectrum licenses as a matter of law.

Here, as the Complaint and public record demonstrate, the FCC unquestionably knew of all of the facts alleged in the Complaint and the alleged scheme, and it *still* decided to grant Advantage's bid credits and spectrum licenses. *See supra at* 11-12. The fact that the government still granted the auction benefits with actual and complete knowledge of the alleged misstatement is the clearest evidence that the government either disagreed that the statement in issue was not false or, if it was false, that it was immaterial to the government's decision to grant the auction

benefits. *See Escobar.* 136 S. Ct. at 2003-04 ("[If the] Government pays a particular claim in full despite its actual knowledge that certain requirements were [allegedly] violated, that is very strong evidence that those requirements are not material."). This inference is particularly strong in the case of Auction 97, where FCC actually concluded that two *other* bidders were *de facto* controlled by a large business and therefore not entitled to DE status. *See SNR Wireless LicenseCo, LLC v. Federal Communications Commission*, 868 F.3d 1021, 1028 (D.C. Cir. 2017).

The FCC's payment decisions on other auctions confirms this point. Advantage Spectrum was not the first FCC-approved designated entity in which U.S. Cellular had invested—Relators allege it was the fifth in a "continuing" scheme with DiNardo. Compl. ¶¶ 51-54. But the FCC, with full information, approved those arrangements too. The fact that the FCC approved licenses to similarly-structured DEs *five times* over more than a decade strongly suggests that its practice "in the mine run of cases" was to not deny licenses in the face of the type of allegations in Relators' Complaint. Either the FCC did not view any statements or certifications as false, or it viewed any misstatements as immaterial. Regardless, the FCC's decisions to grant licenses armed with the facts raised in the Complaint, precludes finding an FCA violation. *See Escobar*, 136 S. Ct. at 2003.

Finally, the FCC's *continued* inaction with respect to Advantage Spectrum also negates materiality. As the D.C. Circuit has explained, courts that "have the benefit of hindsight," "should not ignore what actually occurred" after a claim was paid. *United States ex rel. McBride v. Halliburton Co.*, 848 F.3d 1027, 1034 (D.C. Cir. 2017). Here, the FCC has known all the material facts, as well as Relators' allegations, for more than ten years, but has taken no action to recover the benefits of the supposed fraud. Again, the FCC either sees no misstatement or, if any were made, deems them immaterial. *See McBride*, 848 F.3d at 1034 (no materiality where the

26

government "investigated [the relator's] allegations and did not disallow any charged costs."); *United States ex rel. Janssen v. Lawrence Mem'l Hosp.*, 949 F.3d 533, 542 (10th Cir. 2020) (no materiality where the government "conducted an investigation . . . into the central allegations presently at issue," but "d[id] nothing in response."), *cert. denied*, 2020 WL 5883407 (Oct. 5, 2020); *Cimino v. Int'l Bus. Machs. Corp.*, 2019 WL 4750259, at *7 (D.D.C. Sept. 30, 2019) (finding it "implausible that the IRS sat on its hands upon learning that IBM had tricked it into signing a contract for $265 million for software that it did not need," and "[i]n fact . . . agreed to pay even more money").

## III.    The Complaint Should Be Dismissed with Prejudice

Dismissal with prejudice is appropriate because any amendment would be futile. *See Corporate Systems Resources v. Washington Metropolitan Area Transit Authority*, 31 F. Supp. 3d 124, 135 (D.D.C. 2014). Amendment is futile if the complaint would be subject to dismissal even as amended, *In re Interbank Funding Corp. Sec. Litig.*, 629 F.3d 213, 215 (D.C. Cir. 2010), and that is plainly the case here.

No amendment could change the basic facts requiring dismissal. The public nature of the Prior Amended *Qui Tam* Complaint, the full disclosure to the FCC of the facts at the center of Relators' case, and FCC's continuing approval are not subject to alteration in a new pleading. Indeed, Relators have already had and declined an opportunity to amend. *See* ECF No. 76. The Complaint challenges an arrangement that was publicly disclosed years before this case, and which the FCC approved years after. Amendment would be futile.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice.

Dated:  October 26, 2020

Respectfully submitted,

/s/ *Frank R. Volpe*

Frank R. Volpe
Robert Joseph Conlan, Jr.
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, DC 20005
Telephone: 202-736-8000
Fax: 202-736-8711
fvolpe@sidley.com
rconlan@sidley.com