# EXHIBIT G

## No. 1:20-cv-2070-TSC

## LOAN AND SECURITY AGREEMENT

### Dated as of September 19, 2014

Advantage Spectrum, L.P., a Delaware limited partnership ("Borrower"), and UNITED STATES CELLULAR CORPORATION, a Delaware corporation (the "Lender"), agree as follows:

## ARTICLE I
## AMOUNTS AND TERMS OF THE ADVANCES

SECTION 1.01.  The Advances.  The Lender agrees, on the terms and conditions hereinafter set forth, to make advances (the "Advances") to the Borrower in an amount not to exceed at any time outstanding, $48,000,000.00 (the "Commitment").  The Commitment shall terminate on the earliest of the dates set forth in Section 1.03 below or as set forth in Section 6.01.  The proceeds of the Advances shall be used for the sole purpose of making the deposit required by the Federal Communications Commission ("FCC") in connection with its Auction No. 97 and to provide additional working capital to the Borrower.

SECTION 1.02.  Making the Advances.  Each Advance shall be made on notice, in the form of Exhibit B attached hereto, given not later than 10:00 A.M. (Chicago time) on the fifth Business Day prior to the date of the proposed Advance, by the Borrower to the Lender, specifying the date and amount thereof; provided, however, that the notice for the initial Advance may be given on the date the initial Advance is requested to be made.  Not later than 1:00 P.M. (Chicago time) on the date of such Advance and upon fulfillment of the applicable conditions set forth in Article II, the Lender will make such Advance available to the Borrower in U.S. dollars at the Lender's address referred to in Section 7.02 in same day funds.  Each notice from the Borrower to the Lender requesting an Advance shall be irrevocable and binding on the Borrower.

SECTION 1.03.  Interest and Repayment; Promissory Note.  The Borrower shall pay interest on the aggregate unpaid principal amount of the Advances at the rate of eight percent (8.0%) per annum, compounded annually.  Such interest together with the aggregate unpaid principal amount of the Advances shall be payable on the earliest to occur of (i) the date of the receipt by the Borrower of the proceeds of the sale of all or substantially all of the assets of the Borrower, (ii) the date of the receipt by Frequency Advantage, L.P., a Delaware limited liability company and the general partner of the Borrower ("DE L.P."), of the sale of any portion of the general partnership interest in the Borrower, (iii) the date of the receipt by any of DE L.P.'s partners of the proceeds of the sale of all or any portion of such partners' partnership interests in DE L.P., (iv) the tenth anniversary of the date of the execution and delivery of this Agreement, or (v) in the event that the entire deposit of the Borrower with respect to the FCC's Auction No. 97 is returned to the Borrower, the date on which the deposit is so returned.  The Borrower's obligations to make such payments of interest and repayments of principal shall also be evidenced by a promissory note of the Borrower, in substantially the form of Exhibit A hereto (the "Note").

SECTION 1.04. <u>Optional Prepayments</u>. The Borrower may, upon at least three Business Days' notice to the Lender stating the proposed date and principal amount of the prepayment, and if such notice is given the Borrower shall, prepay the outstanding principal amounts of the Advances in whole or in part, together with accrued interest to the date of such prepayment on the principal amount prepaid; <u>provided</u>, <u>however</u>, that each partial prepayment shall be in a principal amount of not less than $100,000.

SECTION 1.05. <u>Payments and Computations</u>. The Borrower shall make each payment hereunder and under the Note not later than 11:00 A.M. (Chicago time) on the day when due in U.S. dollars to the Lender at its address referred to in <u>Section 7.02</u> in same day funds. All computations of interest shall be made by the Lender on the basis of a year of 365 days regardless of any leap year, in each case, for the actual number of days (including the first day but excluding the last day) occurring in the period for which such interest is payable, compounded annually. Each determination by the Lender of an interest amount hereunder shall be conclusive and binding for all purposes, absent manifest error.

SECTION 1.06. <u>Payment on Non-Business Days</u>. Whenever any payment hereunder or under the Note shall be stated to be due on a day other than a day of the year on which banks are not required or authorized to close in Chicago, Illinois (any such other day being a "Business Day"), such payment shall be made on the next succeeding Business Day, and such extension of time shall in such case be included in the computation of payment of interest.

