# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* MARK J. O'CONNOR and SARA F. LEIBMAN,<br><br>    Plaintiffs,<br><br>  v.<br><br>UNITED STATES CELLULAR CORPORATION, *et al.*,<br><br>    Defendants. | Case No. 20-CV-2070 (TSC) |

**DEFENDANTS UNITED STATES CELLULAR CORPORATION, USCC WIRELESS INVESTMENT, INC., AND TELEPHONE AND DATA SYSTEMS, INC.'S REPLY IN SUPPORT OF DISMISSAL**

## TABLE OF CONTENTS

                                                                                    Page

Introduction...................................................................................................1

Argument .....................................................................................................2

    I.      Relators Cannot Avoid the Public Disclosure Bar...............................................2

          A.      Advantage Spectrum's Public FCC Filings Are the Central Basis
                of Relators' Claims and Therefore By Definition Were Sufficient
                to Set the Government "on the Trail" of What Relators Claim. .................4

          B.      Relators Cannot Rescue Their Claims By Alleging an Additional
                Episode of The Same Alleged Recurring Scheme That Was
                Publicly Disclosed in the Prior Qui Tam Amended Complaint.................6

          C.      Relators Are Not an Original Source.....................................................10

    II.     Relators' Failures to Allege Falsity, Scienter, Materiality, and Conspiracy
         are Cognizable on a Motion to Dismiss and Fatal to the Complaint. ...................14

          A.      Relators Have Not Plausibly Alleged Any Violation of FCC
                Regulations That Would Have Rendered a Claim "False."......................15

          B.      Relators Have Not Plausibly Alleged That U.S. Cellular Acted
                With Scienter. ..........................................................................18

          C.      Relators Have Not Plausibly Alleged that Any False Statements
                Were Material to the FCC's Decisionmaking. .......................................20

          D.      Relators Have Not Plausibly Alleged a Conspiracy. ..............................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bauman v. Butowsky*,
  377 F. Supp. 3d 1 (D.D.C. 2019) ........................................................14

*Bohanon v. E. Tenn. Human Res. Agency Inc.*,
  2015 WL 5707120 (E.D. Tenn. Sept. 25, 2015) ..................................14

*United States ex rel. Campie v. Gilead Scis., Inc.*,
  862 F.3d 890 (9th Cir. 2017) .............................................................22

*Cause of Action v. Chi. Transit Auth.*,
  815 F.3d 268 (7th Cir. 2016) ...............................................................9

*Covad Commc'ns Co. v. Bell Atl. Corp.*,
  407 F.3d 1220 (D.C. Cir. 2005) .........................................................23

*CTS Corp. v. E.P.A.*,
  759 F.3d 52 (D.C. Cir. 2014) .............................................................10

*D'Agostino v. ev3, Inc.*,
  845 F.3d 1 (1st Cir. 2016) .................................................................22

*Davis v. Bifani*,
  2007 WL 1216518 (D. Colo. Apr. 24, 2007) ......................................17

*United States ex rel. Davis v. District of Columbia*,
  679 F.3d 832 (D.C. Cir. 2012) .............................................................6

*United States ex rel. Doe v. Staples, Inc.*,
  932 F. Supp. 2d 34 (D.D.C. 2013), *aff'd,* 773 F.3d 83 (D.C. Cir. 2014) ..............................11

*United States ex rel. Findley v. FPC-Boron Employees' Club*,
  105 F.3d 675 (D.C. Cir. 1997) ................................................5, 8, 9, 11

*Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*,
  559 U.S. 280 (2010) .............................................................................9

*United States ex rel. Harman v. Trinity Indus. Inc.*,
  872 F.3d 645 (5th Cir. 2017) .................................................20, 22, 23

*Hutchins v. D.C.*,
  188 F.3d 531 (D.C. Cir. 1999) ...........................................................10

*United States ex rel. J. Cooper & Assocs., Inc. v. Bernard Hodes Grp., Inc.,*
    422 F. Supp. 2d 225 (D.D.C. 2006) ...................................................................6

*United States ex rel. K&R Ltd. P'ship v. Mass. Hous. Fin. Agency,*
    530 F.3d 980 (D.C. Cir. 2008) .......................................................................19

*United States ex rel. Kasowitz Benson Torres LLP v. BASF Corp.,*
    929 F.3d 721 (D.C. Cir. 2019) .......................................................................23

*United States ex rel. Kelly v. Serco, Inc.,*
    846 F.3d 325 (9th Cir. 2017) .........................................................................22

*United States ex rel. Marcus v. Hess,*
    317 U.S. 537 (1943).......................................................................................21

*United States ex rel. Maur v. Hage-Korban,*
    — F.3d —, 2020 WL 7038408 (6th Cir. Dec. 1, 2020) .....................................7

*United States ex rel. Maxwell v. Kerr-McGee Oil & Gas Corp.,*
    540 F.3d 1180 (10th Cir. 2008) .......................................................................7

*United States ex rel. May v. Purdue Pharma L.P.,*
    811 F.3d 636 (4th Cir. 2016) .........................................................................11

*McGinnis v. District of Columbia,*
    65 F. Supp. 3d 203 (D.D.C. 2014) ................................................................12

*Mendoza v. Perez,*
    754 F.3d 1002 (D.C. Cir. 2014) ....................................................................14

*United States ex rel. Miller v. Weston Educ., Inc.,*
    840 F.3d 494 (8th Cir. 2016) .........................................................................22

*United States ex rel. Minn. Ass'n of Nurse Anesthetists v. Allina Health Sys.
Corp.,*
    276 F.3d 1032 (8th Cir. 2002) .......................................................................10

*United States ex rel. Morsell v. Symantec Corp.,*
    2020 WL 5651277 (D.D.C. Mar. 30, 2020)....................................................19

*In re Nat. Gas Royalties,*
    562 F.3d 1032 (10th Cir. 2009) .....................................................................11

*United States ex rel. Oliver v. Philip Morris USA Inc. (Oliver I),*
    763 F.3d 36 (D.C. Cir. 2014).........................................................................9

*United States ex rel. Oliver v. Philip Morris USA Inc. (Oliver II),*
    826 F.3d 466 (D.C. Cir. 2016) .............................................................. 6, 7, 8, 9

*United States ex rel. Phalp v. Lincare Holdings, Inc.*,
   857 F.3d 1148 (11th Cir. 2017) ...................................................................20

*\*United States ex rel. Purcell v. MWI Corp.*,
   807 F.3d 281 (D.C. Cir. 2015) ............................................................... 16, 20

*United States ex rel. Reed v. Keypoint Gov't Sols.*,
   923 F.3d 729 (10th Cir. 2019) ...................................................................13

*United States ex rel. Settlemire v. District of Columbia*,
   198 F.3d 913 (D.C. Cir. 1999) ...................................................................5, 9

