**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** *ex rel.,* **MARK J. O'CONNOR AND SARA F. LEIBMAN,** Plaintiffs-Relators, v. **UNITED STATES CELLULAR CORPORATION,** *et al.* Defendants. | **Civil Action No.: 20-2070 (TSC)** |

**PLAINTIFFS/RELATORS' RESPONSE TO DEFENDANTS' NOTICE OF
SUPPLEMENTAL AUTHORITY**

Relators Mark J. O'Connor and Sara F. Leibman, by and through counsel, respectfully

submit this response to Defendants' Notice of Supplemental Authority (ECF No. 164), *i.e.,* the

recent decision in *United States ex rel. Vermont National Telephone Co. v. Northstar Wireless*

*LLC*, Civil Action No. 15-0728 (CKK) (D.D.C. Mar. 23, 2021). Like the Defendants here, the

DISH Defendants engaged in a scheme to acquire wireless communications spectrum licenses

using bid credits that are reserved exclusively for small and very small businesses ("Designated

Entities" or "DEs").  Contrary to the Defendants' claims, however, the decision confirms that the

similar scheme alleged here violates the False Claims Act, while the Court's narrow ruling on

materiality rests on a theory and facts that differ significantly from the theory and facts in this case.

As fronts for DISH, Northstar Wireless and SNR Wireless won 702 licenses in FCC

Auction 97, which ended on January 29, 2015. On March 2, 2015, using $3.3 billion in very small

1

business credits, the entities paid the total discounted price for the licenses, $10 billion. On May 11, 2015, seven parties petitioned the FCC to deny their license applications on the grounds that they were controlled by DISH, that the failure to disclose DISH's controlling interest was a material misrepresentation, and that they had not adequately disclosed their joint bidding agreements with DISH. Mem. Op. at 18.

On August 18, 2015, the FCC found that, in fact, the entities were controlled by DISH, and were, thus, ineligible for DE benefits. *Id.* at 19. The FCC did not find that the entities had made material misrepresentations or failed to disclose any agreements in their applications, and concluded that the companies could retain the licenses if they paid the full price ($13.3 billion) for them. *Id.* The Defendants elected to pay full price for some of the licenses and to default on the others. The FCC then ordered them to pay the difference between their winning bids and the prices of the re-auctioned licenses, as well as an additional payment equal to the lesser of fifteen percent of their bids, or fifteen percent of the winning bids for the re-auctioned licenses.[1] *Id.*

Against this history, the Vermont Telephone Relators alleged a "narrow" theory of fraud, *i.e.,* that the alleged false claims "were the [Defendants'] certifications . . . that they had disclosed all (oral or written) instruments, agreements and understandings relevant to their claimed designated entity status . . ." *Id.* at 21, 32. The Court found, however, that there were "several unique factors" that "weigh[ed] against the materiality of these allegedly false claims." *Id.* at 33.

First, in light of the FCC's ruling on August 18, 2015 denying DE bid credits to Northstar and SNR, the disclosure of any secret control agreements with DISH would not have changed the FCC's order. *Id.* The Court agreed with the Relators that the government was left with a $3.3

---

[1] The D.C. Circuit affirmed the determination that Northstar and SNR were ineligible for bid credits, but instructed the FCC to permit the entities to renegotiate their agreements with DISH and "cure" the deficiencies that prevented them from being eligible for the bid credits. *SNR Wireless License Co, LLC v. FCC,* 868 F.3d 1021 (D.C. Cir. 2017). On November 23, 2020, the FCC again found the entities ineligible for the bid credits; an appeal is pending.

billion shortfall between March 2, 2015, when they made the discounted payments, and August 15, 2015, when the FCC denied the bid credits. However, the Court said, the question still remained whether the relators had plausibly alleged a false statement capable of influencing the FCC's decision to permit the discounted March 2, 2015 payments. Because the FCC did not review the applicants' long-form applications until *after* the March 2, 2015 payments had been made, it was "not plausible that Northstar Wireless and SNR Wireless's non-disclosure of any secret agreements would have influenced the government's decision to permit a discounted payment of $10 billion on March 2, 2015." *Id*. at 34. Furthermore, the Court concluded, Northstar and SNR did disclose and submit a number of agreements regarding their relationship with DISH, and, from the agreements that were disclosed, the FCC was able to conclude that DISH controlled both entities, making them ineligible for the bid credits.

