UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**, *ex rel.* **MARK J. O'CONNOR** and **SARA F. LEIBMAN**<br><br>Plaintiffs,<br><br>v.<br><br>**UNITED STATES CELLULAR CORPORATION**, *et al.*,<br><br>Defendants. | Civil Action No. 20-cv-2070 (TSC) |

## MEMORANDUM OPINION

Plaintiff-Relators Mark J. O'Connor and Sara F. Leibman filed this False Claims Act action against Defendants Advantage Spectrum, L.P., Allison Cryor DiNardo, Frequency Advantage, L.P., King Street Inc., King Street Wireless, L.P., Nonesuch, Inc., Telephone and Data Systems, Inc., United States Cellular Corporation, and USCC Wireless Investment, Inc. in the United States District Court for the Western District of Oklahoma, ECF No. 2. After the United States declined to intervene, ECF No. 42, the case was transferred upon joint motion of the Defendants to this court on July 30, 2020, ECF No. 127. Defendants have filed three motions to dismiss: one from DiNardo, King Street, Inc., and King Street, L.P., ECF No. 151; one from Advantage Spectrum, L.P. and Nonesuch, Inc., ECF No. 153; and a third from Telephone and Data Systems, Inc., United States Cellular Corporation, and USCC Wireless Investment, Inc., ECF No. 155. For the reasons set forth below, the court will **GRANT** each motion to dismiss without prejudice, and **GRANT** Plaintiff-Relators' motion for leave to amend their complaint.

Page **1** of **14**

## I.   BACKGROUND

### A. Designated Entities and Spectrum Auctions

Electromagnetic waves of varying frequencies carry the information necessary for Americans to enjoy technologies ranging from the radio to Wi-Fi.  Compl. ¶ 2, ECF No. 2.  The electromagnetic frequency ("RF") of a wave is unique to a particular source; National Public Radio in Washington, D.C. appears at 88.5 MHz, while C-SPAN is at 90.1 MHz.  Those stations do not "own" their frequencies; instead, the Federal Communications Commission ("FCC") regulates the RF spectrum, licensing control over certain bands of spectrum.  47 U.S.C. § 151, *et seq*.  In doing so, the FCC seeks to ensure the distribution of licenses and frequencies provides a "fair, efficient, and equitable distribution" of services.  *Id.* § 307(a), (b).  Accordingly, it distributes licenses through a competitive auction system.  *See id.* § 309(j).

Unsurprisingly, spectrum auction bids are expensive.  *See, e.g.*, Press Release, FCC, *FCC Concludes Largest Ever Spectrum Auction* (Mar. 12, 2020), fcc.gov/document/fcc-concludes-largest-ever-spectrum-auction (detailing an auction with $7 billion in bids).  To ensure fairness and access, Congress and the FCC created the Designated Entity ("DE") program, under which women and minority-owned businesses, as well as small businesses below a certain gross revenue threshold, are offered "bidding credits" for license auctions.  47 C.F.R. § 1.2110(f)(1), (2) (2012);[1] *see also In the Matter of Implementation of Section 309(j) of the Commc'ns Act – Competitive Bidding*, 9 FCC Rcd. 5532 ¶ 15 (1994).  Credits are percentage-based—the FCC pledges to credit a certain percentage of a DE's winning bid.  *Id.*  For small businesses, the size of a credit varies depending on business revenue (e.g., businesses with less than $4 million in revenue are eligible for 35% credits).  *Id.*; 47 U.S.C. § 309(j)(4)(D).

---

[1] The court relies on the regulation as it existed in 2014, when the operative facts occurred.

In considering a business's DE status, the FCC calculates the business's gross revenue by aggregating the gross revenues of the business, the business's affiliates, the business's controlling interests, the affiliates of those controlling interests, and the entities with which the business has an "attributable material relationship." 47 C.F.R. § 1.2110(b)(1) (2012). Affiliates are individuals or entities that directly or indirectly control or are otherwise controlled by the prospective DE business. *Id.* § 1.2110(c)(2)(ii)(J)(5)(i) (2012). A controlling interest includes any entities that had *de facto* or *de jure* control of the applicant. *Id.* § 1.2110(c)(2)(i). While *de jure* control is defined, *de facto* control is assessed on a "case-by-case basis." *Id.*

The FCC reviews a business's DE status twice. First, the business must complete a pre-auction short-form application certifying that it is eligible for DE status. *See* FCC Form 175, transition.fcc.gov/Forms/Form175/175.pdf. If the business wins a bid for a spectrum license, it then completes a long-form application: a significantly longer questionnaire asking for the business's affiliates and controlling interests, as well as their respective assets and gross revenues. *See* FCC Form 601, transition.fcc.gov/Forms/Form601/601.pdf.

