# EXHIBIT 10
# (2016 DE Annual Report)

**EXHIBIT I**

## LISTING AND SUMMARY OF APPLICABLE AGREEMENTS

1. Limited Partnership Agreement of Advantage Spectrum dated as of August 29, 2014 ("Advantage Spectrum LP Agreement");
2. Limited Partnership Agreement of Frequency Advantage dated as of August 29, 2014 ("Frequency Advantage LP Agreement");
3. Bidding Protocol dated as of September 11, 2014
4. Loan and Security Agreement between Advantage Spectrum and USCC dated as of September 19, 2014
5. Loan and Security Agreement between Frequency Advantage and USCC dated as of September 19, 2014
6. Promissory Note of Advantage Spectrum dated as of September 19, 2014
7. Promissory Note of Frequency Advantage dated as of September 19, 2014
8. Pledge Agreement from Frequency Advantage dated as of September 19, 2014
9. Pledge Agreement from Sunshine Spectrum, Inc. dated as of September 19, 2014
10. Pledge Agreement from Nonesuch, Inc. dated as of September 19, 2014
11. Pledge Agreement from Will Vail dated as of September 19, 2014
12. Pledge Agreement from Allison Cryor DiNardo dated as of September 19, 2014
13. Limited Recourse Guaranty from Sunshine Spectrum, Inc. dated as of September 19, 2014
14. Limited Recourse Guaranty from Nonesuch, Inc. dated as of September 19, 2014
15. Limited Recourse Guaranty from Will Vail dated as of September 19, 2014
16. Limited Recourse Guaranty from Allison Cryor DiNardo dated as of September 19, 2014

**EXHIBIT II**

**SUMMARY OF APPLICABLE AGREEMENTS**

Advantage Spectrum, L.P. ("Advantage Spectrum"), a designated entity licensee, acquired the Advanced Wireless Services (AWS-3) licenses subject to this report in Auction No. 97.

Except for the Agreements described below (which was previously submitted to and reviewed by the Commission), Advantage Spectrum has not entered into any agreements or arrangements (including proposed agreements and arrangements) that relate to Advantage Spectrum's eligibility for designated entity benefits for any designated entity license covered by this annual report.

1.   Advantage Spectrum LP Agreement

This Agreement, establishes Applicant as a Delaware Limited Partnership. It provides that Frequency Advantage is the sole general partner ("General Partner") and USCC Wireless is the sole limited partner ("Limited Partner"). It also provides that the purpose of the Applicant is to construct and operate an Advanced Wireless Services ("AWS") system with respect to any AWS licenses acquired in Auction No. 97.

Frequency Advantage controls the Applicant. Section 5.1 of the Agreement succinctly provides that

> [t]he General Partner at all times shall exercise control over the Partnership in compliance with the FCC Rules. The General Partner shall have the exclusive right and power to manage, operate and control the Partnership and to make all decisions necessary or appropriate to carry on the business and affairs of the Partnership.

Additionally, Section 5.1 authorizes the General Partner to manage the day-to-day operations of the Applicant, which include, but are not limited to, the following rights and powers: (1) the conduct of bidding activity in Auction No. 97; (2) the borrowing of money from banks, or other lending institutions; (3) the hiring and terminating of employees; (4) the operation of the partnership business and enter into contracts for the management and operation of such business; (5) the acquisition, use and sale of real and personal property on behalf of the Partnership; (6) the making of all payments required of the Partnership; and (7) the arranging for all federal, state and local regulatory and tax filings. Section 6.2 of the Agreement provides that the General Partner "shall execute all contracts, agreements and instruments as the General Partner may reasonably deem necessary or desirable to carry on the purpose of the Partnership." Similarly, only the General Partner can make capital calls for the Partnership or call for the inclusion of new partners.

This Agreement also provides the General Partner with certain "put" rights, whereby it has the right to require the Limited Partner to buy the interest of the General Partner. Significantly, there is no corresponding "call" right on the General Partner's interest. This Agreement also provides for a mutual, customary right of first refusal in the event that either party desires to sell its interest to a third party.

2. <u>Frequency Advantage LP Agreement</u>

This Agreement establishes Frequency Advantage as a Delaware Limited Partnership. It provides that Sunshine Spectrum, Inc., owned 100% by William Vail, is the sole general partner ("General Partner") and Nonesuch, Inc., owned 100% by Mr. Vail, is the sole limited partner ("Limited Partner"). Prior to December 31, 2015, Nonesuch, Inc. was owned by Allison Cryor DiNardo.

