# EXHIBIT B

**ADVANTAGE SPECTRUM, L.P.**

**Exhibit D (Revised): Agreement and Other Instruments**

I.      **AGREEMENTS DISCLOSED PURSUANT TO SECTION 1.2105 OF THE COMMISSION'S RULES**:

A.      **Advantage Spectrum, L.P. Agreements**

Advantage Spectrum, L.P. ("Advantage Spectrum" or "Applicant") hereby certifies under penalty of perjury that, with respect to the licenses in Auction No. 97, except as set forth below, it has entered into no partnerships, joint venture, consortia or other agreements, arrangements or understandings of any kind with third parties relating to the licenses being auctioned, including any such agreements relating to the post-auction market structure.  The exception is that Applicant, Frequency Advantage, L.P. ("Frequency Advantage"), and USCC Wireless Investment, Inc. ("USCC Wireless") entered into a Bidding Protocol Agreement on September 11, 2014 ("Bidding Agreement").  This Agreement, which was disclosed in Advantage Spectrum's Form 175 submission, is summarized below.

B.      **Other Agreements**

United States Cellular Corporation ("USCC"), the parent of USCC Wireless, is a reportable member of Advantage Spectrum pursuant to FCC rule 1.2105(c)(6) because USCC owns an equity interest equal to or greater than 10% of Advantage Spectrum. USCC has not entered into partnerships, joint ventures, consortia or other agreements, arrangements or understandings of any kind relating to the licenses being auctioned, including any such agreements relating to the post-auction market structure, other than the following;

1.      Joint Bidding Agreement between Wolverine Wireless, L.P. and United States Cellular Corporation

On September 8, 2014, United States Cellular Corporation ("USCC") and Wolverine Wireless, L.P. ("Wolverine LP") entered into a Joint Bidding Agreement. USCC holds a 15.001% indirect non-controlling ownership interest in Wolverine LP. The Joint Bidding Agreement provided that during Auction No. 97 certain employees of USCC would be privy to and participate in bidding decisions of Wolverine LP and that Wolverine LP would share bidding information with these employees of USCC such as its market selection, upfront payments, down payments, capital calls, requests for additional funds in support of bids and bidding limits. The Joint Bidding Agreement also provided that during this period Wolverine LP would not be made aware of the nature or extent of USCC's participation in Auction No. 97 or its intentions with respect to post auction market structure. Additionally, the USCC employees who were privy to Wolverine's bidding decisions were precluded from obtaining information about USCC's bids, bid strategies and other participation in Auction No. 97.

FCC Form 601: Exhibit D – Page 1 of 14

2. *De Facto* Transfer Lease Agreement by and among Carroll Wireless, L.P., AT&T Mobility Spectrum LLC, Cricket License Company, LLC, USCOC of Central Illinois, LLC, USCOC of Greater Missouri, LLC, New Cingular Wireless PCS, LLC, United States Cellular Corporation, United States Cellular Operating Company, LLC, and US Cellular Operating Company of Chicago, LLC

Pursuant to a proposed *De Facto* Transfer Lease Agreement which has not yet been executed, between New Cingular Wireless PCS, LLC, AT&T Mobility Spectrum LLC, and Cricket License Company, LLC (collectively hereafter "AT&T") and Carroll Wireless, L.P., USCOC of Central Illinois, LLC, US Cellular Operating Company of Chicago, LLC, United States Cellular Operating Company, LLC, USCOC of Greater Missouri, LLC, and United States Cellular Corporation (collectively hereafter "USCC"), AT&T and USCC contemplate *De Facto* transfer lease transactions for the FCC PCS authorizations being assigned to USCC entities in the License Exchange Agreement transaction referenced in Agreement 4 as noted below.  The *De Facto* transfer lease submissions will be made to the FCC upon closing of the Exchange Agreement transaction, and will allow AT&T to transition customers to other spectrum held by AT&T within the same market areas. The parties anticipate the *De Facto* transfer lease transactions to become effective in the 3rd quarter 2015.