ARTICLE II
CONDITIONS OF LENDING

SECTION 2.01. <u>Conditions Precedent to Initial Advance</u>. The obligation of the Lender to make its initial Advance is subject to the condition precedent that the Lender shall have received on or before the day of the Advance the following items listed in clauses (a) through (e) below, each dated such day, in form and substance satisfactory to the Lender:

(a)     This Agreement;

(b)     The Note;

(c)     Certified copies of the resolutions of the Borrower approving this Agreement, the Note and of all documents evidencing other necessary partnership action and governmental approvals, if any, with respect to this Agreement and the Note;

(d)     A certificate of the Secretary or an Assistant Secretary of the general partner of DE L.P. certifying (i) the names and true signatures of the officers of the general partner of DE L.P. authorized to sign this Agreement and the Note, and (ii) copies attached thereto of the organizational documents of the Borrower and the Certificate of Limited Partnership of DE L.P. and the Partnership Agreement of DE L.P.; and

(e)     Uniform Commercial Code financing statements covering the collateral referred to in <u>Section 5.01</u>, to be filed in the jurisdiction where the Borrower is organized.

ACTIVE 201499879v.3

(f)     The Borrower's chief executive office is located at 224 E. Garden St., Suite 5, Pensacola, FL  32502.

## ARTICLE IV
## COVENANTS OF THE BORROWER

SECTION 4.01.  <u>Affirmative Covenants</u>.  So long as any Advances or other obligations hereunder shall remain unpaid or the Lender shall have any Commitment hereunder, the Borrower shall, unless the Lender shall otherwise consent in writing:

(a)     <u>Compliance with Laws, Agreements, Etc</u>.  Comply in all material respects with (i) all applicable laws, rules, regulations and orders, such compliance to include, without limitation, paying before the same become delinquent all taxes, assessments and governmental charges imposed upon it or upon its property except to the extent contested in good faith, and (ii) the limited partnership agreement of the Borrower.

(b)     <u>Partnership Existence</u>.  Maintain and preserve its limited partnership existence, rights, franchises, licenses and privileges in its jurisdiction of its organization and in all other jurisdictions in which such qualification is necessary in view of its business and operations and property and preserve, protect and keep in full force and effect its material rights and its governmental (including, without limitation, FCC) licenses, permits, franchises and approvals.

(c)     <u>General Reporting Requirements</u>.  Furnish to the Lender (i) as soon as possible and in any event within five days after the occurrence of each Event of Default and each event which, with the giving of notice or lapse of time, or both, would constitute an Event of Default, continuing on the date of such statement, a statement of the general partner of the Borrower setting forth details of such Event of Default or event and the action which the Borrower has taken and proposes to take with respect thereto and (ii) prompt written notice upon obtaining knowledge thereof of the filing or commencement of any action, suit or proceeding by or before any court or any governmental authority, which if adversely determined against the Borrower, would impose a material liability on the Borrower.

(d)     <u>Financial Reporting</u>.  Furnish to the Lender (i) within thirty (30) days after the end of each fiscal quarter of the Borrower, unaudited balance sheets and statements of operations of the Borrower as of the end of such fiscal quarter and for the then elapsed portion of the Borrower's fiscal year, and (ii) within forty (40) days after the end of each fiscal year of the Borrower, an annual audited financial statement of the Borrower,  consisting of the balance sheets and statements of operations, income, stockholders' equity and cash flows, for such fiscal year, prepared in accordance with generally accepted accounting principles ("GAAP"), which consolidated financial statements and  other above described financial information shall have been audited by a nationally recognized independent certified public accounting firm satisfactory to the Lender, and accompanied by such independent certified public accounting firm's unqualified opinion. The Borrower shall furnish to the Lender concurrently with the provision of financial statements described above, a certificate of the Borrower's independent certified public accountant or the Borrower's general  partner, as applicable, to the effect that the financial statements referred to in clause (i) or (ii) above, present fairly the financial position and results of

4

operations of the Borrower and as having been prepared in accordance with GAAP consistently applied, in each case subject to normal year end audit adjustments except for the statements referred to in clause (ii) above.

(e)    Use of Advance Proceeds.  Use the proceeds of the Advances solely for the purposes specified in Section 1.01.

(f)    Books and Records.  Maintain accurate books and records of its business and operations in accordance with GAAP.

(g)    Insurance.  Maintain in full force and effect with respect to its insurable properties, insurance policies in such amounts and covering such risks as would be consistent with prudent industry practice.  The Borrower shall cause the insurer under each insurance policy to (i) name the Lender as an "additional insured" if such policy is a liability policy, (ii) name the Lender as a "mortgagee" and a "loss payee" and include a standard agent's loss payable endorsement in favor of the Lender if such policy is a property insurance policy, and (iii) provide that the Lender shall be notified in writing of any proposed cancellation or modification of such policy initiated by the Borrower's insurer at least thirty (30) days in advance of any such proposed action and shall have sufficient time to correct any deficiencies justifying such proposed cancellation or modification.