*SNR Wireless LicenseCo, LLC v. FCC*,
   868 F.3d 1021 (D.C. Cir. 2017) ................................................................21

*\*United States ex rel. Springfield Terminal Ry. v. Quinn*,
   14 F.3d 645 (D.C. Cir. 1994) ............................................................. 2, 5, 10

*United States ex rel. Swafford v. Borgess Med. Ctr.*,
   98 F. Supp. 2d 822 (W.D. Mich. 2000), *aff'd*, 24 F. App'x 491 (6th Cir. 2001) ..................16

*Tel. and Data Sys., Inc. v. FCC*,
   19 F.3d 42 (D.C. Cir. 1994) .......................................................................19

*United States ex rel., Folliard v. Comstor Corp.*,
   308 F. Supp. 3d 56 (D.D.C. 2018) ......................................................11, 18, 19

*United States v. Care Alternatives*,
   952 F.3d 89 (3d Cir. 2020) ........................................................................18

*Scollick ex rel. United States v. Narula*,
   2020 WL 6544734 (D.D.C. Nov. 6, 2020) .................................................22

*\*Universal Health Servs., Inc. v. United States ex rel. Escobar*,
   136 S. Ct. 1989 (2016) ......................................................................20, 22

*United States ex rel. Westrick v. Second Chance Body Armor Inc.*,
   128 F. Supp. 3d 1 (D.D.C. 2015) ..............................................................21

*United States ex rel. Winkelman v. CVS Caremark Corp.*,
   827 F.3d 201 (1st Cir. 2016) .....................................................................13

**Statutes & Rules**

\*31 U.S.C. § 3730 .......................................................................................2, 11

Federal Rule of Civil Procedure 8 .................................................................17

**Regulations**

47 C.F.R. § 1.2105 ..................................................................................................12

*47 C.F.R. § 1.2110..................................................................................................17

*Asterisks indicate those cases or authorities on which counsel chiefly relies. Local Civ. R. 7(a).

## INTRODUCTION

Relators' Complaint should be dismissed because it is: (a) barred by numerous prior public disclosures and (b) fails to allege essential elements of a claim under the False Claims Act ("FCA"). Rather than respond directly and on the merits to those critical defects that U.S. Cellular identified in its motion to dismiss, Relators' opposition largely ignores or evades them. Relators' opposition confirms that the Court should dismiss the Complaint with prejudice, for two primary reasons:

First, the FCA's public disclosure bar dooms Relators' Complaint because the agreements they claim show fraud were disclosed *in full* to the FCC, on the agency's public docket, well before Relators filed their Complaint. In addition, what Relators allege now is merely an extension of a long-publicly-disclosed alleged scheme—what Relators in their Complaint call a "conspiracy" stretching back twenty years—involving U.S. Cellular and others, including defendants DiNardo and King Street Wireless, to improperly obtain bidding credits and licenses in FCC spectrum auctions. Relators claim in their opposition that they nevertheless allege additional detail in their Complaint, but what they actually allege is simply an extension of the purported scheme and some collateral details of no consequence, none of which is sufficient under the applicable law to save their Complaint from dismissal. *See infra* Part I.

Second, Relators largely ignore U.S. Cellular's arguments with respect to falsity, scienter, and materiality—each of which is a required element of all their claims under the FCA. Rather than address those deficiencies, Relators primarily assert that the arguments raise factual disputes and are therefore not cognizable on a motion to dismiss. That is incorrect. U.S. Cellular's motion is premised on Relators' own allegations in the Complaint and documents that the Court can consider as incorporated into the Complaint, referenced by it, or subject to judicial notice. The Complaint's failure to allege falsity, scienter, and materiality—either plausibly or with

1

particularity under Rule 9(b)—provides multiple additional reasons to dismiss Relators' claims. *See infra* Part II.

More than a decade has passed since the scheme Relators allege was first alleged in another *qui tam* complaint, along with more than four years since the FCC granted Advantage Spectrum's licenses with full knowledge of Relators' Complaint. Relators have failed to come forward with allegations sufficient to either avoid the public disclosure bar or state a claim on the merits, and any further opportunity to do so would be an exercise in futility. Their claims should be dismissed with prejudice.

## ARGUMENT

### I.      Relators Cannot Avoid the Public Disclosure Bar

As explained in U.S. Cellular's motion to dismiss, *see* U.S. Cellular Mot. at 11-13, each one of the five agreements that Relators allege gave U.S. Cellular improper control over Advantage Spectrum was *disclosed in full* on the FCC's public docket. Those filings were public disclosures that bar this lawsuit. *See* 31 U.S.C. § 3730(e)(4).

Relators do not dispute that those agreements were publicly disclosed, or that the essence of their suit is that the agreements themselves empowered U.S. Cellular to control Advantage Spectrum. Instead they point to a scattered handful of additional "facts, understandings, and arrangements," that they allege were concealed from the FCC and "contribute[] directly to a showing of *de facto* control." *See* Opp. at 16. But the public disclosure bar does not turn on whether the disclosures included *every* fact that might "contribute" to an allegation of fraud. Rather, the question is whether the public disclosures included *enough* facts to put the government "on the [alleged fraud's] trail." *See United States ex rel. Springfield Terminal Ry. v. Quinn*, 14 F.3d 645, 655 (D.C. Cir. 1994). They did so here, and accordingly Relators' claims are barred. *See infra* Part I.A.

2

Independently, Relators' claims are also barred because, as U.S. Cellular has shown, the scheme they allege here was already the subject of a *qui tam* complaint filed in 2008. *See* Amended Complaint, *Lampert & O'Connor, P.C. v. Carroll Wireless, L.P.*, Docket No. 11, No. 1:07-cv-800 (JDB) (D.D.C. April 24, 2008) ("Prior *Qui Tam* Amended Complaint"), *docketed here as* Volpe Decl. Ex. A, ECF No. 155-3; U.S. Cellular Mot. at 13-15. The Prior *Qui Tam* Amended Complaint bars this lawsuit as well.

Relators do not dispute that the core scheme they allege was disclosed over a decade ago, or that the present complaint is a continuation of the same alleged *modus operandi* by the same purported conspirators alleged before. Indeed, Relators' own Complaint here alleges that U.S. Cellular and Ms. DiNardo have "partnered for twenty years" to "funnel[] money to various 'very small businesses'" that falsely applied for DE status. Compl. ¶ 46. Unable to dispute that what they allege now is merely a continuation of what was alleged in the earlier *qui tam* lawsuit, Relators attempt to obfuscate the issue by arguing that the Amended Complaint describes a different *specific episode* of that scheme. But settled D.C. Circuit precedent holds that the public disclosure bar is triggered by the disclosure of an overall alleged scheme and cannot be defeated merely by pleading additional discrete instances of an allegedly recurrent fraud. *See infra* Part I.B.