Unlike the DISH Defendants, the Defendants in this case have enjoyed the benefits of their fraudulently obtained licenses, including retaining over $100 million in DE bid credits for which they were and are ineligible. Unlike the Vermont Telephone Relators, whose claim to materiality rested on the alleged nondisclosure of a secret agreement the disclosure of which would not have changed the outcome, Relators here have alleged numerous instances of *express* false claims, omissions, and certifications by Defendants the exposure of which falsity would have denied them the licenses and/or required the repayment of the bid credits.   These express false claims, certifications, and omissions were made in the Defendants' short-form and long-form applications, and include, *inter alia*:

(1)      false claims and certifications that William Vail had both *de facto* and *de jure* control of Advantage (Complaint ¶¶8-9, 37 (*sic)*, 42-45, *see also* ¶¶ 56-95);

(2)      failure to disclose the Management Services Agreement referred to in the Advantage Limited Partnership Agreement, leaving the FCC with the false impression that William Vail alone would be making all decisions about technology, network design, construction, operation, marketing, billing, accounting, and other functions; and

(3)      entering into and carrying out a similar scheme of false claims and certifications with respect to other purported DEs that were actually controlled by U.S. Cellular (Complaint ¶¶ 46-54.

Unlike in the DISH case, Relators here have alleged the Defendants' violations of the Controlling Interests, Management Agreement Controlling Interest, Affiliation and Joint Venture Rules, and identified numerous *express* material false claims and certifications. Further, Relators' allegations against Advantage include U.S. Cellular's and DiNardo's undisclosed fraud in the King Street case, which tainted Advantage because DiNardo, as U.S. Cellular's proxy and 49 percent owner of Advantage's parent, controlled Advantage's bidding.

In addition, Defendants' post-auction conduct belies Advantage's false claims made in its short-form and long-form applications and subsequent DE Annual Reports that Vail exercised *de facto* control over Advantage. Almost five years after the licenses were granted and with $400 million of unused assets and massive debt, Advantage still has not taken a single action that would be expected of an FCC licensee or an operating wireless company. Nor has Advantage taken any steps to clear incumbent federal agency licensees from the spectrum. And, although the FCC's first construction deadline is July 5, 2022, the company has not started building a network.

Indeed, instead of acting like a legitimate business owner and licensee, Vail effectively turned over his licenses to U.S. Cellular last year. Specifically, in July 2020, U.S. Cellular and Advantage filed FCC notices that they had reached an agreement for Advantage to lease

substantially all of its licensed spectrum to U.S. Cellular for the entire term of the license. The upshot is that U.S. Cellular received a $110 million discount on licenses it always intended to use for itself and, with these leases, Advantage will never be obligated to build out a network or offer wireless services to any customers.

Defendants' numerous false claims and certifications resulted in the FCC's decision to award the licenses and bid credits to Advantage and the other entities.

Contrary to Defendants' argument, the recent DISH decision confirms previous decisions that false claims and certifications of eligibility for DE benefits are material to the FCC's decision to provide bid credits.

Dated: April 20, 2021                                    Respectfully submitted,

                                                     /s/ *Adriaen M. Morse, Jr.*

                                                     Adriaen M. Morse, Jr., DC Bar No. 483347
                                                     Sara M. Lord*
                                                     John P. Rowley III, DC Bar No. 392629
                                                     Micah L. Kanters, DC Bar No. 198563
                                                     Georgina C. Shepard*
                                                     ARNALL GOLDEN GREGORY LLP
                                                     1775 Pennsylvania Avenue NW, Suite 1000
                                                     Washington, DC 20006
                                                     Telephone:  202.677.4058
                                                     Fax:  202.677.4059
                                                     adriaen.morse@agg.com
                                                     sara.lord@agg.com
                                                     john.rowley@agg.com
                                                     micah.kanters@agg.com
                                                     georgina.shepard@agg.com

                                                     Benjamin James Vernia, DC Bar No. 441287
                                                     THE VERNIA LAW FIRM
                                                     1455 Pennsylvania Avenue NW, Suite 400
                                                     Washington, DC 20004
                                                     Telephone:  202.349.4053
                                                     Fax:  866.572.6728
                                                     Email: bvernia@vernialaw.com

*Attorneys for Relators Mark J. O'Connor
 and Sara F. Leibman*

*\* Admitted pro hac vice*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 20th day of April, 2021, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing and transmittal of Notice of Electronic Filing, which will automatically send e-mail notification of such filing to all attorneys of record.


*/s/ Adriaen M. Morse Jr.*
Adriaen M. Morse Jr.