Once a license is awarded, a DE may not transfer it to a business that would have otherwise been ineligible for a bidding credit for at least 5 years, or risk having to pay back a portion of their subsidy. *See* 47 C.F.R. § 1.2111(b)(2)(i). A DE must also submit an annual report certifying its continued eligibility for DE status. *Id.* § 1.110(n)(1), (2). Despite these requirements, non-qualifying businesses are not barred from interacting with DE entities; in fact, the FCC seeks to promote economic opportunity for DE owners—especially those owned by minorities or women—by encouraging large companies to invest in DEs to avail themselves of their licensed spectrum. *See, e.g.*, *In the Matter of Implementation of Section 309(j) of the Commc'ns Act – Competitive Bidding*, 9 FCC Rcd. 5532 ¶ 15 (1994).

B. <u>Parties</u>[2]

Plaintiff-Relators Mark J. O'Connor and Sara F. Leibman are attorneys specializing in communications law. Compl. ¶¶ 11, 12.

Defendant Telephone and Data Systems, Inc. ("TDS") is a publicly held corporation that owns 84.26% of Defendant United States Cellular Corporation ("US Cellular"), the United States' fifth-largest commercial mobile phone operator. Compl. ¶¶ 13-14, 19. US Cellular wholly owns and controls Defendant USCC Wireless Investment, Inc ("USCCWI"). *Id.* ¶ 14.

Defendant Allison Cryor DiNardo is a Virginia resident who is the sole owner of Defendant Nonesuch, Inc. and the sole shareholder and general partner of Defendant King Street, Inc. *Id.* ¶16-17. King Street, Inc. is the general partner in Defendant King Street Wireless, L.P. ("King Street, L.P."), a limited partnership that obtained 152 spectrum licenses in the 700 MHz band in FCC Auction 73. *Id.* USCCWI is a limited partner in King Street, L.P. *Id.* ¶ 16.

Defendant Frequency Advantage, L.P. ("Frequency") is a limited partnership between Nonesuch, Inc.—a limited partner—and general partner Sunshine Spectrum, Inc, which is wholly owned by William Vail.[3] *Id.* ¶ 16. Sunshine Spectrum owns 51% of Frequency Advantage, L.P., while Nonesuch, Inc. owns 49% of Frequency Advantage, L.P. *Id.* Frequency Advantage, L.P. is the general partner and 10% equity holder in Defendant Advantage Spectrum, L.P ("Advantage"). *Id.* ¶¶ 16, 19. USCCWI is the limited partner and 90% equity holder in Advantage Spectrum, L.P. *Id.* Advantage Spectrum participated as a DE in FCC Auction 97. *Id.* ¶¶ 18, 19.

---

[2] Figure 1 in the Appendix provides a chart of these relationships.

[3] William Vail was initially named as a Defendant but was dismissed without prejudice from this lawsuit by Plaintiff-Relators on April 4, 2020, ECF No. 85.

C. **Factual Background**

On May 19, 2014, the FCC announced Auction 97, which would auction 1,614 spectrum licenses later that year. *See* Press Release, FCC, *AWS-3 Auction Announced; Comment Sought*, available at fcc.gov/document/aws-3-auction-announced-comment-sought. Advantage, L.P. registered for this auction as a "very small business," seeking a 25% bidding credit as a business with gross revenues under $15 million. *See* US Cellular, USCC Wireless Investment, and Telephone and Data Systems Mot. to Dismiss ("USC MTD"), Ex. H., Advantage, L.P. Form 175 at 2, ECF No. 155-10 ("Form 175"). Its application stated that Vail, through Sunshine, had both *de facto* and *de jure* control of Frequency, Advantage's general partner. *Id.*, Ex. 1: Ownership Info. Addendum. Advantage also claimed to not have any affiliates except for Frequency, Sunshine Spectrum, and Vail's family trust. *Id.*

Auction 97 closed on January 29, 2015, with Advantage securing 124 licenses at a total cost of $451,072,000. Compl. ¶ 43. Applying its 25% bidding credit, Advantage paid a total of $338,304,000 into the Federal Treasury on or around March 2, 2015. *Id.* In its post-auction long-form application, Advantage made the same claims regarding its eligibility for DE status as it had in its Form 175. *Id.* ¶ 43; *see generally* USC MTD, Ex. I, Advantage, L.P. Form 601, ECF No. 155-11.