William Vail, though Sunshine Spectrum, controls Frequency Advantage. Section 5.1 of the Agreement succinctly provides that

> [t]he General Partner at all times shall exercise control over the Partnership in compliance with the FCC Rules. The General Partner shall have the exclusive right and power to manage, operate and control the Partnership and to make all decisions necessary or appropriate to carry on the business and affairs of the Partnership.

Additionally, Section 5.1 authorizes the General Partner to manage the day-to-day operations of Frequency Advantage, which include, but are not limited to, the following rights and powers: (1) the conduct of the Applicant's bidding activity in Auction No. 97; (2) the borrowing of money from banks, or other lending institutions; (3) the hiring and terminating of employees; (4) the operation of the partnership business and enter into contracts for the management and operation of such business; (5) the acquisition, use and sale of real and personal property on behalf of the Partnership; (6) the making of all payments required of the Partnership; and (7) the arranging for all federal, state and local regulatory and tax filings. Section 6.2 of the Agreement provides that the General Partner "shall execute all contracts, agreements and instruments as the General Partner may reasonably deem necessary or desirable to carry on the purpose of the Partnership." Similarly, only the General Partner can make capital calls for the Partnership or call for the inclusion of new partners.

This Agreement also provides the General Partner with certain "put" rights, whereby it has the right to require the Limited Partner to buy the interest of the General Partner. Significantly, there is no corresponding "call" right on the General Partner's interest. This Agreement also provides for a mutual, customary right of first refusal in the event that either party desires to sell its interest to a third party.

3. <u>Bidding Protocol</u>

The Bidding Protocol, executed September 11, 2014, by and among Frequency Advantage, USCC Wireless, and Applicant, which was amended to change the maximum

permissible bids, provides that William Vail has sole authority to determine which AWS-3 Licenses, and in which order, the Applicant would enter bids in each round, provided that the bids are consistent with the overall investment parameters set forth in the Applicant's governing documents.

The bidding agreement has several purposes. First, it prioritized all markets in Auction No. 97 by bid level. Second, the agreement, as amended, established an overall bidding cap that would not exceed $462,933,333.00 without approval of the parties. Third, the Agreement set forth the initial maximum price per pop for each AWS-3 License available in the auction. Lastly, it provided generally for the partners to confer with each other (but not with other bidders) during the course of the auction.

4.   Loan and Security Agreement between Advantage Spectrum and USCC

On September 19, 2014, Advantage Spectrum and USCC entered into a Loan and Security Agreement in which USCC shall advance funds to the Applicant for the sole purpose of for the sole purpose of making the Auction 97 deposit (initial upfront payment requirement and subsequent deposit equal to 20% of the net winning bids) required by the Commission and to also provide additional working capital. For this loan, the aggregate amount of the advances shall not exceed $272,448,000.00.[1] The interest rate on the advances is, consistent with industry standards for arm's length loans in transactions such as this one, 8 percent per annum, compounded annually. Principal and interest on the advances are due on the earlier of (i) the date of the receipt by Advantage Spectrum of the proceeds of the sale of all or substantially all of the assets of Advantage Spectrum, (ii) the date of the receipt by Frequency Advantage of the sale of any portion of the general partnership interest in Advantage Spectrum, (iii) the date of the receipt by any of Frequency Advantage's partners of the proceeds of the sale of all or any portion of such partners' partnership interests in Frequency Advantage, (iv) the tenth anniversary of the date of the execution and delivery of the Loan and Security Agreement, or (v) in the event that the entire deposit of Advantage Spectrum with respect to the FCC's Auction No. 97 is returned to Advantage Spectrum, the date on which the deposit is so returned.

Moreover, Applicant has the option to prepay any or all of the advances made by USCC, or to obtain funding from other sources, but lender does not have the option to refuse to make the loan, subject to the Applicant satisfying the conditions of the Loan Agreement.

In addition, Advantage Spectrum granted to USCC a continuing security interest in the Collateral described in Section 5.01 of this Agreement for all of its obligations incurred as a result of advances made pursuant to this Agreement. The collateral includes but is not limited to, to the extent permitted by law, all FCC licenses and permits held by Advantage Spectrum.