3. License Exchange Agreement by and among USCOC of Greater Missouri, LLC, Carroll Wireless, L.P., AT&T Mobility Spectrum LLC, Cricket License Company, LLC, USCOC of Central Illinois, LLC, New Cingular Wireless PCS, LLC, United States Cellular Corporation, United States Cellular Operating Company, LLC, and US Cellular Operating Company of Chicago, LLC

Pursuant to an Exchange Agreement, dated September 8, 2014, between New Cingular Wireless PCS, LLC, AT&T Mobility Spectrum LLC, and Cricket License Company, LLC (collectively hereafter "AT&T") and Carroll Wireless, L.P., USCOC of Central Illinois, LLC, US Cellular Operating Company of Chicago, LLC, United States Cellular Operating Company, LLC, USCOC of Greater Missouri, LLC, and United States Cellular Corporation (collectively hereafter "USCC"), AT&T and USCC agreed to exchange certain PCS licenses. On October 14, 2014, applications (Forms 603) were filed with the FCC seeking consent to multiple license assignments (Lead File No. 0006484129).  On December 10, 2014 the AT&T-USCC license exchange applications were accepted for filing and a pleading cycle was established by the FCC.  *See* Public Notice, DA 14-1805, released December 10, 2014.  On February 11, 2015, the FCC released a public notice announcing grants of the license exchange applications. *See* Public Notice, Report No 10276.  The parties anticipate that the transaction will close in the 3rd quarter of 2015.

4.   License Purchase Agreement between McBride Spectrum Partners, LLC and Hardy Cellular Telephone Company

Pursuant to a License Purchase Agreement dated September 3, 2014, between McBride Spectrum Partners, LLC ("McBride") and Hardy Cellular Telephone Company ("Hardy"), McBride agreed to assign a partitioned portion of the 700 MHz A block authorization covering portions of BEA053 - Pittsburgh, PA-WV (Barbour, Doddridge, Harrison, Lewis, Marion, Monongalia, Preston, Taylor, and Upshur, WV Counties only) to Hardy. On September 24, 2014, an application (Form 603) was filed with the FCC seeking consent to the assignment (File No. 0006447948).  On December 9, 2014 the McBride-Hardy license assignment application was accepted for filing and a pleading cycle was established by the FCC.  *See* Public Notice, DA 14-7788 (*WT Dkt. 14-240*), released December 9, 2014.  This transaction currently remains pending before the FCC.

5.   License Purchase Agreement between Flat Wireless, LLC - USCOC of Greater Oklahoma, LLC

Pursuant to a License Purchase Agreement dated September 4, 2014, between Flat Wireless, LLC ("Flat Wireless") and USCOC of Greater Oklahoma, LLC ("USCOC-GO"), Flat Wireless agreed to assign a previously partitioned portion of the AWS D block authorization covering portions of REA005 - Central (Tillman County, OK, Clay County, TX, and Wichita County, TX only; Call Sign WQSH832) to USCOC-GO.  On September 9, 2014, an application (Form 603) was filed with the FCC seeking consent to assign the AWS authorization to USCOC-GO (File No. 0006450015). That application was subsequently amended on November 12, 2014.  On December 17, 2014, the FCC released a public notice announcing a grant of the application. *See* Public Notice, Report No 10145. Closing of the transaction is expected to take place on February 17, 2015.

6.   Spectrum Manager Lease Agreement by and among Carroll Wireless, L.P., AT&T Mobility Spectrum LLC, Cricket License Company, LLC, USCOC of Central Illinois, LLC, USCOC of Greater Missouri, LLC, New Cingular Wireless PCS, LLC, United States Cellular Corporation, United States Cellular Operating Company, LLC, and US Cellular Operating Company of Chicago, LLC

Pursuant to an Spectrum Manager Lease Agreement, dated September 8, 2014, between New Cingular Wireless PCS, LLC, AT&T Mobility Spectrum LLC, and Cricket License Company, LLC (collectively hereafter "AT&T") and Carroll Wireless, L.P., USCOC of Central Illinois, LLC, US Cellular Operating Company of Chicago, LLC, United States Cellular Operating Company, LLC, USCOC of Greater Missouri, LLC, and United States Cellular Corporation (collectively hereafter "USCC"), USCC and AT&T agreed to multiple Spectrum Manager lease  transactions involving the USCC entity PCS licenses being assigned to AT&T in the License Exchange Agreement transaction referenced in Agreement 4 as noted above. On October 16, 2014, applications (Forms 608) were filed with the FCC advising the Commission of an October 26, 2014 effective date for the lease transactions (Lead File No. 0006504883).  On February 6, 2015 the