SECTION 4.02.  Negative Covenants.  So long as any Advances or other obligations hereunder shall remain unpaid or the Lender shall have any Commitment hereunder, the Borrower shall not, without the prior written consent of the Lender:

(a)    Liens, Etc.  Create or suffer to exist any lien, security interest or other charge or encumbrance, or any other type of preferential arrangement, upon or with respect to any of its properties, whether now owned or hereafter acquired, or assign any right to receive income, in each case to secure or provide for the payment of any Debt (as defined below in this subsection (a)) of any person or entity.

"Debt" means (i) indebtedness for borrowed money, (ii) obligations evidenced by bonds, debentures, notes or other similar instruments, (iii) obligations to pay the deferred purchase price of property or services, (iv) obligations as lessee under leases which shall have been or should be, in accordance with generally accepted accounting principles, recorded as capital leases, (v) reimbursement obligations, contingent or otherwise, with respect to letters of credit and banker's acceptances issued for the account of the Borrower and (vi) obligations under direct or indirect guaranties in respect of, and obligations under direct or indirect guaranties in respect of, and obligations (contingent or otherwise) to purchase or otherwise acquire, or otherwise to assure a creditor against loss in respect of, indebtedness or obligations of others of the kinds referred to in clauses (i) through (v) above.

(b)    Sales of Assets.  Sell, assign, transfer, lease, convey or otherwise dispose of any property, whether now owned or hereafter acquired, in excess of $1,000,000 in the aggregate.

(c)    Mergers, Etc.  Merge or consolidate with or into, or convey, transfer, lease or otherwise dispose of, directly or indirectly (whether in one transaction or in a series of

ACTIVE 201499879v.3

transactions) all or substantially all of its assets (whether now owned or hereafter acquired) to, or acquire all or substantially all of the assets of, any person or entity (whether in one transaction or a series of transactions).

(d)    Incurrence of Other Debt.  Incur any Debt other than the Debt under this Agreement and the Note and Debt that is subordinate to Debt under this Agreement and Note.

(e)    Payments on Other Debt.  Prepay or repay any principal payable in respect of any Debt incurred by the Borrower unless such payment is a regularly scheduled payment under such Debt.

(f)    Restricted Payments.  Make any payments or distributions to any of its partners except as may be permitted under that certain Pledge Agreement of even date herewith between the Borrower's general partner and the Lender and in accordance with the terms of the Borrower's limited partnership agreement and any management services agreement between the Borrower and the Lender or any affiliate of the Lender.

ARTICLE V
COLLATERAL SECURITY

SECTION 5.01.  Collateral Security.  To secure payment and performance of all obligations of the Borrower under this Agreement and under the Note, including accrued interest, regardless of whether such interest accrues before or after the commencement of any case or proceeding in bankruptcy with respect to the Borrower, and regardless of whether or not allowed in the proceeding (the "Obligations"), the Borrower hereby grants to the Lender, to the extent permitted by law, a right of setoff against and a continuing security interest in and to all of the Borrower's tangible and intangible personal property, fixtures and real property leasehold and easement interests, whether now owned or existing, or hereafter acquired or arising, wheresoever located (collectively, the "Collateral"), including, without limitation, all of the following property, or interests in property:  (a) all machinery, equipment and fixtures, including without limitation, fiber optic and other cables, transmission and switching equipment, transmission facilities, connection equipment, conduit, carrier pipes, junctions, regenerators, power sources, alarm systems, electronics, structures and shelters and cable laying equipment; (b) all accounts, accounts receivable, other receivables, contract rights, leases, chattel paper, investment property, and general intangibles of the Borrower (including, without limitation, goodwill, going concern value, patents, trademarks, trade names, service marks, blueprints, designs, product lines and research and development), including, without limitation, all of the Borrower's rights under all present and future governmental approvals, permits, licenses and franchises heretofore or hereafter granted to the Borrower for the operation and ownership of its assets (excluding licenses and permits issued by the FCC or any other governmental authority to the extent, and only to the extent, it is unlawful to grant a security interest in such licenses and permits, but including, to the maximum extent permitted by law, all rights incident or appurtenant to such licenses and permits, including, without limitation, the right to receive all proceeds derived from or in connection with the sale, assignment or transfer of such licenses and permits), whether now owned or hereafter acquired by the Borrower, or in which the Borrower may now have or hereafter acquire an interest; (c) all instruments, money, letters of credit, documents, policies and certificates of insurance, securities, bank deposits, deposit accounts, checking accounts and cash

6

now or hereafter owned by the Borrower, or in which the Borrower may now have or hereafter acquire an interest; (d) all inventory, including all merchandise, raw materials, work in process, finished goods and supplies, now or hereafter owned by the Borrower or in which the Borrower may now have or hereafter acquire an interest; (e) all of the Borrower's leasehold interest in any real property, all of the Borrower's licenses, easements and rights of way with respect to real property; (f) all of the Borrower's commercial tort claims; (g) all accessions, additions or improvements to, substitutions for and all proceeds and products of, all of the foregoing, including proceeds of insurance; and (h) all books, records, documents, computer tapes and discs relating to all of the foregoing.