Relators' final effort to rescue their claims under the public disclosure bar's original source exception likewise fails. Relators—who are telecom lawyers unaffiliated with any defendant and with no special access to the alleged fraudulent scheme—are not the original source of any of the Complaint's allegations. *See infra* Part I.C. Relators' claims should therefore be dismissed in full under the public disclosure bar.

**A.    Advantage Spectrum's Public FCC Filings Are the Central Basis of Relators' Claims and Therefore By Definition Were Sufficient to Set the Government "on the Trail" of What Relators Claim.**

As U.S. Cellular has explained, Relators rely on five publicly-filed agreements to assert that U.S. Cellular and defendant Allison DiNardo managed and had the power to control Advantage Spectrum.[1] U.S. Cellular Mot. at 11-13. Importantly, Relators do not allege in their Complaint that those agreements themselves misrepresented the truth of the parties' relationship. *Id*. at 18. Just the opposite—the Complaint repeatedly and expressly alleges that it was the *terms of the agreements themselves* that gave U.S. Cellular power over Advantage Spectrum. *See, e.g.,* Compl. ¶¶ 58-59 ("[T]he *terms* of the Bidding Protocol Agreement required Vail to concede all control over Advantage's bidding to DiNardo and U.S. Cellular."), ¶ 61 ("[T]he *terms* of the Frequency LP Agreement give DiNardo the power to prevent Vail from obtaining . . . financing from a third-party that is not affiliated with U.S. Cellular."), ¶¶ 73-78 (discussing the "*provisions* in the [Advantage LP] agreement and others that specifically *negate*" Vail's supposed powers as general partner), ¶ 80 ("[T]he *details* of the Defendants' own Bidding Protocol Agreement, when considered in context, make clear that Vail had no say in policy decisions about Auction 97), ¶ 82 ("[T]he various provisions of [the] Advantage LP Agreement prevent Vail from making any future significant policy decisions . . . ."), ¶ 84 ("Section 5.5(b) of the Advantage LP Agreement effectively prevents Vail from hiring a management team or other employees . . . ."),

---

[1] In order to evade yet another basis for imposing the public disclosure bar, Relators have abandoned the Complaint's allegations that certain U.S. Cellular statements to the Securities and Exchange Commission ("SEC") were admissions of improper control over the DEs. *See* Compl. ¶¶ 88-90. As explained in U.S. Cellular's motion to dismiss, the relevant SEC accounting standards are fundamentally different than the FCC's standard for *de facto* control. U.S. Cellular Mot. at 12 n.14. As U.S. Cellular explained, to the extent Relators wished to argue that public statements to the SEC showed control, they necessarily admitted that such control had been publicly disclosed. *Id*. at 18. Relators now concede that U.S. Cellular's statements to the SEC have no relevance to analysis under the FCC's control test. Opp. at 18.

¶ 85 (interpreting the terms of the parties' financing agreements), ¶¶ 91-92 (interpreting the compensation terms of the Advantage LP and Frequency LP Agreements) (emphases added).

Relators' opposition does not directly address the fact that the core of their Complaint was disclosed in full to the FCC well before they filed suit. Instead—in a stark reversal of their original theory—Relators assert for the first time that the FCC could not have found *de facto* control based on those agreements alone. Opp. at 16. They now argue that because the FCC applies a "totality of the circumstances" test for *de facto* control, there could be a public disclosure of such control only if it included *all* of the facts—the disclosed agreements "*plus* [other] concealed facts, understandings, and arrangements" that the FCC would need to reach a final determination. *Id.* at 15-16, 19 ("The allegations in the Complaint include . . . information without which the FCC could not have made an informed decision"). That is not the law— "[t]here is no requirement . . . that the relevant public disclosures irrefutably prove a case of fraud." *United States ex rel. Settlemire v. District of Columbia*, 198 F.3d 913, 919 (D.C. Cir. 1999). Rather, the public disclosure bar is triggered once enough information is revealed to "set government investigators on the trail of [the alleged] fraud." *Springfield Terminal*, 14 F.3d at 655.

Here, Relators allege the defendants defrauded the government by representing that Vail controlled Advantage Spectrum when in fact U.S. Cellular did. They further allege that agreements among the defendants demonstrated U.S. Cellular's control. The fact that those agreements were filed in full with the FCC shows conclusively that the government had access to both the purportedly "misrepresented state of facts" and the "true state of facts" it needed to "raise the inference" of exactly what Relators now allege. *United States ex rel. Findley v. FPC-*

*Boron Employees' Club*, 105 F.3d 675, 687 (D.C. Cir. 1997) (citing *Springfield Terminal*, 14 F.3d at 654-55).

Relators are likewise incorrect to suggest that they may defeat that *prima facie* showing of a public disclosure by alleging a handful of additional facts they claim "contribute[] directly to a showing of *de facto* control." Opp. at 16. "The FCA's [public disclosure] bar precludes suits by 'individuals who base *any part of their allegations* on publicly disclosed information.'" *United States ex rel. J. Cooper & Assocs., Inc. v. Bernard Hodes Grp., Inc.*, 422 F. Supp. 2d 225, 235 n.10 (D.D.C. 2006) (quoting *United States ex rel. Schwedt v. Planning Research Corp., Inc.*, 39 F. Supp. 2d 28, 34 (D.D.C. 1999)). Put another way, once there is information in the public domain that "could at least have alerted law-enforcement authorities to the likelihood of wrongdoing," *United States ex rel. Davis v. District of Columbia*, 679 F.3d 832, 836 (D.C. Cir. 2012), "[m]erely providing 'more specific details' about what happened" will not rescue Relators' barred claims, *see United States ex rel. Oliver v. Philip Morris USA Inc.* (*Oliver II*), 826 F.3d 466, 472 (D.C. Cir. 2016).[2]

### B. Relators Cannot Rescue Their Claims By Alleging an Additional Episode of The Same Alleged Recurring Scheme That Was Publicly Disclosed in the Prior *Qui Tam* Amended Complaint.

Relators' sole argument respecting the Prior *Qui Tam* Amended Complaint is that because it did not describe *exactly the same instance* of U.S. Cellular and DiNardo allegedly creating sham designated entities ("DEs") to secure bidding credits, it cannot be "substantially similar" enough to the present Complaint to trigger the public disclosure bar. *See* Opp. at 14-15. D.C. Circuit precedent is clear, however, that the public disclosure bar applies once an alleged fraudulent *scheme* has been disclosed, regardless of "a relator's ability to reveal [additional]

---

[2] The results of Relators' so-called "independent investigation" are likewise insufficient to qualify them as an original source. *See infra* Part I.C.

specific instances" in which that scheme was allegedly carried out. *Oliver II*, 826 F.3d at 472; *see also United States ex rel. Maxwell v. Kerr-McGee Oil & Gas Corp.*, 540 F.3d 1180, 1187 (10th Cir. 2008) (explaining that a subsequent lawsuit may be barred by allegations made in an earlier one "even when the two suits cover different periods of time [if] the 'essential claim[s]' [are] substantially 'similar.'"); *United States ex rel. Maur v. Hage-Korban*, — F.3d —, 2020 WL 7038408, at *4 (6th Cir. Dec. 1, 2020) ("[T]here need not be a '*complete* identity of allegations, even as to time, place, and manner' to trigger the public-disclosure bar. There need only be a 'substantial identity' between the public disclosures and the *qui tam* complaint such that the prior disclosures depict 'essentially the same' scheme. This is because 'once the government knows the essential facts of a fraudulent scheme,' it generally 'has enough information to discover related frauds.'") (citations omitted).