Plaintiff-Relators claim Advantage was not a genuine DE that took investment from USCCWI, and that U.S. Cellular controls Advantage directly, as well as indirectly, through its alleged affiliates, King Street LP and DiNardo. *Id.* ¶ 44. Their Complaint alleges four violations of the federal False Claims Act (FCA): (1) falsely presenting claims for payment from the FCC, in violation of 31 U.S.C. § 3729(a)(1)(A); (2) making or using a false record to receive payments from the FCC, in violation of 31 U.S.C. § 3729(a)(1)(B); (3) making or using a false record to

avoid making payments to the federal government, in violation of 31 U.S.C. § 3729(a)(1)(G); and (4) conspiracy in violation of 31 U.S.C. § 3729(a)(1)(C).

Because each motion to dismiss makes the same substantive arguments in favor of dismissal, the court will address them jointly.

## II.   LEGAL STANDARD

A motion to dismiss for failure to state a claim under Federal Rule of Procedure 12(b)(6) tests the legal sufficiency of a complaint. *See Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). To survive such a motion, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 67 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when the facts alleged allow the court to reasonably infer the defendant's culpability for the misconduct alleged. *Id.* In drawing such reasonable inferences, the court must grant the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting *Schuler v. United States*, 61 F.2d 605, 608 (D.C. Cir. 1979)).

The court is limited to considering "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint, and matters of which the court may take judicial notice." *Fillmore v. AT&T Mobility Servs. LLC*, 140 F. Supp. 3d 1, 3 (D.D.C. 2015) (quoting *Equal Emp't Opportunity Comm'n v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997)) (cleaned up). Facts properly before the court must be sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56.

## III.   ANALYSIS

Defendants' Motions to Dismiss present two Rule 12(b)(6) defenses. First, Defendants argue that the court should dismiss Plaintiff-Relators' claims because of the FCA's public

disclosure bar, which is a statutory affirmative defense requiring a court to dismiss an action where a relator's claim is based on allegations and transactions made public by sources other than the relator before the complaint was filed. *See* 31 U.S.C. § 3730(e)(4).

The public disclosure bar applies if "substantially the same allegations or transactions" were publicly disclosed in a hearing in which the Government or its agent was a party, in certain federal reports, hearings, audits, or investigations, or in the new media. 31 U.S.C. § 3703(e)(4)(A). However, if the relator was the "original source" of the information on which their allegations are based, and that information "materially adds to the publicly disclosed allegations or transactions," the public disclosure bar does not apply. *Id.* § 3703(e)(4)(B); *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 467 (2007) (defining "original source").

Second, Defendants argue that regardless of the public disclosure bar, Plaintiff-Relators have failed to show an objectively false claim, scienter, or that the allegedly false claims were material to the government payments in question. The court need not reach this argument, however, because the public disclosure bar is an insurmountable defense to Plaintiff-Relators' claims as currently pled.

**A. <u>Public Disclosure Bar</u>**

The D.C. Circuit has held that previously disclosed "allegations or transactions that are substantially similar to those in the public domain" are sufficient to invoke the public disclosure bar. *United States ex rel. Findley v. FPC-Boron Emps.' Club*, 105 F.3d 675, 682 (D.C. Cir. 1997). The court must determine if "the government already ha[d] enough information to investigate the case and to make a decision whether to prosecute' or where the information 'could at least have alerted law-enforcement authorities to the likelihood of wrongdoing.'" *United States ex rel. Davis v. Dist. of Columbia*, 679 F.3d 832, 836 (D.C. Cir. 2012) (quoting *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 654 (D.C. Cir. 1994)