5.   Loan and Security Agreement between Frequency Advantage and USCC

On September 19, 2014, Frequency Advantage and USCC entered into a Loan and Security Agreement in which USCC shall advance funds to the Applicant for the sole purpose of making

---

[1]   On February 6, 2015, this Loan and Security Agreement was amended to increase the aggregate amount of advances that may be made to $272,448,600.00.

required capital contributions to Advantage Spectrum. For this loan, the aggregate amount of the advances shall not exceed $6,811,215.00.[2] The interest rate on the advances is, consistent with industry standards for arm's length loans in transactions such as this one, 8 percent per annum, compounded annually. Principal and interest on the advances are due on the earlier of (i) the date of the receipt by Frequency Advantage of the proceeds of the sale of all or substantially all of the assets of the Frequency Advantage, (ii) the date of the receipt by Frequency Advantage of the proceeds of the sale of all or any portion of Frequency Advantage's general partnership interest in the Applicant, (iii) the date of the receipt by any of Frequency Advantage's partners of the proceeds of the sale of all or any portion of such partner's partnership interests in Frequency Advantage, (iv) the date of receipt by any of Frequency Advantage's partners of the proceeds of the sale of all or any portion of the capital stock of the partner, (v) the date of receipt by the Applicant of the proceeds of the sale of all or substantially all of Applicant's assets, (vi) the tenth anniversary of the date of the execution and delivery of the Loan and Security Agreement, or (vii) in the event that the entire deposit made by the Applicant with the FCC for Auction No. 97 is returned to the Applicant, the date on which the deposit is so returned.

. Moreover, Applicant has the option to prepay any or all of the advances made by USCC, or to obtain funding from other sources, but lender does not have the option to refuse to make the loan, subject to the Applicant satisfying the conditions of the Loan Agreement.

In addition, Frequency Advantage granted to USCC a continuing security interest in the Collateral described in Section 5.01 of this Agreement for all of its obligations incurred as a result of advances made pursuant to this Agreement. The collateral includes but is not limited to, to the extent permitted by law, all FCC licenses and permits held by Frequency Advantage.

6.  Promissory Note of Advantage Spectrum[3]

The Promissory Note, dated September 19, 2014, is entered into between Advantage Spectrum and USCC whereby Advantage Spectrum, as the Borrower, agrees to pay USCC, as the Lender, the principal amount of $272,448,000.00 or, if less, the aggregate principal amount of all advances made by Advantage Spectrum pursuant to the Loan and Security Agreement between Advantage Spectrum and USCC dated September 19, 2014. On February 6, 2015, this Promissory Note was amended to increase the principal amount to $272,448,600.00.

7.  Promissory Note of Frequency Advantage[4]

The Promissory Note, dated September 19, 2014, is entered into between Frequency Advantage and USCC whereby Frequency Advantage, as the Borrower, agrees to pay USCC, as the Lender, the principal amount of $6,811,215.00 or, if less, the aggregate principal amount of all advances made by Frequency Advantage pursuant to the Loan and Security Agreement between Frequency Advantage and USCC dated September 19, 2014. On February 6, 2015, this Promissory Note was amended to increase the principal amount to $6,811,215.00.

---

[2] The Loan and Security Agreement was amended on February 6, 2015 to increase the loan amount.
[3] The Parties entered into a Note Modification on February 6, 2015 to increase the loan amount.
[4] The Parties entered into a Note Modification on February 6, 2015 to increase the loan amount.

8.      <u>Pledge Agreement from Frequency Advantage</u>

The Pledge Agreement, dated September 19, 2014, is between Frequency Advantage as the Pledgor, in favor of USCC. Pursuant to the Agreement, Frequency Advantage as a condition to the any advances made pursuant to the Loan and Security Agreement between Frequency Advantage and USCC, grants USCC a first priority security interest in its Partnership Interests in Advantage Spectrum (defined as 100% of the general partnership interests in Advantage Spectrum owned by Frequency Advantage) and all proceeds of any and all of the collateral. Finally, Frequency Advantage is restricted from selling, transferring, pledging, or otherwise encumbering or disposing of any of its Partnership Interests in Advantage Spectrum or any of the collateral.