3

FCC processed the respective Spectrum Manager lease submissions (Lease ID Nos. L000014786, L000014787, L000014788, L000014789, L000014790, L000014791, L000014792, L000014793, L000014794, L000014795, L000014796, L000014797, L000014798, L000014799, L000014800, L000014801, and L000014802).  The Spectrum Manager Leases will remain in effect (or will be extended) until the related License Exchange Agreement transaction referenced in Agreement 4 closes.  The parties anticipate that transaction to close in the 3rd quarter 2015.

    7.   <u>TMO/USCC Swap and Purchase and Lease Agreement by and among T-Mobile License LLC, Barat Wireless, L.P., Carroll Wireless, L.P., United States Cellular Corporation</u>

Pursuant to a License Exchange Agreement dated September 10, 2014, between T-Mobile License LLC ("T-Mobile") and Barat Wireless, L.P., Carroll Wireless, L.P., and United States Cellular Corporation (collectively hereafter "USCC"), T-Mobile and USCC agreed to exchange certain PCS and AWS licenses. On September 30, 2014, applications (Forms 603) were filed with the FCC seeking consent to multiple license assignments (Lead File No. 0006469144).  On October 8, 2014 the T-Mobile-USCC license exchange applications were accepted for filing by the FCC.  *See* Public Notice, Rpt. 9965, released October 8, 2014. On November 26, 2014 the FCC released a public notice announcing grant of the License Exchange applications. *See* Public Notice, Report No 10088. Closing of the exchange transaction took place on December 18, 2014.[1] Pursuant to a short term Spectrum Manager Lease Agreement, dated September 10, 2014, between T-Mobile License LLC ("T-Mobile"), Carroll Wireless, L.P., and United States Cellular Corporation (collectively hereafter "USCC"), T-Mobile and USCC agreed to a short term Spectrum Manager lease transaction involving one USCC entity PCS license being assigned to T-Mobile in the related License Exchange Agreement transaction noted above (FCC Call Sign WQEE472). On September 30, 2014, an application (Form 608) was filed with the FCC advising the Commission of an October 11, 2014 effective date for the lease transaction (File No. 0006481710).  On November 24, 2014 the FCC processed the respective Spectrum Manager lease submission (Lease ID No. L000013937).  The Spectrum Manager Lease was terminated effective December 18, 2014 (FCC File No. 0006590559) pursuant to the consummation of the underlying license assignment transaction involving T-Mobile and USCC.

## II.    AGREEMENTS SUPPORTING STATUS AS A DESIGNATED ENTITY

Advantage Spectrum is a Delaware limited partnership formed on August 27, 2014 (attached as an exhibit is the Certificate of Limited Partnership filed with Delaware).  Pursuant to Sections 1.2110(j), 1.2112(b)(2) and 27.502(b) of the Commission's Rules, Advantage Spectrum hereby lists and summarizes the agreements

---

[1] All contemplated license exchange transactions were closed on December 18, 2014 with the exception of the assignment from Carroll Wireless, L.P. to T-Mobile involving FCC Call Sign WQEE469. That portion of the transaction is expected to close in July 2015.

that supports its qualifications as an Designated Entity entitled to a bidding credit of twenty-five (25) percent on its winning bids in Auction No. 97.