SECTION 5.02.  Preservation of Collateral and Perfection of Security Interests. The Borrower shall execute and deliver to the Lender, and at any time or times thereafter at the request of the Lender, all financing statements or other documents (and pay the cost of filing or recording the same in all public offices deemed necessary by the Lender), as the Lender may request, in a form satisfactory to the Lender, to perfect and keep perfected the security interest in the Collateral granted by the Borrower to the Lender or to otherwise protect and preserve the Collateral (including, without limitation, mortgages on any real property acquired by the Borrower) and the Lender's security interest therein or to enforce the Lender's security interest in the Collateral.  Should the Borrower fail to do so, the Lender is authorized to sign any such financing statements as the Borrower's agent.  The Borrower further authorizes the Lender to file any such financing statements which do not require the signature of the Borrower and agrees that a carbon, photographic or other reproduction of this Agreement or of a financing statement is sufficient as a financing statement.

ARTICLE VI
EVENTS OF DEFAULT; REMEDIES

SECTION 6.01.  Events of Default.  If any of the following events ("Events of Default") shall occur and be continuing:

(a)    The Borrower shall fail to pay any principal of, or interest on any Advance when the same becomes due and payable; or

(b)    Any representation or warranty made by the Borrower (or any of its officers) under this Agreement shall prove to have been incorrect in any material respect when made; or

(c)    The Borrower shall fail to perform or observe any other material term, covenant or agreement contained in this Agreement for a period of ten (10) days after written notice thereof shall have been given to the Borrower by the Lender; or

(d)    The Borrower shall generally not pay its debts as such debts become due, or shall admit in writing its inability to pay its debts generally, or shall make a general assignment for the benefit of creditors; or any proceeding shall be instituted by or against the Borrower seeking to adjudicate it as bankrupt or insolvent, or seeking liquidation, winding up, reorganization, arrangement, adjustment, protection, relief, or composition of it or its debts under any law relating to bankruptcy, insolvency or reorganization or relief of debtors, or seeking the

7

entry of an order for relief or the appointment of a receiver, trustee, custodian or other similar official for it or for any substantial part of its property and, in the case of any such proceeding instituted against it (but not instituted by it), either such proceeding shall remain undismissed or unstayed for a period of 60 days, or any of the actions sought in such proceeding (including, without limitation, the entry of an order for relief against, or the appointment of a receiver, trustee, custodian or other similar official for it, or for any substantial part of its property) shall occur; or the Borrower shall take any partnership action to authorize any of the actions set forth above in this subsection (d); or

(e)    Any judgment or order for the payment of money in excess of $100,000 shall be rendered against the Borrower and either (i) enforcement proceedings shall have been commenced by any creditor upon such judgment or order or (ii) there shall be any period of 10 consecutive days during which a stay of enforcement of such judgment or order, by reason of a pending appeal or otherwise, shall not be in effect; or

(f)    Any license, permit, franchise or other governmental approval or authorization necessary for the continuing operation of the Borrower or any of its telecommunications systems, shall cease to be in full force and effect, which in the case of an order of the FCC or any other governmental authority having jurisdiction with respect thereto, revoking or deciding not to renew any such license, permit, franchise or other governmental approval or authorization, shall occur upon the issuance of such order, and in any other case, shall occur when such order becomes final;

then, in any such event, the Lender may, by notice to the Borrower, (i) declare its obligations to make Advances to be terminated, whereupon the same shall forthwith terminate, and (ii) declare the Note, all accrued interest thereon and all amounts payable under this Agreement to be forthwith due and payable, whereupon the Note, all such interest and all such amounts shall become and be forthwith due and payable, without presentment, demand, protest or further notice of any kind, all of which are hereby expressly waived by the Borrower; provided, however, that in the event of an actual or deemed entry of an order for relief with respect to the Borrower under the Federal Bankruptcy Code,  the Note, all such interest and all such amounts shall automatically become and be due and payable, without presentment, demand, protest or any notice of any kind, all of which are hereby expressly waived by the Borrower.