Relators' failure to allege a scheme distinct from the one alleged in the Prior *Qui Tam* Amended Complaint is dispositive of their claims. As U.S. Cellular has shown in detail, *see* U.S. Cellular Mot. at 13-15, that earlier suit described three prior episodes of the same scheme alleged in the present Complaint. Both allege that U.S. Cellular and DiNardo allegedly formed one or more sham DEs in order to obtain bid credits and spectrum licenses in FCC spectrum auctions. *Compare, e.g.*, Prior *Qui Tam* Amended Complaint ¶ 3, *with* Compl. ¶ 4. And Relators' current Complaint leaves no room for doubt that each such effort was part and parcel of an ongoing alleged scheme. *See, e.g.*, Compl. ¶ 45 ("U.S. Cellular's exploitation of Advantage is but the most recent overt act in a longstanding conspiracy—with DiNardo as a key actor—to defraud the Government."), ¶ 46 ("The main component of the DiNardo/U.S. Cellular relationship involves U.S. Cellular funneling money to various 'very small businesses' allegedly controlled by, or involving, DiNardo in order to obtain [bid credits]."), ¶ 47 (describing the other episodes of the

7

scheme as involving the DEs—Carroll, Barat, and King Street—involved in the Prior *Qui Tam* Amended Complaint).

Relators' attempts to distinguish the Prior *Qui Tam* Amended Complaint misapply the applicable law. They argue first that the Prior *Qui Tam* Amended Complaint was filed too long before the events at issue in this case, and second, that it involved "the conduct of a different group of defendants in a different FCC Auction." Opp. at 14-15. Relators' theory of the public disclosure bar, in other words, is that it applies only if "the specific allegations in *this* Complaint were in the public domain." *Id.* at 14. That theory is incorrect. In fact, the D.C. Circuit has expressly and repeatedly rejected Relators' narrow interpretation of the public disclosure bar. Instead, it has held that the bar applies to *qui tam* suits based on a known "general practice," even if a suit covers different instances of the practice, or a different time period in which it occurred, than did the relevant disclosure. *See Oliver II*, 826 F.3d at 472-73 (memorandum discussing cigarette price discrepancies at one naval base in Iceland disclosed "general practice" of overcharging military for cigarettes, thereby barring suit "involv[ing] different time periods, [contract] provisions, and corporate sales"); *Findley*, 105 F.3d at 685-88 (suit claiming that employees at a specific prison illegally retained money from vending on federal property in early 1990s barred by fact that the "generic" practice had been "specifically identif[ied]" in public reports in 1952 and 1974, and discussed in a 1986 Federal Circuit opinion).

Indeed, the present case is even easier to decide on this point than either *Oliver II* (which involved a worldwide pattern of fraud disclosed by a memorandum discussing discrepancies at a single facility) or *Findley* (which involved fraud at a single facility disclosed by decades-old reports of a government-wide pattern). Here, Relators' added allegations "pertain to the same

entit[ies]" and describe the same "continuing practice" as the Prior *Qui Tam* Amended Complaint. *See Cause of Action v. Chi. Transit Auth.*, 815 F.3d 268, 281-82 (7th Cir. 2016).

Given that inextricable relationship, Relators cannot avoid dismissal simply by pointing out that the events of the prior suit and this one are not exactly the same. Once the contours of a purported fraudulent practice have been publicly disclosed, Relators may not recover based on "allegations which substantially repeat what the public already knows" about the scheme, *Findley*, 105 F.3d at 687—even if they "reveal [additional] specific instances of fraud," *Settlemire*, 198 F.3d at 919. Nor may they avoid the public disclosure bar merely by pointing out that seven years separated the events described in the two complaints. *Oliver II*, 826 F.3d at 473 (quoting *Settlemire,* 198 F.3d at 919) ("[W]e have found 'disclosures going back as far as forty years prior to the relators' lawsuit . . . sufficient to disclose the practices which formed the basis of the relators' suit. Accordingly, the time difference does not undermine the disclosure of Philip Morris's general practice.").

Relators' argument that the Prior *Qui Tam* Amended Complaint was not a public disclosure because U.S. Cellular and King Street "aggressively and falsely denied the allegations" is likewise without merit. Opp. at 15. At the threshold, the public disclosure bar is not somehow reset if a defendant denies wrongdoing in response to a disclosure, or if the government is ultimately unpersuaded that any wrongdoing in fact occurred. Indeed, the government's subjective knowledge of or belief in public accusations of fraud is irrelevant to the bar's operation. *See Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 299-300 (2010) ("The statutory touchstone . . . is whether the allegations of fraud have been publicly disclosed, not whether they have landed on the desk of a DOJ lawyer."); *United States ex rel. Oliver v. Philip Morris USA Inc.* (*Oliver I*), 763 F.3d 36, 42

9

(D.C. Cir. 2014) (explaining that Congress enacted the public disclosure bar to *replace* a prior subjective "government knowledge" test). Relators also ignore the fact that King Street's denial of the allegations came in a response that the FCC specifically requested in *response* to the Prior *Qui Tam* Amended Complaint. U.S. Cellular Mot. at 6. That filing demonstrates that the FCC took the allegations in the Prior *Qui Tam* Amended Complaint seriously—enough to request that King Street respond to them. Thus, the FCC was plainly aware of the allegations of actual illegality, which is enough to trigger the public disclosure bar in itself. *Springfield Terminal*, 14 F.3d at 654 ("when Z," the allegation of fraud, "is broadcast, however, there is little need for *qui tam* actions, which would tend to be suits that the government presumably has chosen not to pursue").

## C.      Relators Are Not an Original Source.

Because Relators' claims were publicly disclosed, their Complaint can survive only if they can demonstrate that they are an original source under the FCA. However, the cursory original source arguments Relators make in their opposition do not come remotely close to meeting the standard. First, Relators suggest that *Relator O'Connor* is an original source because *his law firm* was responsible for the Prior *Qui Tam* Amended Complaint. Opp. at 14 n.12. As a preliminary matter, Relators have waived that argument by failing to develop it. *CTS Corp. v. E.P.A.*, 759 F.3d 52, 64 (D.C. Cir. 2014) ("A footnote is no place to make a substantive legal argument . . . ; hiding an argument there and then articulating it in only a conclusory fashion results in forfeiture."); *Hutchins v. D.C.*, 188 F.3d 531, 539 n.3 (D.C. Cir. 1999) ("We need not consider cursory arguments made only in a footnote . . . .").