(internal quotation omitted)).  In its "foundational" formulation of this inquiry, the D.C. Circuit characterized the quest algebraically.  *U.S. ex rel. Shea v. Cellco P'ship*, 863 F.3d 923, 933 (D.C. Cir. 2017) (citing *Springfield Terminal*, 14 F.3d at 654).  If an allegation of fraud (Z) requires both a misrepresented state of facts (X) and a true state of facts (Y), such that X + Y = Z, then the public disclosure bar applies if both X and Y are in the public domain and would alert the government to "the likelihood of wrongdoing."  *Id.*  Plaintiff-Relators allege that U.S. Cellular directly and indirectly controls Advantage through King Street, L.P., sidelining Vail as Advantage's general partner.  Compl. ¶ 44.[4]

Plaintiff-Relators support their claim that U.S. Cellular controls Advantage through: (1) evidence "shown in detail" in a separate case before this court, *Id.* ¶ 52 (citing *O'Connor v. U.S. Cellular*, 20-cv-2071 (D.D.C. Apr. 8, 2015) ("*O'Connor II*"); (2) Advantage's Auction 97 FCC filings, *Id.* ¶¶ 58-61, 74-75, 77, 87, 91-92; and (3) surveillance and private investigations of Advantage's and King Street L.P's office and employees, *Id.* ¶¶ 60, 62 & n.7, 64-65, 68, 73 & n.8, 83.  Defendants claim that these allegations and transactions have already been publicly disclosed, and thus cannot form the basis of a FCA claim.  King Street and DiNardo Mot. to Dismiss 12-15, ("KSW MTD"); Advantage and Nonesuch Mot. to Dismiss 14-22, ("Adv. MTD"); US Cellular, USCCWI, and TDS Mot. to Dismiss 10-15, ("USC MTD").

First, the court cannot consider Plaintiff-Relators' claims that are supported only by evidence "shown in detail" in *O'Connor II*.  A party may only incorporate by reference statements or exhibits otherwise made or included in a pleading in the matter currently before the court, Fed. R. Civ. P. 10(c), and may not incorporate by reference pleadings made in a separate action, even if between the same parties.  *See, e.g.*, 5A Wright & Miller, *Federal Practice and*

---

[4] Figure 2 in the Appendix provides a chart of these relationships as alleged by Plaintiff-Relators.

*Procedure* § 1326 (4th ed.) (collecting cases). *O'Connor II*—as Plaintiff-Relators themselves characterize—concerns a different auction and does not name Advantage or Nonesuch as Defendants. Joint Status Rep. at 3-4, ECF No. 141. Consequently, the court cannot consider matters on which Defendants have not had the opportunity to respond, and therefore declines to consider this evidence.

Second, Plaintiff-Relators' reliance on Advantage's FCC filings does not overcome the public disclosure bar. Plaintiff-Relators rely on six documents to make their case against Defendants: (1) the Frequency partnership agreement between DiNardo and Vail, Compl. ¶¶ 60, 61; (2) the Advantage partnership agreement between Frequency and U.S. Cellular, Compl. ¶¶ 74-75, 77; (3) the Bidding Protocol defining how Advantage would bid during Auction 97, Compl. ¶¶ 58-59; (4) the Frequency and (5) Advantage Loan and Security Agreements governing U.S. Cellular's extension of credit for Frequency, Compl. ¶ 87; and (6) U.S. Cellular's 2014 annual report to shareholders describing its participation in Auction 97 through its "financial interest" in Advantage, Compl. ¶ 90. Plaintiff-Relators claim that a review of these documents reveals U.S. Cellular's direct and indirect control of Advantage. For example, Plaintiff-Relators aver that the Bidding Protocol Agreement ("BPA") established a three-person bidding council comprised of DiNardo, Vail, and a U.S. Cellular representative, to advise and review every Advantage bid in Auction 97. Compl. ¶ 58. They also claim that a BPA provision set a maximum price for each bid and required Advantage to obtain the unanimous consent of the bidding council to exceed that bid price. *Id.* Because the BPA maximum bid price was set so low, Vail was forced to seek the permission of U.S. Cellular and DiNardo for each bid in Auction 97. *Id.* This, Plaintiff-Relators argue, was a cession of all control over Advantage's bids to U.S. Cellular. *Id.*