9.      <u>Pledge Agreement from Sunshine Spectrum</u>

The Pledge Agreement, dated September 19, 2014, is between Sunshine Spectrum as the Pledgor, in favor of USCC. Pursuant to the Agreement, Sunshine Spectrum as a condition to the any advances made pursuant to the Loan and Security Agreement between Frequency Advantage and USCC, grants USCC a first priority security interest in its Partnership Interests in Frequency Advantage (defined as 100% of the partnership interests in Frequency Advantage owned by Sunshine Spectrum) and all proceeds of any and all of the collateral. Finally, Sunshine Spectrum is restricted from selling, transferring, pledging, or otherwise encumbering or disposing of any of its Partnership Interests in Frequency Advantage or any of the collateral.

10.     <u>Pledge Agreement from Nonesuch, Inc.</u>

The Pledge Agreement, dated September 19, 2014, is between Nonesuch, Inc. as the Pledgor, in favor of USCC. Pursuant to the Agreement, Nonesuch, Inc. as a condition to the any advances made pursuant to the Loan and Security Agreement between Frequency Advantage and USCC, grants USCC a first priority security interest in its Partnership Interests in Frequency Advantage (defined as 100% of the partnership interests in Frequency Advantage owned by Nonesuch, Inc.) and all proceeds of any and all of the collateral. Finally, Nonesuch, Inc. is restricted from selling, transferring, pledging, or otherwise encumbering or disposing of any of its Partnership Interests in Frequency Advantage or any of the collateral, without prior written consent or waiver of all relevant parties.

11.     <u>Pledge Agreement from Will Vail</u>

The Pledge Agreement, dated September 19, 2014, is between Will Vail as the Pledgor, in favor of USCC. Pursuant to the Agreement, Mr.Vail as a condition to the any advances made pursuant to the Loan and Security Agreement between Frequency Advantage and USCC, grants USCC a first priority security interest in his interest in Sunshine Spectrum (defined as 100% of all issued and outstanding shares of capital stock in Sunshine Spectrum) and all proceeds of any and all of the collateral. Finally, Mr. Vail is restricted from selling, transferring, pledging, or otherwise encumbering or disposing of any of his interest in Sunshine Spectrum or any of the collateral.

12.       Pledge Agreement from Allison Cryor DiNardo

The Pledge Agreement, dated September 19, 2014, is between Allison Cryor DiNardo as the Pledgor, in favor of USCC. Pursuant to the Agreement, Ms. Cryor DiNardo as a condition to the any advances made pursuant to the Loan and Security Agreement between Frequency Advantage and USCC, grants USCC a first priority security interest in her interest in Nonesuch, Inc. (defined as 100% of all issued and outstanding shares of capital stock in Nonesuch, Inc.) and all proceeds of any and all of the collateral. Finally, Ms. Cryor DiNardo is restricted from selling, transferring, pledging, or otherwise encumbering or disposing of any of her interest in Nonesuch, Inc. or any of the collateral, without the prior approval of USCC. USCC provided such approval prior to the December 31, 2015 sale of Ms. DiNardo's interest in Nonesuch, Inc. to Mr. Vail. Pursuant to that sale, Mr. Vail became obligated to pledge Nonesuch shares and Ms. DiNardo effectively was released of any pledge obligations involving stock she no longer owns.

13.       Limited Recourse Guaranty from Sunshine Spectrum, Inc.

The Limited Recourse Guaranty, dated September 19, 2014, is between Sunshine Spectrum, Inc., as Guarantor, in favor of USCC. Pursuant to the Agreement, the Guarantor absolutely, unconditionally and irrevocably guaranty to USCC the prompt satisfaction when due, whether by acceleration or otherwise, of any and all of the following: (a) the outstanding principal balance of all loans made under the Loan Agreement between Frequency Advantage and USCC, accrued and unpaid interest thereon, and all fees payable thereunder; (b) all other indebtedness, liabilities and obligations of Frequency Advantage under or in respect of the Loan Agreement; (c) all other amounts payable by Frequency Advantage or the Guarantor under the Guaranty or under the Loan Agreement; (d) all out-of-pocket legal fees and expenses incurred by the USCC in the enforcement of this Guaranty or the Loan Agreement; (e) all out-of-pocket legal fees, costs, losses and expenses incurred by USCC in connection with any collateral provided by the Guarantor or Frequency Advantage; and (f) any renewals or extensions, replacements, modifications, substitutions, amendments and restatements of any of the foregoing.