### A.      List of Agreements and Other Documents

1.  Limited Partnership Agreement of Advantage Spectrum dated as of August 29, 2014 ("Advantage Spectrum LP Agreement");
2.  Limited Partnership Agreement of Frequency Advantage dated as of August 29, 2014 ("Frequency Advantage LP Agreement");
3.  Bidding Protocol dated as of September 11, 2014
4.  Loan and Security Agreement between Advantage Spectrum and USCC dated as of September 19, 2014
5.  Loan and Security Agreement between Frequency Advantage and USCC dated as of September 19, 2014
6.  Promissory Note of Advantage Spectrum dated as of September 19, 2014
7.  Promissory Note of Frequency Advantage dated as of September 19, 2014
8.  Pledge Agreement from Frequency Advantage dated as of September 19, 2014
9.  Pledge Agreement from Sunshine Spectrum, Inc. dated as of September 19, 2014
10. Pledge Agreement from Nonesuch, Inc. dated as of September 19, 2014
11. Pledge Agreement from Will Vail dated as of September 19, 2014
12. Pledge Agreement from Allison Cryor DiNardo dated as of September 19, 2014
13. Limited Recourse Guaranty from Sunshine Spectrum, Inc. dated as of September 19, 2014
14. Limited Recourse Guaranty from Nonesuch, Inc. dated as of September 19, 2014
15. Limited Recourse Guaranty from Will Vail dated as of September 19, 2014
16. Limited Recourse Guaranty from Allison Cryor DiNardo dated as of September 19, 2014

### B.      Summary of Agreements[2]

1.      Advantage Spectrum LP Agreement

This Agreement, establishes Applicant as a Delaware Limited Partnership.  It provides that Frequency Advantage is the sole general partner ("General Partner") and USCC Wireless is the sole limited partner ("Limited Partner").  It also provides that the purpose of the Applicant is to construct and operate an Advanced Wireless Services ("AWS") system with respect to any AWS licenses acquired in Auction No. 97.

Frequency Advantage controls the Applicant.  Section 5.1 of the Agreement succinctly provides that

[t]he General Partner at all times shall exercise control over the Partnership in compliance with the FCC Rules.  The General Partner

---

[2]     Applicant notes that if any subsequent changes are made to any of the agreements listed herein, the Applicant will amend the Form 601 as required by the Commission's rules and include the amended agreements.

shall have the exclusive right and power to manage, operate and control the Partnership and to make all decisions necessary or appropriate to carry on the business and affairs of the Partnership.

Additionally, Section 5.1 authorizes the General Partner to manage the day-to-day operations of the Applicant, which include, but are not limited to, the following rights and powers: (1) the conduct of bidding activity in Auction No. 97;  (2) the borrowing of money from banks, or other lending institutions; (3) the hiring and terminating of employees; (4) the operation of the partnership business and enter into contracts for the management and operation of such business; (5) the acquisition, use and sale of real and personal property on behalf of the Partnership; (6) the making of all payments required of the Partnership; and (7) the arranging for all federal, state and local regulatory and tax filings.  Section 6.2 of the Agreement provides that the General Partner "shall execute all contracts, agreements and instruments as the General Partner may reasonably deem necessary or desirable to carry on the purpose of the Partnership."  Similarly, only the General Partner can make capital calls for the Partnership or call for the inclusion of new partners.

This Agreement also provides the General Partner with certain "put" rights, whereby it has the right to require the Limited Partner to buy the interest of the General Partner.  Significantly, there is no corresponding "call" right on the General Partner's interest.  This Agreement also provides for a mutual, customary right of first refusal in the event that either party desires to sell its interest to a third party.

> 2.      Frequency Advantage LP Agreement

This Agreement establishes Frequency Advantage as a Delaware Limited Partnership.  It provides that Sunshine Spectrum, Inc., owned 100% by William Vail, is the sole general partner ("General Partner") and Nonesuch, Inc., owned 100% by Mr. Vail, is the sole limited partner ("Limited Partner").  Prior to December 31, 2015, Nonesuch, Inc. was owned by Allison Cryor DiNardo.

William Vail, though Sunshine Spectrum, controls Frequency Advantage. Section 5.1 of the Agreement succinctly provides that

[t]he General Partner at all times shall exercise control over the Partnership in compliance with the FCC Rules.  The General Partner shall have the exclusive right and power to manage, operate and control the Partnership and to make all decisions necessary or appropriate to carry on the business and affairs of the Partnership.

Additionally, Section 5.1 authorizes the General Partner to manage the day-to-day operations of Frequency Advantage, which include, but are not limited to, the following rights and powers: (1) the conduct of the Applicant's bidding activity in Auction No. 97; (2) the borrowing of money from banks, or other lending institutions; (3) the hiring and terminating of employees; (4) the operation of the partnership business and enter into

6

contracts for the management and operation of such business; (5) the acquisition, use and sale of real and personal property on behalf of the Partnership; (6) the making of all payments required of the Partnership; and (7) the arranging for all federal, state and local regulatory and tax filings.  Section 6.2 of the Agreement provides that the General Partner "shall execute all contracts, agreements and instruments as the General Partner may reasonably deem necessary or desirable to carry on the purpose of the Partnership." Similarly, only the General Partner can make capital calls for the Partnership or call for the inclusion of new partners.