SECTION 6.02.  Rights and Remedies Generally.  If an Event of Default occurs and is continuing, the Lender shall have, in addition to any other rights and remedies contained in this Agreement or in the Note, all of the rights and remedies of a secured party under the Uniform Commercial Code or other applicable laws, all of which rights and remedies shall be cumulative, and none exclusive, to the extent permitted by law.  In addition to all such rights and remedies, the sale, lease or other disposition of the Collateral, or any part thereof, by the Lender after the occurrence of an Event of Default may be for cash, credit or any combination thereof, and the Lender may purchase all or any part of the Collateral at public or, if permitted by law, private sale, and in lieu of actual payment of such purchase price, may set off the amount of such purchase price against the Obligations then owing.  Any sales of the Collateral may be adjourned from time to time with or without notice.  The Lender may, in its sole discretion, cause the Collateral to remain on the premises of the Borrower, at the expense of the Borrower, pending sale or other disposition of the Collateral.  The Lender shall have the right to conduct such sales

ACTIVE 201499879v.3

on the premises of the Borrower, at the expense of the Borrower, or elsewhere, on such occasion or occasions as it may see fit.

SECTION 6.03. Entry Upon Premises and Access to Information. If an Event of Default occurs and is continuing, the Lender shall have the right to enter upon the premises of the Borrower where any Collateral is located (or is believed to be located) without any obligation to pay rent to the Borrower, or any other place or places where the Collateral is believed to be located and kept, and render the Collateral unusable or remove the Collateral therefrom to the premises of the Lender or any agent thereof, for such time as the Lender may desire, in order effectively to collect or liquidate the Collateral, and/or the Lender may require the Borrower to assemble the Collateral and make it available to the Lender at a place or places to be designated by the Lender. If an Event of Default occurs and is continuing, the Lender shall have the right to obtain access to the Borrower's data processing equipment, computer hardware and software relating to the Collateral and to use all of the foregoing and the information contained therein in any manner the Lender deems appropriate.

SECTION 6.04. Sale or Other Disposition of Collateral by the Lender. Any notice required to be given by the Lender of a sale, lease or other disposition or other intended action by the Lender with respect to any of the Collateral which is deposited in the United States mails, registered or certified, postage prepaid and duly addressed to the Borrower at the address specified in Section 7.02 below, at least ten days prior to such proposed action shall constitute fair and reasonable notice to the Borrower of any such action. The net proceeds realized by the Lender upon any such sale or other disposition, after deduction for the expense of retaking, holding, preparing for sale, selling or the like and the reasonable attorneys' fees and legal expenses incurred by the Lender in connection therewith, shall be applied as provided herein toward satisfaction of the Obligations. The Lender shall account for and pay to the Borrower any surplus realized upon such sale or other disposition, and the Borrower shall remain liable for any deficiency. The commencement of any action, legal or equitable, or the rendering of any judgment or decree for any deficiency shall not affect the Lender's security interest in the Collateral. The Borrower agrees that the Lender has no obligation to preserve rights to the Collateral against any other parties. The Lender is hereby granted a license or other right to use, without charge, the Borrower's labels, patents, copyrights, rights of use of any name, trade secrets, trade names, trademarks, service marks and advertising matter, or any property of a similar nature, as it pertains to the Collateral, and the Borrower's rights under all licenses and all franchise agreements shall inure to the Lender's benefit until the Obligations are paid in full.

SECTION 6.05. Governmental Approvals. In connection with the enforcement by the Lender of any remedies available to it as a result of any Event of Default, the Borrower agrees that it shall join and cooperate fully with, at the request of the Lender, any receiver referred to below and/or the successful bidder or bidders at any foreclosure sale in a filing of an application (and furnishing any additional information that may be required in connection with such application or which the Lender may believe relevant to such application) with the FCC and all other applicable governmental authorities, requesting their prior approval of (i) the operation or abandonment of all or the portion of any telecommunications system of the Borrower and/or (ii) the transfer of control of the Borrower or assignment of all licenses, certificates, governmental approvals and permits, issued to the Borrower by the FCC or any such governmental authorities with respect to any telecommunications system and the operation