But even if Relators had developed it further, that argument would fail on the merits. The statutory definition of "original source" "does not distinguish between those who first bring a claim to light and others who later make the same discovery independently," *United States ex*

*rel. Minn. Ass'n. of Nurse Anesthetists v. Allina Health Sys. Corp.*, 276 F.3d 1032, 1048 & n.11 (8th Cir. 2002), and there is "no basis . . . for such an exception" to the public disclosure bar even for prior *qui tam* actions by the *same* relator, *In re Nat. Gas Royalties*, 562 F.3d 1032, 1039 n.3 (10th Cir. 2009). And contrary to Relators' suggestion, Opp. at 14 n.12, the D.C. Circuit has specifically rejected arguments that the public disclosure bar is somehow subject to a free-floating test of a relator's level of "opportunism." *Findley*, 105 F.3d at 685 ("While our interpretation of the jurisdictional bar may on occasion prevent *qui tam* lawsuits that may not be truly 'parasitic,' the blocking of freeloading relators who copy their complaints directly from public disclosures is not the FCA's only concern."); *see also United States ex rel., Folliard v. Comstor Corp.*, 308 F. Supp. 3d 56, 77 n.13 (D.D.C. 2018) ("summarily dispens[ing] as unpersuasive" the argument that a relator's "own prior lawsuits cannot operate as a bar because the FCA is concerned with preventing parasitic lawsuits"); *cf. United States ex rel. May v. Purdue Pharma L.P.*, 811 F.3d 636, 642-43 (4th Cir. 2016) (public disclosure bar required dismissal of claim brought by relator who "learned of the relevant facts through knowledge their attorney acquired when previously litigating [a separate suit based on the same fraud]").

Relators likewise argue only briefly that they independently added to what the government already knew. Opp. at 20-21. Relators' discussion of their "independent investigation" is limited to two paragraphs, *id.*, which nevertheless provide detail far in excess of the single conclusory sentence that actually appears in the Complaint, *see* Compl. ¶ 24 (reciting without factual elaboration that Relators meet the legal standard to be an "original source" under 31 U.S.C. § 3730(e)(4)(B)). Relators' failure to "allege specific facts" showing what (if any) independent material information they provided the government before filing suit means they cannot defeat the public disclosure bar, *see United States ex rel. Doe v. Staples, Inc.*, 932 F.

Supp. 2d 34, 41-42 (D.D.C. 2013), *aff'd,* 773 F.3d 83 (D.C. Cir. 2014), and any "further detail" provided in their opposition should be disregarded because "it is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." *E.g., McGinnis v. District of Columbia*, 65 F. Supp. 3d 203, 211 n.1 (D.D.C. 2014) (citation omitted).

But even if the Court were to consider those belated allegations, they still fail because they add nothing material to what the government already knew. Relators claim to have discovered that King Street's offices hosted the bidding room used during Auction 97, Opp. at 16—but the publicly-filed Frequency Advantage LP Agreement had already disclosed that DiNardo (who controlled King Street) would be responsible for providing that space, Frequency Advantage L.P. Agreement, at 1, *docketed herein as* Volpe Decl. Ex. C, ECF No. 155-5. Indeed, the Complaint itself describes that agreement as showing "that Defendants' plan was to use the King Street headquarters to conduct bidding for Auction 97." Compl. ¶ 65. Likewise for Relators' allegation that a U.S. Cellular employee was *physically present* at King Street's offices during the auction, Opp. at 20-21—the Bidding Protocol had already made it a matter of public record that U.S. Cellular would *actually have a vote* in Advantage Spectrum's bids, Bidding Protocol ¶ 2, *docketed herein as* Volpe Decl. Ex. E, ECF No. 155-7.[3] Similarly, the fact that a King Street employee (purportedly under DiNardo's control) was authorized to *communicate* Advantage Spectrum's bids to the FCC, Opp. at 20-21; 47 C.F.R. § 1.2105(a)(2)(iii), added nothing to either DiNardo's already-disclosed power to vote on *determining* those bids, Bidding Protocol ¶ 2, or her public promise to provide "bidding services," Frequency Advantage L.P.

[3] Relators obliquely suggest—in a footnote, and without citation to the Complaint (which contains no such allegation)—that the employee in question was an additional, undisclosed, U.S. Cellular representative on the bidding council. Opp. at 18 n.15. The Court should disregard this non-alleged fact out of hand.

Agreement § 8.1. It is also clear that Mr. Vail's presence in the bidding room during Auction 97, Opp. at 20-21, would not materially add to the disclosed fact that he was a voting member of the bidding council, Bidding Protocol ¶ 2—and that his absence from Advantage Spectrum's offices at the same time (when the partnership had not yet won any assets and its only business was participating in the still-ongoing auction), Opp. at 20, would not materially support an inference of fraud.

The "mere[] add[ition] [of] . . . details . . . about a known [alleged] fraudulent scheme"— like the allegations in the present case that an individual empowered to vote on bidding was physically present in the bidding room, that a person who promised to provide such a room decided to use their own offices instead of renting separate space, or that providing "bidding services" included designating an employee to communicate bids to the FCC—"typically will be found not to have materially added to the publicly disclosed information." *United States ex rel. Reed v. Keypoint Gov't Sols.*, 923 F.3d 729, 756-57 (10th Cir. 2019) (adopting standard from *United States ex rel. Winkelman v. CVS Caremark Corp.*, 827 F.3d 201 (1st Cir. 2016)). Information is material if it "is sufficiently significant or important that it would be capable of 'influencing the behavior of [the government],'" *id.*, and "offering specific examples" of an allegedly wrongful practice "does not provide any significant new information where the underlying [practice] already has been publicly disclosed," *Winkelman*, 827 F.3d at 212. The fact that Relators conducted their own investigation cannot make up for the fact that those efforts failed to reveal substantively more than the government already knew. *See Reed*, 923 F.3d at 760 ("Ms. Reed also is mistaken that her allegations materially add to the public disclosures because she did her own investigation . . . . [T]he 'materially adds' requirement . . . focuses on the *substance* of the allegations, not the *source*."); *Winkelman*, 827 F.3d at 212 (rejecting original-

source claim where "relators trumpet[ed] their personal knowledge of specific instances of alleged overbilling").

## II.     Relators' Failures to Allege Falsity, Scienter, Materiality, and Conspiracy are Cognizable on a Motion to Dismiss and Fatal to the Complaint.