But as Defendants observe, the first five documents are available on the FCC's public docket, while the sixth is publicly accessible on U.S. Cellular's website and was submitted for the FCC's review as part of the Auction 97 process. *See* Attachments to Advantage Spectrum, L.P. Auction 97 Application, FCC Universal Licensing System, https://wireless2.fcc.gov/UlsApp/ApplicationSearch/applAdminAttachments.jsp?applID=9573766.[5]  A relator cannot overcome the public disclosure bar by only contributing "speculation, background information or collateral research" to publicly existing information. *Shea*, 863 F.3d at 934 (quoting *United States ex rel. Oliver v. Phillip Morris USA Inc.*, 826 F.3d 466, 479 (D.C. Cir. 2016)). Advantage's public FCC filings would have given the Government sufficient notice to "adequately investigate the case and to make a decision whether to prosecute".

This brings the court to Plaintiff-Relators' remaining evidence: their surveillance and private investigations of Defendants' offices and employees. A claim may survive the public disclosure bar if the "true state of facts [includes] . . . nonpublic information." *Shea*, 863 F.3d at 934. But it is not enough to simply allege that nonpublic information exists; relators must provide enough information to make the entire body of evidence in a claim not "substantially the same" as what has already been publicly disclosed. 31 U.S.C. § 3730(e)(4)(A).

Plaintiff-Relators' surveillance information, though nonpublic, fails to do so. Construing Plaintiff-Relators' claims as true, their surveillance and private investigation shows that: (1) a U.S. Cellular executive was present at the Auction 97 bidding, Compl. ¶ 60; (2) Advantage conducted this bidding from King Street's Virginia offices, *Id.*; (3) one of Advantage's designated bidders—Stephen Hinz—was a King Street employee, *Id.* ¶ 62 & n.7; (4)

---

[5] The Court may take judicial notice of public records incorporated by reference in the Complaint at ¶¶ 42-43, without converting Defendants' motions to dismiss to one for summary judgment. *Ruffin v. Gray*, 443 Fed. Appx. 562, 563-64 (D.C. Cir. 2011).

Advantage's Florida offices were unused, *Id.* 64-65, 68; and (5) Advantage and King Street shared a lawyer, *Id.* ¶ 73 & n.8.

These facts merely add information to that contained in the public FCC filings. That King Street would support Advantage's bidding process is evident from the FCC filings. Frequency's limited partnership agreement stated that King Street would provide Advantage with "a bidding room and assist in the conduct [sic] the bidding activities." Adv. MTD, Ex. E at 1. The agreement shows that parties shared the same lawyers. *Id.* at 62. And while Hinz's employment information was nonpublic, it is not enough to make Plaintiff-Relators' allegations substantially dissimilar from what had already been publicly disclosed.

Plaintiff-Relators have failed to state a claim that is not premised on "substantially the same allegations or transactions" that have already been publicly disclosed.[6] The court thus moves to the second part of the public disclosure test: whether Plaintiff-Relators were the "original source of the information." 31 U.S.C. § 3730(e)(4)(A), (B). A relator is an original source when it either voluntarily discloses the information upon which the allegations or transactions are based to the Government before public disclosure, or when it has knowledge that is "independent of and materially adds to the publicly disclosed allegations or transactions." *Id.* § 3730(e)(4)(B).

Here again the question comes down to whether Plaintiff-Relators' surveillance and private investigations materially add to the allegations and transactions already in the public domain. Circuits are split on what level of information is required in this inquiry. The First and

---

[6] Defendants also argue that a 2008 *qui tam* action brought by Plaintiff-Relator O'Connor's law firm is another public disclosure that would invoke the public disclosure bar. *See Lampert & O'Connor, P.C. v. Carroll Wireless, L.P.*, 07-cv-0800 (D.D.C. May 2, 2010). Because the court has found that bar already applies based on the public FCC filings, the court need not address this argument.