14.       Limited Recourse Guaranty from Nonesuch, Inc.

The Limited Recourse Guaranty, dated September 19, 2014, is between Nonsuch, Inc., as Guarantor, in favor of USCC. Pursuant to the Agreement, the Guarantor absolutely, unconditionally and irrevocably guaranty to USCC the prompt satisfaction when due, whether by acceleration or otherwise, of any and all of the following: (a) the outstanding principal balance of all loans made under the Loan Agreement between Frequency Advantage and USCC, accrued and unpaid interest thereon, and all fees payable thereunder; (b) all other indebtedness, liabilities and obligations of Frequency Advantage under or in respect of the Loan Agreement; (c) all other amounts payable by Frequency Advantage or the Guarantor under the Guaranty or under the Loan Agreement; (d) all out-of-pocket legal fees and expenses incurred by the USCC in the enforcement of this Guaranty or the Loan Agreement; (e) all out-of-pocket legal fees, costs, losses and expenses incurred by USCC in connection with any collateral provided by the

Guarantor or Frequency Advantage; and (f) any renewals or extensions, replacements, modifications, substitutions, amendments and restatements of any of the foregoing.

15.   Limited Recourse Guaranty from Will Vail

The Limited Recourse Guaranty, dated September 19, 2014, is between Will Vail, as Guarantor, in favor of USCC. Pursuant to the Agreement, the Guarantor absolutely, unconditionally and irrevocably guaranty to USCC the prompt satisfaction when due, whether by acceleration or otherwise, of any and all of the following: (a) the outstanding principal balance of all loans made under the Loan Agreement between Frequency Advantage and USCC, accrued and unpaid interest thereon, and all fees payable thereunder; (b) all other indebtedness, liabilities and obligations of Frequency Advantage under or in respect of the Loan Agreement; (c) all other amounts payable by Frequency Advantage or the Guarantor under the Guaranty or under the Loan Agreement; (d) all out-of-pocket legal fees and expenses incurred by the USCC in the enforcement of this Guaranty or the Loan Agreement; (e) all out-of-pocket legal fees, costs, losses and expenses incurred by USCC in connection with any collateral provided by the Guarantor or Frequency Advantage; and (f) any renewals or extensions, replacements, modifications, substitutions, amendments and restatements of any of the foregoing.

16.   Limited Recourse Guaranty from Allison Cryor DiNardo

The Limited Recourse Guaranty, dated September 19, 2014, is between Allison Cryor DiNardo, as Guarantor, in favor of USCC. Pursuant to the Agreement, the Guarantor absolutely, unconditionally and irrevocably guaranty to USCC the prompt satisfaction when due, whether by acceleration or otherwise, of any and all of the following: (a) the outstanding principal balance of all loans made under the Loan Agreement between Frequency Advantage and USCC, accrued and unpaid interest thereon, and all fees payable thereunder; (b) all other indebtedness, liabilities and obligations of Frequency Advantage under or in respect of the Loan Agreement; (c) all other amounts payable by Frequency Advantage or the Guarantor under the Guaranty or under the Loan Agreement; (d) all out-of-pocket legal fees and expenses incurred by the USCC in the enforcement of this Guaranty or the Loan Agreement; (e) all out-of-pocket legal fees, costs, losses and expenses incurred by USCC in connection with any collateral provided by the Guarantor or Frequency Advantage; and (f) any renewals or extensions, replacements, modifications, substitutions, amendments and restatements of any of the foregoing.

**EXHIBIT III**

## RESPONSE TO SPECIFIC INFORMATION REQUESTS INCLUDED ON INFORMATION AND INSTRUCTIONS FOR COMPLETION OF FCC FORM 611-T

<u>Progress In Meeting Construction Requirements:</u>  The AWS-3 Licenses acquired in Auction No. 97 must provide reliable signal coverage and offer service to at least 40 percent of the population in each of its license areas within six (6) years after license grant, and provide reliable signal coverage and offer service to at least 75 percent of the population in each of its license areas by the end of the initial twelve-year license term.. *See* 47 C.F.R. § 27.14(s). Filer is in the planning stages of construction and is considering equipment capabilities.

<u>Services Provided or Planned:</u>  Voice and data services, including Broadband Internet Access.

<u>Number of Subscribers:</u>  Currently none.