This Agreement also provides the General Partner with certain "put" rights, whereby it has the right to require the Limited Partner to buy the interest of the General Partner.  Significantly, there is no corresponding "call" right on the General Partner's interest.  This Agreement also provides for a mutual, customary right of first refusal in the event that either party desires to sell its interest to a third party.

3.      Bidding Protocol

The Bidding Protocol, executed September 11, 2014, by and among Frequency Advantage, USCC Wireless, and Applicant, which was amended to change the maximum permissible bids, provides that William Vail has sole authority to determine which AWS-3 Licenses, and in which order, the Applicant would enter bids in each round, provided that the bids are consistent with the overall investment parameters set forth in the Applicant's governing documents.

The bidding agreement has several purposes.  First, it prioritized all markets in Auction No. 97 by bid level.  Second, the agreement, as amended, established an overall bidding cap that would not exceed $462,933,333.00 without approval of the parties. Third, the Agreement set forth the initial maximum price per pop for each AWS-3 License available in the auction. Lastly, it provided generally for the partners to confer with each other (but not with other bidders) during the course of the auction.

4.      Loan and Security Agreement between Advantage Spectrum and USCC

On September 19, 2014, Advantage Spectrum and USCC entered into a Loan and Security Agreement in which USCC shall advance funds to the Applicant for the sole purpose of for the sole purpose of making the Auction 97 deposit (initial upfront payment requirement and subsequent deposit equal to 20% of the net winning bids) required by the Commission and to also provide additional working capital.  For this loan, the aggregate amount of the advances shall not exceed $272,448,000.00.[3]  The interest rate on the advances is, consistent with industry standards for arm's length loans in transactions such as this one, 8 percent per annum, compounded annually.  Principal and interest on the advances are due on the earlier of (i) the date of the receipt by Advantage Spectrum of the proceeds of the sale of all or substantially all of the assets of Advantage Spectrum, (ii) the date of the receipt by Frequency Advantage of the sale of any portion of the general

---

[3]      On February 6, 2015, this Loan and Security Agreement was amended to increase the aggregate amount of advances that may be made to $272,448,600.00.

partnership interest in Advantage Spectrum, (iii) the date of the receipt by any of Frequency Advantage's partners of the proceeds of the sale of all or any portion of such partners' partnership interests in Frequency Advantage, (iv) the tenth anniversary of the date of the execution and delivery of the Loan and Security Agreement, or (v) in the event that the entire deposit of Advantage Spectrum with respect to the FCC's Auction No. 97 is returned to Advantage Spectrum, the date on which the deposit is so returned.

Moreover, Applicant has the option to prepay any or all of the advances made by USCC, or to obtain funding from other sources, but lender does not have the option to refuse to make the loan, subject to the Applicant satisfying the conditions of the Loan Agreement.

In addition, Advantage Spectrum granted to USCC a continuing security interest in the Collateral described in Section 5.01 of this Agreement for all of its obligations incurred as a result of advances made pursuant to this Agreement.  The collateral includes but is not limited to, to the extent permitted by law, all FCC licenses and permits held by Advantage Spectrum.