9

thereof, to the Lender, the receiver or to the successful bidder or bidders. In connection with the foregoing, the Borrower shall take such further actions, and execute all such instruments, as the Lender reasonably deems necessary or desirable. The Borrower agrees that the Lender may enforce any obligation of the Borrower as set forth in this section by an action for specific performance. In addition, the Borrower hereby irrevocably constitutes and appoints the Lender and any agent or officer thereof (which appointment is coupled with an interest) as its true and lawful attorney-in-fact with full irrevocable power and authority and in the place and stead of the Borrower and in the name of the Borrower or in its own name, from time to time in its discretion after the occurrence and during the continuance of an Event of Default and in connection with the foregoing, for the purpose of executing on behalf and in the name of the Borrower any and all of the above-referenced instruments and to take any and all appropriate action in furtherance of the foregoing. **The exercise of any rights or remedies hereunder or under the Note by the Lender that may require FCC or any other governmental authority approval shall be subject to obtaining such approval. Pending the receipt of any FCC or any other governmental authority approval, the Borrower shall not do anything to delay, hinder, interfere or obstruct the exercise of the Lender's rights or remedies hereunder in obtaining such approvals.**

SECTION 6.06. <u>Appointment of Receiver or Trustee</u>. In connection with the exercise of its remedies under this Agreement, the Lender may, upon the occurrence of an Event of Default, obtain the appointment of a receiver or trustee to assume, upon receipt of all necessary judicial, FCC or other governmental authority consents or approvals, control of or ownership of any of the governmental approvals, licenses, permits or franchises of the Borrower. Such receiver or trustee shall have all rights and powers provided to it by law or by court order or provided to the Lender under this Agreement. Upon the appointment of such trustee or receiver, the Borrower agrees to cooperate, to the extent necessary or appropriate, in the expeditious preparation, execution and filing of an application to the FCC or any other governmental authority for consent to the transfer of control or assignment of any Borrower's governmental approvals, licenses, permits or franchises to the receiver or trustee.

ARTICLE VII
MISCELLANEOUS

SECTION 7.01. <u>Amendments, Etc</u>. No amendment or waiver of any provision of this Agreement or the Note, nor consent to any departure by the Borrower therefrom, shall in any event be effective unless the same shall be in writing and signed by the Lender, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

SECTION 7.02. <u>Notices, Etc</u>. All notices and other communications provided for hereunder shall be in writing (including telecopier or electronic communication) and mailed, telecopied, transmitted or delivered, if to the Borrower, c/o Will Vail, 224 E. Garden St., Suite 5, Pensacola, FL 32502, facsimile no.: (850) 857-9610; and if to the Lender, at its address at 8410 W. Bryn Mawr, Chicago, Illinois 60631, Attention: Steven T. Campbell, facsimile no. (773) 399-8959; or, as to each party, at such other address as shall be designated by such party in a written notice to the other party. All such notices and communications shall, when mailed, telecopied or transmitted, be effective when deposited in the mails, telecopied or confirmed by

10

electronic receipt, respectively, except that notices to the Lender pursuant to the provisions of Article I shall not be effective until received by the Lender.

SECTION 7.03.  No Waiver; Remedies.  No failure on the part of the Lender to exercise, and no delay in exercising, any right hereunder or under the Note shall operate as a waiver thereof; nor shall any single or partial exercise of any such right preclude any other or further exercise thereof or the exercise of any other right.  The remedies herein provided are cumulative and not exclusive of any remedies provided by law.

SECTION 7.04.  Indemnities.  The Borrower agrees to defend, protect, indemnify and hold harmless the Lender and each of its Affiliates and each of its and its Affiliates' directors, officers and employees (collectively, the "Indemnitees") from and against any and all liabilities, obligations, losses (other than loss of profits), damages, penalties, fees, actions, judgments, suits, claims, costs, expenses and disbursements of any kind or nature whatsoever (excluding any taxes and including, without limitation, the reasonable fees and disbursements of counsel for such Indemnitees in connection with any investigative, administrative or judicial proceeding, whether or not such Indemnitees shall be designated a party thereto), which any of them may incur and reasonably pay arising out of or relating to this Agreement or the Note or any of the transactions contemplated hereby or thereby or the direct or indirect application or proposed application of the proceeds of any Advance, provided, however, the Borrower shall have no obligation to an Indemnitee hereunder with respect to any matter caused by or resulting from the willful misconduct or gross negligence of such Indemnitee, and, provided, further, that the Borrower shall not be deemed to be an Affiliate of the Lender for purposes of this Section 7.04.  The Borrower, upon demand by the Lender, shall reimburse each Indemnitee for any reasonable legal or other expenses incurred in connection with investigating or defending any of the foregoing except if the same is directly due to the willful misconduct or gross negligence of such Indemnitee.  If the undertaking to indemnify, pay and hold harmless set forth in this Section 7.04 may be unenforceable because it is violative of any law or public policy, the Borrower shall contribute the maximum portion which it is permitted to pay and satisfy under applicable law, to the payment and satisfaction of all liabilities, obligations, losses, damages, penalties, fees, actions, judgments, suits, claims, costs, expenses or disbursements incurred by any Indemnitee.