Relators do not dispute that their claims under the FCA require them to plausibly allege falsity, scienter, and materiality—including their conspiracy claim, which requires an underlying statutory violation. U.S. Cellular Mot. at 16-17. With regard to those essential elements, many of Relators' responses boil down to claims that U.S. Cellular is inappropriately raising factual disputes at the pleading stage. That is simply incorrect—Relators are grasping to manufacture factual disputes of any nature to avoid dismissal.[4]

Each of U.S. Cellular's bases for dismissal relies on materials properly considered on a motion to dismiss. Those are either documents that are attached to the Complaint, documents it incorporates by reference, or matters subject to judicial notice. *See, e.g., Bauman v. Butowsky*, 377 F. Supp. 3d 1, 6 (D.D.C. 2019) (quoting *Harris v. Amalgamated Transit Union Local 689*, 825 F. Supp. 2d 82, 85 (D.D.C. 2011). The facts contained in those materials, as well as those alleged in the Complaint itself, demonstrate as a matter of law that Relators have not alleged a plausible claim—let alone a particularized one under Rule 9(b). To the limited extent Relators have also responded on the merits, those arguments fail as well.

---

[4] Relators make much of the fact that U.S. Cellular cites some cases decided at summary judgment, *see, e.g.*, Opp. at 27, 29 n.21, and suggest that doing so amounts to "ask[ing] the Court to apply the standard of review for summary judgment," Opp. at 2. That is incorrect. U.S. Cellular's motion "challenge[s] the sufficiency of [the facts alleged in the SAC] to meet the *legal* standard" for a claim under the FCA, and "[t]he standard for resolution of those legal arguments is the same at the motion to dismiss stage as it is on a motion for summary judgment." *See Mendoza v. Perez*, 754 F.3d 1002, 1016 n.9 (D.C. Cir. 2014). Put another way, Relators are wrong to argue that cases "address[ing] motions for summary judgment" are broadly "inapplicable to the present motion to dismiss"—"[w]hile the [procedural] standard of review does differ . . . the substantive law is the same." *Bohanon v. E. Tenn. Human Res. Agency Inc.*, 2015 WL 5707120, at *4 (E.D. Tenn. Sept. 25, 2015).

### A.    Relators Have Not Plausibly Alleged Any Violation of FCC Regulations That Would Have Rendered a Claim "False."

As set out in U.S. Cellular's motion to dismiss, even claims—like Relators'—based on so-called "legally false" certifications ultimately depend on showing an objectively false statement of *fact*. U.S. Cellular Mot. at 17 (citing, *inter alia*, *United States ex rel. Winter v. Gardens Reg'l Hosp. and Med. Ctr.*, 953 F.3d 1108, 1119 (9th Cir. 2020)). In the context of Relators' claims, that means alleging facts plausibly showing an objective violation of FCC regulations governing the DE program, such that certifications of Advantage Spectrum's eligibility to participate were objectively false. *Id*. Relators have not met that burden.

Nor could they. There was nothing improper or unusual about U.S. Cellular's involvement in Advantage Spectrum's businesses. Just the opposite—FCC regulations specifically permitted U.S. Cellular to own significant equity in qualifying DEs, and to participate in their management without creating an attributable relationship. U.S. Cellular Mot. at 3 (explaining the DE program's goal of *encouraging* investment from large telecommunications providers).

Nevertheless, the Complaint alleges that U.S. Cellular's revenues were attributable to Advantage Spectrum based on two theories. *Id*. at 17-18. First, Relators claim that U.S. Cellular *controlled* Advantage Spectrum. *Id*. at 18-19. Second, Relators claim that U.S. Cellular was affiliated with DiNardo and King Street, who Relators allege in turn were affiliated with Advantage Spectrum—a series of affiliations they assert required attribution of U.S. Cellular's revenues. *Id*. at 19-21. Both theories fail to plausibly allege a false claim, much less allege such a claim with particularity. As U.S. Cellular explained in detail in its motion to dismiss, the facts cognizable at this stage do not—as a matter of law—state any objective violation of FCC regulations.

15

First, the Complaint has not plausibly or with particularity alleged that Advantage Spectrum made any false statement of fact about the nature of its relationship with U.S. Cellular. As discussed in detail *supra*, at Part I.A, and by U.S. Cellular's motion to dismiss, at 11-13, 18-19, the central claim of Relators' Complaint is that the *express terms* of five agreements among the defendants combined to give U.S. Cellular *de facto* control over Advantage Spectrum. Those agreements, in turn, were turned over to the FCC in their entirety, U.S. Cellular Mot. at 11-13 (identifying, summarizing, and referencing the agreements as filed with the FCC)—not, as Relators assert without explanation, in "summary, incomplete, [or] misleading" form, Opp. at 33. Because each of the agreements Relators allege created control was disclosed to the government in full, the Complaint has failed on its face to allege that Advantage Spectrum concealed or misrepresented *any* material *facts* about its relationship with U.S. Cellular. Relators' sole response—repeating their own conclusory allegation that Advantage's certification of its status without including U.S. Cellular's revenues "was false," Opp. at 33—only proves the point. As U.S. Cellular explained in its motion to dismiss, without any showing of factual concealment, Relators' claim ultimately reduces to an argument that Advantage Spectrum (and the FCC) reached the wrong legal conclusion. U.S. Cellular Mot. at 18; *United States ex rel. Swafford v. Borgess Med. Ctr.*, 98 F. Supp. 2d 822, 831-32 (W.D. Mich. 2000), *aff'd,* 24 F. App'x 491 (6th Cir. 2001). Such an argument collapses under settled law: Disagreements over legal interpretations do not give rise to FCA liability—which attaches only to misrepresentations of fact. *United States ex rel. Purcell v. MWI Corp.*, 807 F.3d 281, 287 (D.C. Cir. 2015).

Second, Relators largely ignore U.S. Cellular's arguments with respect to their other theory of falsity—that U.S. Cellular's revenues were attributable to Advantage Spectrum because U.S. Cellular was an affiliate of DiNardo and King Street, who were in turn affiliates of

Advantage Spectrum's. U.S. Cellular Mot. at 19-21. What Relators do say in response is unavailing.