Tenth Circuits have held that relators materially add to public disclosures when their information is "sufficiently important to influence the behavior of the recipient," i.e., the Government. *Reed*, 923 F.3d at 755-59 (quoting *United States ex rel. Winkelman v. CVS Caremark Corp.*, 827 F.3d 201, 211-13 (1st Cir. 2016)). By contrast, the Second, Seventh and Eighth Circuits do not distinguish between what is "substantially similar" and what "materially adds." *Vierczhalek v. MedImmune Inc.*, 803 Fed. Appx. 522, 525-26 (2d Cir. 2020) (quoting *United States ex rel. Paulos v. Stryker Corp.*, 762 F. 3d 688, 694-95 (8th Cir. 2014); *Cause of Action v. Chicago Transit Auth.*, 815 F.3d 267, 283 (7th Cir. 2016). And the Third Circuit has held that a relator makes a material addition when it provides information that "adds in a significant way to the essential factual background: 'the who, what, when where, and how of the events at issue.'" *United States ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016).

The court need not choose between these three approaches, however, because Plaintiff-Relators' claims fail to materially add by any of these standards. The only information that their surveillance and private investigation efforts provide beyond what was already available in the public domain is that Advantage's offices were vacant and that Hinz was a King Street employee during Auction 97. Compl. ¶¶ 62, 64. This does not significantly expand the court's understanding of the essential factual background of this case. Nor is it information that might have otherwise influenced the Government, as shown by the fact that the Government elected not to intervene in this case.

And although Plaintiff-Relators provide more information on this surveillance and what it reveals in their combined opposition to Defendants' motions to dismiss. Pl.-Relators' Opp. at 20-21, ECF No. 159, "a plaintiff cannot amend its complaint by briefs in opposition to a motion

to dismiss," *Kingman Park Civic Ass'n v. Gray*, 27 F. Supp. 3d 142, 165 n.10 (D.D.C. 2014), and therefore the court cannot consider this information in assessing Defendants' motion to dismiss.

Plaintiff-Relators have not provided information about the allegations and transactions underlying the alleged scheme that is not substantially similar to what has already been publicly disclosed. And while they are the originators of the information they provide, they do not materially add to what has been publicly disclosed sufficient to be an "original source" for FCA purposes. Consequently, their claims must be dismissed under the public disclosure bar.

**B. <u>Dismissal Without Prejudice</u>**

In their opposition to Defendants' motions to dismiss, Plaintiff-Relators seek leave to amend their complaint should the court dismiss it. Pl.-Relators' Opp. at 37. The court should "freely give leave" to amend a complaint "when justice so requires" Fed. R. Civ. P. 15(a)(2), but should not grant leave to amend if amendment would be futile. *See In re Interbank Funding Corp. Sec. Litig.*, 629 F.3d 213, 215 (D.C. Cir. 2010).

Plaintiff-Relators' contend that more information showing "in great detail" the degree to which U.S. Cellular actually controlled Advantage through King Street, L.P. is pleaded in their related complaint, *O'Connor II*. But, as noted, Federal Rule of Civil Procedure 10(c) bars the court from considering pleadings incorporated by reference from other cases. The court cannot consider the evidence, no matter how compelling Plaintiff-Relators allege it to be, from another case's pleadings. Nor may the court consider evidence pleaded in Plaintiff-Relators' opposition to Defendants' motions to dismiss about the surveillance and private investigations conducted. But these pleading defects may not be fatal to Plaintiff-Relators claims. *Cf. Foman v. Davis*, 371 U.S. 178, 181 (1962) (It is "entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of such mere technicalities.").

Because Plaintiff-Relators' claims were improperly pleaded, they may be able to cure the pleading defect, and therefore the court finds that amendment would not be futile. The court will dismiss Plaintiff-Relators' claims without prejudice[7] and grant Plaintiff-Relators leave to file an amended complaint.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss (ECF Nos. 151, 153, & 155) will be **GRANTED**. Plaintiff-Relators' claims will be dismissed without prejudice. Plaintiff-Relators will be granted leave to file an amended complaint. A corresponding order will accompany this Memorandum Opinion.

Date: March 31, 2022

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge

---

[7] 31 U.S.C. § 3730(b)(1) provides that private actions under the False Claims Act may be dismissed "only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting." However, this provision only applies to voluntary dismissals. *United States ex rel. Digit. Healthcare v. Affiliated Comput. Servs., Inc.*, 778 F. Supp. 2d 37, 54 n.9 (D.D.C. 2011). The court may thus dismiss this action without prejudice without obtaining the Attorney General's consent, especially in light of the fact that it has granted Plaintiff-Relators leave to further amend their complaint. *Id.*