5.       Loan and Security Agreement between Frequency Advantage and USCC

On September 19, 2014, Frequency Advantage and USCC entered into a Loan and Security Agreement in which USCC shall advance funds to the Applicant for the sole purpose of making required capital contributions to Advantage Spectrum. For this loan, the aggregate amount of the advances shall not exceed $6,811,215.00.[4]  The interest rate on the advances is, consistent with industry standards for arm's length loans in transactions such as this one, 8 percent per annum, compounded annually.  Principal and interest on the advances are due on the earlier of (i) the date of the receipt by Frequency Advantage of the proceeds of the sale of all or substantially all of the assets of the Frequency Advantage, (ii) the date of the receipt by Frequency Advantage of the proceeds of the sale of all or any portion of Frequency Advantage's general partnership interest in the Applicant, (iii) the date of the receipt by any of Frequency Advantage's partners of the proceeds of the sale of all or any portion of such partner's partnership interests in Frequency Advantage, (iv) the date of receipt by any of Frequency Advantage's partners of the proceeds of the sale of all or any portion of the capital stock of the partner, (v) the date of receipt by the Applicant of the proceeds of the sale of all or substantially all of Applicant's assets, (vi) the tenth anniversary of the date of the execution and delivery of the Loan and Security Agreement, or (vii) in the event that the entire deposit made by the Applicant with the FCC for Auction No. 97 is returned to the Applicant, the date on which the deposit is so returned.

. Moreover, Applicant has the option to prepay any or all of the advances made by USCC, or to obtain funding from other sources, but lender does not have the option to refuse to make the loan, subject to the Applicant satisfying the conditions of the Loan Agreement.

---

[4]        The Loan and Security Agreement was amended on February 6, 2015 to increase the loan amount.

In addition, Frequency Advantage granted to USCC a continuing security interest in the Collateral described in Section 5.01 of this Agreement for all of its obligations incurred as a result of advances made pursuant to this Agreement.  The collateral includes but is not limited to, to the extent permitted by law, all FCC licenses and permits held by Frequency Advantage.

6.      Promissory Note of Advantage Spectrum[5]

The Promissory Note, dated September 19, 2014, is entered into between Advantage Spectrum and USCC whereby Advantage Spectrum, as the Borrower, agrees to pay USCC, as the Lender, the principal amount of $272,448,000.00 or, if less, the aggregate principal amount of all advances made by Advantage Spectrum pursuant to the Loan and Security Agreement between Advantage Spectrum and USCC dated September 19, 2014.  On February 6, 2015, this Promissory Note was amended to increase the principal amount to $272,448,600.00.

7.      Promissory Note of Frequency Advantage[6]

The Promissory Note, dated September 19, 2014, is entered into between Frequency Advantage and USCC whereby Frequency Advantage, as the Borrower, agrees to pay USCC, as the Lender, the principal amount of $6,811,215.00 or, if less, the aggregate principal amount of all advances made by Frequency Advantage pursuant to the Loan and Security Agreement between Frequency Advantage and USCC dated September 19, 2014.  On February 6, 2015, this Promissory Note was amended to increase the principal amount to $6,811,215.00.

8.      Pledge Agreement from Frequency Advantage

The Pledge Agreement, dated September 19, 2014, is between Frequency Advantage as the Pledgor, in favor of USCC.  Pursuant to the Agreement, Frequency Advantage as a condition to the any advances made pursuant to the Loan and Security Agreement between Frequency Advantage and USCC, grants USCC a first priority security interest in its Partnership Interests in Advantage Spectrum (defined as 100% of the general partnership interests in Advantage Spectrum owned by Frequency Advantage) and all proceeds of any and all of the collateral.  Finally, Frequency Advantage is restricted from selling, transferring, pledging, or otherwise encumbering or disposing of any of its Partnership Interests in Advantage Spectrum or any of the collateral.

9.      Pledge Agreement from Sunshine Spectrum

The Pledge Agreement, dated September 19, 2014, is between Sunshine Spectrum as the Pledgor, in favor of USCC.  Pursuant to the Agreement, Sunshine Spectrum as a condition to the any advances made pursuant to the Loan and Security Agreement between Frequency Advantage and USCC, grants USCC a first priority security interest

---

[5]     The Parties entered into a Note Modification on February 6, 2015 to increase the loan amount.
[6]     The Parties entered into a Note Modification on February 6, 2015 to increase the loan amount.

9

in its Partnership Interests in Frequency Advantage (defined as 100% of the partnership interests in Frequency Advantage owned by Sunshine Spectrum) and all proceeds of any and all of the collateral.  Finally, Sunshine Spectrum is restricted from selling, transferring, pledging, or otherwise encumbering or disposing of any of its Partnership Interests in Frequency Advantage or any of the collateral.