SECTION 7.05.  Costs, Expenses and Taxes.  The Borrower agrees to pay on demand all costs and expenses, if any (including reasonable counsel fees and expenses), in connection with the enforcement (whether through negotiations, legal proceedings or otherwise) of this Agreement and the Note, including, without limitation, reasonable counsel fees and expenses in connection with the enforcement of rights under this Section 7.05.  In addition, the Borrower shall pay any and all stamp and other taxes payable or determined to be payable in connection with the execution and delivery of this Agreement and the Note and the other documents to be delivered hereunder, and agree to save the Lender harmless from and against any and all liabilities with respect to or resulting from any delay in paying or omission to pay such taxes.

SECTION 7.06.  Binding Effect; Assignability.  This Agreement shall be binding upon and inure to the benefit of the Borrower and the Lender and their respective successors and assigns, except that the Borrower shall not have the right to assign its rights hereunder or any

ACTIVE 201499879v.3

interest herein without the prior written consent of the Lender. The Lender may at any time, without the consent of the Borrower, assign all or any portion of its rights under this Agreement and the Note. Any assignee or transferee of the Note agrees by acceptance thereof to be bound by all the terms and provisions of this Agreement and the Note.

SECTION 7.07. <u>Governing Law</u>. THIS AGREEMENT AND THE NOTE SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF DELAWARE.

SECTION 7.08. <u>Limitation of Liability</u>. Nothing contained herein shall require any partner or manager of any Borrower to provide any funds to satisfy any obligations of the Borrower under this Agreement or the Note, and the Lender agrees not to seek any contribution of funds from any partner or manager of any Borrower in the absence of fraud committed by such partner or manager.

SECTION 7.09. <u>Certain Definitions</u>. Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in Article 9 of the Uniform Commercial Code as in effect in the State of Delaware.

### [SIGNATURE PAGE FOLLOWS]

ACTIVE 201499879v.3

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their respective officers thereunto duly authorized, as of the date first above written.

BORROWER:                              ADVANTAGE SPECTRUM, L.P.


                                       By:     FREQUENCY ADVANTAGE, L.P.
                                       Its:    General Partner
                                               By: Sunshine Spectrum, Inc.
                                               Its: General Partner
                                                   By:  _____
                                                        Will Vail
                                                        President


LENDER:                                UNITED STATES CELLULAR CORPORATION


                                       By:     _____
                                               Steven T. Campbell
                                               Executive Vice President - Finance, Chief
                                                Financial Officer and Treasurer


**SIGNATURE PAGE TO
LOAN AND SECURITY AGREEMENT
BY AND BETWEEN
ADVANTAGE SPECTRUM, L.P.
AND
UNITED STATES CELLULAR CORPORATION**


ACTIVE 201499879v.3

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their respective officers thereunto duly authorized, as of the date first above written.

BORROWER:                           ADVANTAGE SPECTRUM, L.P.

                                    By:     FREQUENCY ADVANTAGE, L.P.
                                    Its:    General Partner
                                            By: Sunshine Spectrum, Inc.
                                            Its: General Partner
                                                By: _____
                                                    Will Vail
                                                    President


LENDER:                             UNITED STATES CELLULAR CORPORATION

                                    By:     _____
                                            Steven T. Campbell
                                            Executive Vice President - Finance, Chief
                                             Financial Officer and Treasurer




**SIGNATURE PAGE TO
LOAN AND SECURITY AGREEMENT
BY AND BETWEEN
ADVANTAGE SPECTRUM, L.P.
AND
UNITED STATES CELLULAR CORPORATION**

EXHIBIT A

FORM OF PROMISSORY NOTE

$[_____]                                        Dated: [_____] [____], 2014

       FOR VALUE RECEIVED, the undersigned, ADVANTAGE SPECTRUM, L.P., a Delaware limited partnership (the "Borrower"), HEREBY PROMISES TO PAY to the order of UNITED STATES CELLULAR CORPORATION, a Delaware corporation (the "Lender"), the principal amount of [_____] DOLLARS ($[_____]) or, if less, the aggregate principal amount of all Advances made by the Lender to the Borrower pursuant to that certain Loan and Security Agreement of even date herewith between the Lender and the Borrower (the "Loan Agreement") on the dates specified in the Loan Agreement. Capitalized terms used herein and not otherwise defined herein are defined as defined in the Loan Agreement.