To begin with, Relators have failed to allege *facts* showing U.S. Cellular's affiliation with DiNardo and King Street under the FCC's rules. *Id.* at 19. Under those rules, "affiliation" arises only when one entity controls another, when two entities are controlled by the same third party, or when two entities have an "identity of interest." 47 C.F.R. § 1.2110(c)(5). The Complaint, however, alleges facts showing only that U.S. Cellular and DiNardo have a longstanding business relationship. U.S. Cellular Mot. at 19. And as to King Street, the Complaint does nothing more than provide a one-paragraph summary of a pleading Relators filed in a different case altogether—a clear violation of Rule 8(a). U.S. Cellular Mot. at 20 (discussing Compl. ¶ 52, citing *Sturdza v. United Arab Emirates*, 2010 WL 97986 (D.D.C. Jan. 11, 2010), and *Davis v. Bifani*, 2007 WL 1216518 (D. Colo. Apr. 24, 2007)). Relators respond only by citing, without explanation, a scattering of paragraphs in the Complaint—none of which alleges facts relevant to affiliation under the FCC's rules—nor do Relators explain why their pleading tactics do not violate the Federal Rules of Civil Procedure. Opp. at 33 n.26; *see also* Compl. ¶ 13 (alleging only that U.S. Cellular owns 90% of King Street's equity), ¶ 42 (same), ¶ 44 (stating bare legal conclusion that "U.S. Cellular is affiliated with . . . King Street and . . . DiNardo"), ¶¶ 46-54 (describing U.S. Cellular and DiNardo's general business relationship), ¶¶ 55-65 (describing the terms of defendants' various agreements and Relators' surveillance of Auction 97).

Relators' affiliation theory would also fail as a matter of law even if the Complaint had adequately alleged (and it has not) that U.S. Cellular is in fact an affiliate of King Street and DiNardo. As U.S. Cellular has explained, the FCC's rules do not require attribution of revenues from *affiliates of affiliates*. U.S. Cellular Mot. at 20-21 (discussing 47 C.F.R. § 1.2110(b)(1)(i)).

In other words, affiliation is not transitive, and Relators cannot use a purported chain of affiliations to bridge the gap left by their failure, *see supra* at 16, to adequately allege a false statement as to U.S. Cellular's relationship with Advantage Spectrum itself. Relators make no mention at all of this fatal flaw in their backup theory of falsity. *Cf.* Opp. at 32-34.

In sum, U.S. Cellular has explained in detail why Relators' claims fail as a matter of law—at the very least, because the Complaint identifies no regulatory violation clear enough to show *objective* falsity. U.S. Cellular Mot. at 17 (quoting *Purcell*, 807 F.3d at 287-88). Relators address none of those legal arguments. Instead, they respond in conclusory fashion that the Complaint actually does allege regulatory violations, and that unspecified factual disputes preclude granting U.S. Cellular's motion to dismiss. Opp. at 2, 33. The Court should disregard these clear attempts to distract from the Complaint's failure to state a legal claim.

## B.    Relators Have Not Plausibly Alleged That U.S. Cellular Acted With Scienter.

U.S. Cellular's motion likewise explained three reasons why Relators have failed adequately to allege scienter. First, the Complaint failed to address it at all. U.S. Cellular Mot. at 21-22. Second, the agreements that Relators allege show improper control were in fact disclosed to the FCC. *Id*. at 22. And third, no inference of scienter can be drawn from interpretive differences over FCC regulations. *Id*. at 22-24. The Complaint's allegations do not support a *plausible* inference of scienter, let alone the "strong inference of fraudulent intent" required to state a claim under the FCA. *Comstor*, 308 F. Supp. 3d at 88.

Relators' responses are unavailing. At the threshold, they identify no well-pled facts that support an inference of scienter. Merely recapitulating the Complaint's allegations of falsity, *see* Opp. at 30, is insufficient to support the separate element of scienter. *United States v. Care Alternatives*, 952 F.3d 89, 96 (3d Cir. 2020) ("the plain language of the FCA denotes scienter as an element independent of falsity . . . . Combining the two elements into 'falsity' reads the

scienter element out of the text of the statute."). Nor are Relators correct that scienter cannot be resolved at the motion to dismiss stage. *See id.* Regardless of how "fact-intensive" questions of scienter may prove at summary judgment or trial, *see United States ex rel. Morsell v. Symantec Corp.*, 2020 WL 5651277, at *29 (D.D.C. Mar. 30, 2020) (declining to decide scienter based on presence of "fact-intensive" issues sufficient to defeat *summary judgment*), it remains Relators' burden at the pleading stage to make factual allegations sufficient to state a claim. Like any other element, where the facts alleged cannot support the inference required—here, a "strong inference of fraudulent intent"—scienter may properly be a basis for dismissal. *See, e.g. Comstor*, 308 F. Supp. 3d at 88 (noting at motion to dismiss stage that "the scienter requirement under the FCA . . . is 'addressed through strict enforcement,' and is 'rigorous,' in order to allay 'concerns about fair notice and open-ended liability'").

Finally, Relators mischaracterize U.S. Cellular's argument that the ambiguity of the relevant FCC regulations (including the *de facto* control standard, which the D.C. Circuit has criticized as a "meaningless recitation" that enables the FCC to "find compliance or noncompliance . . . arbitrarily," *Tel. and Data Sys., Inc. v. FCC*, 19 F.3d 42, 50 (D.C. Cir. 1994), negates any weak inference of scienter that the Complaint might otherwise support. *See* U.S. Cellular Mot. at 22-24. U.S. Cellular does not argue (as Relators suggest, *see* Opp. at 30-31) that it was *confused* or *ignorant* regarding the FCC's regulations. Rather, it argues that its good-faith interpretation of those regulations, which the FCC has never rejected, was plainly reasonable— such that there is no basis for a Court to infer scienter even if there were some regulatory violation. *See* U.S. Cellular Mot. at 23 (quoting *Purcell*, 807 F.3d at 287-88); *United States ex rel. K&R Ltd. P'ship v. Mass. Hous. Fin. Agency*, 530 F.3d 980, 982–84 (D.C. Cir. 2008)

(finding no inference of scienter based on defendant's reasonable interpretation of ambiguous mortgage note, even if defendant's reading was not ultimately "the better reading").

Even if a regulation's ambiguity is not *determinative* of scienter, Relators must allege facts sufficient to support a contrary inference in the face of a legally reasonable interpretation. They have failed to do so, either by pointing to an FCC interpretation "warning off" U.S. Cellular, *see Purcell*, 807 F.3d at 290, or by identifying any other circumstances supporting an inference of knowing fraud, *see, e.g.*, *United States ex rel. Phalp v. Lincare Holdings, Inc.*, 857 F.3d 1148, 1155 (11th Cir. 2017) (recognizing possibility of proving scienter by factual showing of defendant's "knowing[] disregard[] [for] the proper interpretation of an ambiguous regulation"). Because Relators have alleged no facts suggesting fraud notwithstanding U.S. Cellular's legally reasonable interpretation of the FCC's rules, they have not shown a right to relief above the speculative level, and their claims should be dismissed.