10.     Pledge Agreement from Nonesuch, Inc.

The Pledge Agreement, dated September 19, 2014, is between Nonesuch, Inc. as the Pledgor, in favor of USCC.  Pursuant to the Agreement, Nonesuch, Inc. as a condition to the any advances made pursuant to the Loan and Security Agreement between Frequency Advantage and USCC, grants USCC a first priority security interest in its Partnership Interests in Frequency Advantage (defined as 100% of the partnership interests in Frequency Advantage owned by Nonesuch, Inc.) and all proceeds of any and all of the collateral.  Finally, Nonesuch, Inc. is restricted from selling, transferring, pledging, or otherwise encumbering or disposing of any of its Partnership Interests in Frequency Advantage or any of the collateral, without prior written consent or waiver of all relevant parties.

11.     Pledge Agreement from Will Vail

The Pledge Agreement, dated September 19, 2014, is between Will Vail as the Pledgor, in favor of USCC.  Pursuant to the Agreement, Mr.Vail as a condition to the any advances made pursuant to the Loan and Security Agreement between Frequency Advantage and USCC, grants USCC a first priority security interest in his interest in Sunshine Spectrum (defined as 100% of all issued and outstanding shares of capital stock in Sunshine Spectrum) and all proceeds of any and all of the collateral.  Finally, Mr. Vail is restricted from selling, transferring, pledging, or otherwise encumbering or disposing of any of his interest in Sunshine Spectrum or any of the collateral.

12.     Pledge Agreement from Allison Cryor DiNardo

The Pledge Agreement, dated September 19, 2014, is between Allison Cryor DiNardo as the Pledgor, in favor of USCC.  Pursuant to the Agreement, Ms. Cryor DiNardo as a condition to the any advances made pursuant to the Loan and Security Agreement between Frequency Advantage and USCC, grants USCC a first priority security interest in her interest in Nonesuch, Inc. (defined as 100% of all issued and outstanding shares of capital stock in Nonesuch, Inc.) and all proceeds of any and all of the collateral.  Finally, Ms. Cryor DiNardo is restricted from selling, transferring, pledging, or otherwise encumbering or disposing of any of her interest in Nonesuch, Inc. or any of the collateral, without the prior approval of USCC.  USCC provided such approval prior to the December 31, 2015 sale of Ms. DiNardo's interest in Nonesuch, Inc. to Mr. Vail.  Pursuant to that sale, Mr. Vail became obligated to pledge Nonesuch shares and Ms. DiNardo effectively was released of any pledge obligations involving stock she

no longer owns.

13.    <u>Limited Recourse Guaranty from Sunshine Spectrum, Inc</u>.

The Limited Recourse Guaranty, dated September 19, 2014, is between Sunshine Spectrum, Inc., as Guarantor, in favor of USCC.  Pursuant to the Agreement, the Guarantor absolutely, unconditionally and irrevocably guaranty to USCC the prompt satisfaction when due, whether by acceleration or otherwise, of any and all of the following:  (a) the outstanding principal balance of all loans made under the Loan Agreement between Frequency Advantage and USCC, accrued and unpaid interest thereon, and all fees payable thereunder; (b) all other indebtedness, liabilities and obligations of Frequency Advantage under or in respect of the Loan Agreement; (c) all other amounts payable by Frequency Advantage or the Guarantor under the Guaranty or under the Loan Agreement; (d) all out-of-pocket legal fees and expenses incurred by the USCC in the enforcement of this Guaranty or the Loan Agreement; (e) all out-of-pocket legal fees, costs, losses and expenses incurred by USCC in connection with any collateral provided by the Guarantor or Frequency Advantage; and (f) any renewals or extensions, replacements, modifications, substitutions, amendments and restatements of any of the foregoing.

14.    <u>Limited Recourse Guaranty from Nonesuch, Inc</u>.