       The Borrower shall pay interest on the principal amount hereof from time to time outstanding from the date hereof until such principal amount is paid in full, at the rates and on the dates specified in the Loan Agreement.

       Both principal and interest are payable in lawful money of the United States of America to the Lender at 8410 West Bryn Mawr, Chicago, Illinois 60631, Attention: Steven T. Campbell, in same day funds. All Advances made by the Lender to the Borrower, and all payments made on account of the principal amount hereof, shall be recorded by the Lender and, prior to any transfer hereof, endorsed on the grid attached hereto which is part of this Promissory Note.

       This Promissory Note is the Note referred to in, and is entitled to the benefits of, the Loan Agreement. The Loan Agreement, among other things, (i) provides for the making of advances (the "Advances") by the Lender to the Borrower from time to time in an aggregate amount not to exceed at any time outstanding the U.S. dollar amount first above mentioned, the indebtedness of the Borrower resulting from each such Advance being evidenced by this Promissory Note, and (ii) contains provisions for acceleration of the maturity hereof upon the happening of certain stated events and also for prepayments on account of principal hereof prior to the maturity hereof upon the terms and conditions therein specified.

       Demand, presentment, protest and notice of nonpayment and protest are hereby waived by the Borrower.

                 ADVANTAGE SPECTRUM, L.P.
                 By:    FREQUENCY ADVANTAGE, L.P.
                 Its:    General Partner
                     By: Sunshine Spectrum, Inc.
                     Its: General Partner
                         By: _____
                         Name: Will Vail
                         Its:    President

Schedule A to Promissory Note

| Date | Principal Amount of Loan | Interest Rate | Payment of Principal | Payment of Interest | Notation By |
|------|--------------------------|---------------|----------------------|---------------------|-------------|
|      |                          |               |                      |                     |             |
|      |                          |               |                      |                     |             |
|      |                          |               |                      |                     |             |
|      |                          |               |                      |                     |             |
|      |                          |               |                      |                     |             |
|      |                          |               |                      |                     |             |
|      |                          |               |                      |                     |             |
|      |                          |               |                      |                     |             |
|      |                          |               |                      |                     |             |
|      |                          |               |                      |                     |             |
|      |                          |               |                      |                     |             |
|      |                          |               |                      |                     |             |
|      |                          |               |                      |                     |             |
|      |                          |               |                      |                     |             |
|      |                          |               |                      |                     |             |
|      |                          |               |                      |                     |             |
|      |                          |               |                      |                     |             |
|      |                          |               |                      |                     |             |
|      |                          |               |                      |                     |             |

EXHIBIT B

FORM OF
NOTICE OF BORROWING

To:      United States Cellular Corporation.
Dated: _____

Ladies and Gentlemen:

        The undersigned, Advantage Spectrum, L.P., a Delaware limited partnership (the "Borrower"), refers to that certain Loan Agreement dated as of September 19, 2014 (the "Loan Agreement"; the terms defined therein used herein as therein defined) between United States Cellular Corporation (the "Lender") and the "Borrower" (as defined therein), and hereby gives the Lender notice, pursuant to Section 1.02 of the Loan Agreement that the undersigned hereby requests an Advance, and in that connection sets forth below the information relating to such Advance (the "Proposed Advance"):

        (i)  The Business Day of the Proposed Advance is _____ 20__; and

        (ii)  The aggregate amount of the Proposed Advance is $_____; and

        (iii)  The use of the proceeds of the Proposed Advance is [acquisition of the License(s)][working capital purposes].

        The undersigned hereby certifies that the following statements are true on the date hereof, and will be true on the Business Day of the Proposed Advance:

        (A)      The representations and warranties contained in Section 3.01 of the Loan Agreement are correct in all respects, before and after giving effect to the Proposed Advance as though made on as of such date;

        (B)  No event has occurred and is continuing, or would result from such Proposed Advance which constitutes either an Event of Default or an event which but for the requirement that notice be given and/or the elapse of time, would constitute an Event of Default; and

        (C) All agreements and all conditions to the Proposed Advance, contained in the Loan Agreement which are required to be performed or satisfied by the Borrowers on the date hereof or by the Business Day of the Proposed Advance have been and will be performed and satisfied.

                                        Very truly yours,

                                        Advantage Spectrum, L.P.

                        By:     Frequency Advantage, L.P.
                        Its:     General Partner
                                 By: Sunshine Spectrum, Inc.
                                 Its:  General Partner
                                        By: _____
                                        Name:  Will Vail
                                        Its:      President