## C. Relators Have Not Plausibly Alleged that Any False Statements Were Material to the FCC's Decisionmaking.

As U.S. Cellular has argued, the Complaint fails on its face to allege materiality. *See Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2002 (2016) ("a misrepresentation about compliance with a statutory, regulatory, or contractual requirement must be material to the government's payment decision in order to be actionable under the False Claims Act."). Not only are the Complaint's allegations of materiality generic and conclusory, U.S. Cellular Mot. at 25, the fact that the FCC actually granted Advantage Spectrum's licenses with full knowledge of the extensive public disclosures conclusively negates materiality. *Id.* at 25-26. And moreover, the fact that the FCC has taken no adverse action against any defendant since learning of Relators' allegations also shows that they are immaterial. *Id.* at 26-27; *see also United States ex rel. Harman v. Trinity Indus. Inc.*, 872 F.3d 645, 663 (5th Cir. 2017)

("[C]ontinued payment by the federal government after it learns of the alleged fraud substantially increases the burden on the relator in establishing materiality."). That inference is strongly reinforced by FCC's determination that two other bidders in Auction 97, the same auction in which Advantage was awarded its spectrum licenses and bid credits, *were* disqualified as designated entities because they were *de facto* controlled by a large business. *See SNR Wireless LicenseCo, LLC v. FCC*, 868 F.3d 1021, 1028 (D.C. Cir. 2017).

Relators offer three responses—that *Escobar*'s materiality requirement does not apply to so-called "fraud in the inducement" claims, that *Escobar* does not apply to express false certifications, and that even under *Escobar* they have pled materiality. All three responses fail.

First, to extent Relators are relying on a "fraud in the inducement" theory to support their materiality argument, doing so does not allow them to evade the requirement of materiality under the FCA. *Contra* Opp. at 24-25. Rather, inducement claims simply shift the point in time at which materiality is evaluated—rather than evaluating whether false statements were material to any particular decision to pay or forego payment under an existing contract, in a "fraud in the inducement" case the question is whether they were material to the government's agreement to enter the contract in the first place. *See United States ex rel. Westrick v. Second Chance Body Armor Inc.*, 128 F. Supp. 3d 1, 18 (D.D.C. 2015) ("To prevail under [a] fraudulent inducement theory, [the government] must prove not only that the omitted information was material but also that the government was induced by, or relied on, the fraudulent statement or omission when it awarded the contract" (quoting *United States ex rel. Thomas v. Siemens AG*, 991 F. Supp. 2d 540, 569 (E.D. Pa. 2014)); *see also United States ex rel. Marcus v. Hess*, 317 U.S. 537, 543–44 (1943) (recognizing inducement liability under FCA because "[t]he government's money *would never have been placed in the joint fund* for payment to respondents had its agents known the

bids were collusive" (emphasis added)). Even if Relators had properly alleged a fraud in the inducement claim—which they did not—the question still remains whether U.S. Cellular's alleged misrepresentations induced—that is, *were material to*—the FCC's decision to grant subsidized licenses to King Street, Carroll, and Barat.[5] That materiality inquiry, like any other, is governed by the standard set out in *Escobar*. *See United States ex rel. Campie v. Gilead Scis., Inc.*, 862 F.3d 890, 902 (9th Cir. 2017) (applying *Escobar* to fraudulent inducement claim); *D'Agostino v. ev3, Inc.*, 845 F.3d 1, 7–8 (1st Cir. 2016) (same); *United States ex rel. Miller v. Weston Educ., Inc.*, 840 F.3d 494, 504 (8th Cir. 2016) (same).

Second, the application of *Escobar* is not limited to implied false certification claims. Indeed, while *Escobar* itself held that implied false certifications may be a *type* of "actionable misrepresentation," its discussion of materiality discussed "misrepresentations" generally— without any limitation to one type or another. *Escobar*, 136 S. Ct. at 2002; *see Harman*, 872 F.3d at 663 (applying *Escobar* in express certification case); *United States ex rel. Kelly v. Serco, Inc.*, 846 F.3d 325, 333 (9th Cir. 2017) (same).

Third, Relators have plainly failed to plead materiality under the standard set forth in *Escobar*. As noted above, the FCC granted Advantage Spectrum's licenses (the exact decision point at which Relators concede materiality should be evaluated) with full knowledge of not only the defendants' numerous public disclosures, as well as the Prior *Qui Tam* Amended Complaint, but this litigation itself. *See* U.S. Cellular Mot. at 4-6, 11-12. Relators argue that the question of the government's knowledge of the Prior *Qui Tam* Amended Complaint is a factual issue that

---

[5] Judge Lamberth's recent opinion in *Scollick*, on which Relators extensively rely, is explicit on this point. As *Scollick* explains, "the fraud in the inducement theory already has a strict materiality requirement baked in," and that requirement, like "any understanding of the concept of materiality," "looks to the likely or actual behavior" of the government. *Scollick ex rel. United States v. Narula*, 2020 WL 6544734, at *9 (D.D.C. Nov. 6, 2020).

cannot be decided at this stage, Opp. at 26, but that is plainly incorrect where the FCC in fact *requested a response to the complaint*. Even at the motion to dismiss stage, that public agency action is subject to judicial notice. *See Covad Commc'ns Co. v. Bell Atl. Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005).

Likewise, Relators argue that the FCC's decision to grant the licenses does not mean that any violations were immaterial, only that the FCC incorrectly believed there were no violations. That is a distinction without a difference for purposes of FCA liability—particularly where the FCC has continued to take no action as Relators have continued to press their claims—and accepting Relators' attempt to second-guess the basis for the FCC's actions would render *Escobar*'s express direction to consider the government's actual behavior a nullity. *See Harman*, 872 F.3d at 663 ("[C]ontinued payment by the federal government after it learns of the alleged fraud substantially increases the burden on the relator in establishing materiality.").

### D.      Relators Have Not Plausibly Alleged a Conspiracy.

Conspiracy liability depends on "establish[ing] an underlying FCA violation." *United States ex rel. Kasowitz Benson Torres LLP v. BASF Corp.*, 929 F.3d 721, 728 (D.C. Cir. 2019). Thus, for the same reasons that Relators have failed to adequately allege an underlying FCA violation, their conspiracy claim must also fail. U.S. Cellular Mot. 16-17.

### CONCLUSION

The FCC has had numerous opportunities to assess U.S. Cellular's compliance with the designated entity rules, and has used them to repeatedly validate U.S. Cellular's practices. The FCC has granted spectrum licenses and bid credits to entities in which U.S. Cellular is an investor in multiple auctions over nearly a decade, including more than once in the wake of the Prior *Qui Tam* Amended Complaint. Relators are opportunists seeking to extract a greenmail settlement on

the basis of claims that are foreclosed by the FCA's public disclosure bar and which otherwise lack merit. The Complaint should be dismissed with prejudice.


Dated: December 16, 2020                         Respectfully submitted,


                                                 */s/ Frank R. Volpe*

                                                 Frank R. Volpe
                                                 Robert Joseph Conlan, Jr.
                                                 SIDLEY AUSTIN LLP
                                                 1501 K Street, NW
                                                 Washington, DC 20005
                                                 Telephone: 202-736-8000
                                                 Fax: 202-736-8711
                                                 fvolpe@sidley.com
                                                 rconlan@sidley.com