The Limited Recourse Guaranty, dated September 19, 2014, is between Nonsuch, Inc., as Guarantor, in favor of USCC.  Pursuant to the Agreement, the Guarantor absolutely, unconditionally and irrevocably guaranty to USCC the prompt satisfaction when due, whether by acceleration or otherwise, of any and all of the following:  (a) the outstanding principal balance of all loans made under the Loan Agreement between Frequency Advantage and USCC, accrued and unpaid interest thereon, and all fees payable thereunder; (b) all other indebtedness, liabilities and obligations of Frequency Advantage under or in respect of the Loan Agreement; (c) all other amounts payable by Frequency Advantage or the Guarantor under the Guaranty or under the Loan Agreement; (d) all out-of-pocket legal fees and expenses incurred by the USCC in the enforcement of this Guaranty or the Loan Agreement; (e) all out-of-pocket legal fees, costs, losses and expenses incurred by USCC in connection with any collateral provided by the Guarantor or Frequency Advantage; and (f) any renewals or extensions, replacements, modifications, substitutions, amendments and restatements of any of the foregoing.

15.    <u>Limited Recourse Guaranty from Will Vail</u>

The Limited Recourse Guaranty, dated September 19, 2014, is between Will Vail, as Guarantor, in favor of USCC.  Pursuant to the Agreement, the Guarantor absolutely, unconditionally and irrevocably guaranty to USCC the prompt satisfaction when due, whether by acceleration or otherwise, of any and all of the following:  (a) the outstanding principal balance of all loans made under the Loan Agreement between Frequency Advantage and USCC, accrued and unpaid interest thereon, and all fees payable thereunder; (b) all other indebtedness, liabilities and obligations of Frequency Advantage

under or in respect of the Loan Agreement; (c) all other amounts payable by Frequency Advantage or the Guarantor under the Guaranty or under the Loan Agreement; (d) all out-of-pocket legal fees and expenses incurred by the USCC in the enforcement of this Guaranty or the Loan Agreement; (e) all out-of-pocket legal fees, costs, losses and expenses incurred by USCC in connection with any collateral provided by the Guarantor or Frequency Advantage; and (f) any renewals or extensions, replacements, modifications, substitutions, amendments and restatements of any of the foregoing.

16.     Limited Recourse Guaranty from Allison Cryor DiNardo

The Limited Recourse Guaranty, dated September 19, 2014, is between Allison Cryor DiNardo, as Guarantor, in favor of USCC.  Pursuant to the Agreement, the Guarantor absolutely, unconditionally and irrevocably guaranty to USCC the prompt satisfaction when due, whether by acceleration or otherwise, of any and all of the following:  (a) the outstanding principal balance of all loans made under the Loan Agreement between Frequency Advantage and USCC, accrued and unpaid interest thereon, and all fees payable thereunder; (b) all other indebtedness, liabilities and obligations of Frequency Advantage under or in respect of the Loan Agreement; (c) all other amounts payable by Frequency Advantage or the Guarantor under the Guaranty or under the Loan Agreement; (d) all out-of-pocket legal fees and expenses incurred by the USCC in the enforcement of this Guaranty or the Loan Agreement; (e) all out-of-pocket legal fees, costs, losses and expenses incurred by USCC in connection with any collateral provided by the Guarantor or Frequency Advantage; and (f) any renewals or extensions, replacements, modifications, substitutions, amendments and restatements of any of the foregoing.

C.     INVESTOR PROTECTIONS

Pursuant to Sections 1.2112(b)(3) of the FCC's Rules, Advantage Spectrum hereby summarizes the investor protections included in its organizational and operational documents.

1.     Advantage Spectrum LP Agreement

Certain traditional investor protections have been built into the Advantage Spectrum LP Agreement in order to protect the legitimate interests of the non-controlling partner. For example, Section 5.2 prohibits the General Partner from taking the following action: (1) amending the governing organizational documents; (2) admitting new partners; and (3) acting in contravention of applicable rules and law.  Further, Section 5.3 permits the General Partner to take the following major corporate action only with the consent of the General Partner and those Partners holding at least fifty-five percent (55%) of the Partnership Interests: (1) making any material change in the Partnership's business of building and operating AWS systems; (2) selling substantially all of the assets of the Applicant or liquidating or dissolving the Applicant; and (3) entering into an agreement with the General Partner or any affiliate which provides for the payment of more than $500,000.

14

The Limited Partner also has rights of first refusal and tag-along rights with respect to the sale of another Partners' interest in or the assets of Advantage Spectrum (Sections 9.7 and 9.8). These rights are subject to various limitations, including the time in which the right must be exercised, and the price paid to the other Partner with respect to the interests or assets being sold.