UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**, *ex rel.* **MARK J. O'CONNOR** and **SARA F. LEIBMAN**<br><br>Plaintiffs-Relators,<br><br>v.<br><br>**UNITED STATES CELLULAR CORPORATION**, *et al.*,<br><br>Defendants. | Civil Action No. 20-cv-2070 (TSC) |

## MEMORANDUM OPINION

Plaintiffs-Relators Mark J. O'Connor and Sara F. Leibman filed this False Claims Act action against Defendants Advantage Spectrum, L.P., Allison Cryor DiNardo, Frequency Advantage, L.P., King Street Inc., King Street Wireless, L.P., Nonesuch, Inc., Telephone and Data Systems, Inc., United States Cellular Corporation, and USCC Wireless Investment, Inc. in the United States District Court for the Western District of Oklahoma. Compl., ECF No. 2.  After the United States declined to intervene, ECF No. 42, the case was transferred upon joint motion of the Defendants to this court in 2020, ECF No. 127.  Upon transfer, three Defendants separately moved to dismiss.  ECF Nos. 151, 153, 155.  The court granted those motions, dismissing Plaintiffs' claims without prejudice, but allowed Plaintiffs-Relators to file an amended complaint, ECF No. 171, which they did, *see* Am. Compl., ECF No. 174.  The three Defendants have renewed their motions to dismiss, ECF Nos. 178, 179, 180.  As in its previous decision, the court will address the motions to dismiss jointly because all three make the same

Page **1** of **11**

substantive arguments. For the reasons that follow, the court will again **GRANT** Defendants' motions and dismiss Plaintiffs-Relators' claims—this time, with prejudice.

## I. BACKGROUND

The court has already set forth most of the relevant legal and factual background for this case. *See United States ex rel. O'Connor v. United States Cellular Corp.*, No. 20-CV-2070 (TSC), 2022 WL 971290, at *1-3 (D.D.C. Mar. 31, 2022). In sum: Plaintiffs-Relators are communications law attorneys who allege that Defendants fraudulently represented that Frequency Advantage, L.P. ("Advantage") was a "very small business" qualifying for "Designated Entity" status and therefore a discount on its bids for electromagnetic spectrum licenses during a 2015 Federal Communications Commission ("FCC") auction.

The court dismissed Plaintiffs-Relators' claims in March 2022 under the False Claims Act's ("FCA") public disclosure bar. *Id.* at *7. The bar requires the court to "dismiss an action or claim" if "substantially the same allegations or transactions" have been publicly disclosed in a hearing in which the Government or its agent was a party, in certain federal reports, hearings, audits, or investigations, or in the new media. 31 U.S.C. § 3730(e)(4)(A). However, if the relator was the "original source" of the information on which their allegations are based, and that information "materially adds to the publicly disclosed allegations or transactions," the public disclosure bar does not apply. *Id.* § 3730(e)(4)(B); *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 467 (2007) (defining "original source").

In its decision granting the original motions to dismiss, the court identified three central allegations Plaintiffs-Relators advanced to support their FCA claims and found that none overcame the public disclosure bar. First, Plaintiffs-Relators alleged there was evidence that U.S. Cellular controlled Advantage—evidence which was reportedly "shown in detail" in another case but could not be incorporated by reference into this case. 2022 WL 971290 at *4.

Second, Plaintiffs-Relators alleged that Advantage's FCC filings revealed its *de facto* control by U.S. Cellular—but all such filings were publicly accessible on the FCC's docket or U.S. Cellular's website and therefore "would have given the Government sufficient notice to 'adequately investigate the case and make a decision whether to prosecute.'" *Id.* at *5 (citing *United States ex rel. Davis v. D.C.*, 679 F.3d 832, 836 (D.C. Cir. 2012)). And third, Plaintiffs-Relators alleged they had gathered information through "surveillance and private investigation of Defendants' offices and employees"—but that information failed to "materially add to the allegations and transactions already in the public domain." *Id.* at *5-6. As a result, Plaintiffs-Relators did not qualify as an "original source" and the court dismissed their claims but allowed them the opportunity to file an amended complaint. *Id.* at *6-7.

## II.     LEGAL STANDARD

A motion to dismiss for failure to state a claim under Federal Rule of Procedure 12(b)(6) tests the legal sufficiency of a complaint. *See Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). To survive that motion, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 67 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when the facts alleged allow the court to reasonably infer the defendant's culpability for the misconduct alleged. *Id.* In drawing such reasonable inferences, the court must grant the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting *Schuler v. United States*, 61 F.2d 605, 608 (D.C. Cir. 1979)).

## III.     ANALYSIS

The court granted Plaintiffs-Relators leave to amend their allegations to allow them to attempt to proffer different allegations or transactions from those already in the public domain.

The Amended Complaint fails to do so. The "core allegation" Plaintiffs-Relators identify in their Amended Complaint is the same as in their original Complaint, which the court already held did not overcome the public disclosure bar. They proffer the same FCC filings and other public information from their original Complaint, and, despite their efforts to elaborate on the nature and findings of their "significant independent investigation," they again fail to materially add to publicly disclosed information and do not qualify as an original source. As a result, the FCA precludes their claims.[1]

A. **The Amended Complaint's core allegations have not changed**

At the outset, it bears emphasis that the Amended Complaint ultimately relies on the same—and fatally barred—allegations that Plaintiffs-Relators originally raised. In its prior decision, the court described Plaintiffs-Relators' central claim thusly: "Advantage was not a genuine DE that took investment from [U.S. Cellular], and . . . U.S. Cellular control[led] Advantage directly, as well as indirectly, through its alleged affiliates" to "falsely present[] claims for payment from" and "avoid making payments to the federal government." 2022 WL 971290 at *3. According to Plaintiffs-Relators, the Amended Complaint is different because it clarifies that the "core allegation" is not merely "that U.S. Cellular controlled Advantage and its licensed spectrum, but that the Defendants established and used Advantage as a vehicle for U.S. Cellular to fraudulently obtain, use, and retain spectrum licenses." Plaintiffs/Relators' Consolidated Response in Opposition to Defendants' Motions to Dismiss at 14, ECF No. 182 ("Opposition"). But that is the same claim as in the original motion, repackaged: U.S. Cellular

---

[1] As in their original motions to dismiss, Defendants also argue that Plaintiffs-Relators have failed to show an objectively false claim, scienter, or that the allegedly false claims were material to the government payments in question. Because the public disclosure bar again independently requires dismissal, the court does not reach these arguments.

defrauded the government *by exercising control over Advantage* before, during, and after Advantage obtained spectrum licenses. The core allegation remains unchanged.[2]

Plaintiffs-Relators also contend that the Amended Complaint adds allegations that Advantage continued to engage in fraudulent compliance certifications after the sale, in addition to the initial fraud in obtaining the discount. Opposition at 14-15. That contention misses the mark. In the first place, the original Complaint's allegations also spoke to Defendants' post-auction conduct, suggesting that the fraud was ongoing. *See, e.g.*, Compl. ¶ 76 (referring to U.S. Cellular's continued control and financing of Advantage wireless networks); *id.* ¶ 78 (asserting that Defendants' public agreements "effectively provide[] a cover for U.S. Cellular to control the build out and ownership of the networks that will use the Advantage licenses"). But there is a more fundamental problem: At best, allegations that Defendants fraudulently *maintained* Advantage as a front for U.S. Cellular to *keep* their discount still only point to "specific instances of fraud where the general practice"—that Defendants fraudulently *created* Advantage as a front for U.S. Cellular to *obtain* their discount—"has already been exposed." *United States ex rel. Oliver v. Philip Morris USA Inc.*, 826 F.3d 466, 472 (D.C. Cir. 2016); (quoting *United States ex rel. Settlemire v. District of Columbia*, 198 F.3d 913, 919 (D.C. Cir. 1999)). As the court previously found, and the next section reiterates, public documents have already exposed the allegations and transactions underlying Plaintiffs-Relators' claims.

## B. Public FCC filings continue to bar this action

Advantage's FCC filings and other publicly available documents continue to bar Plaintiffs-Relators' claims. In its prior Opinion, the court observed that all six documents that

---

[2] The specific, supporting allegations Plaintiffs-Relators point to in their Amended Complaint are not new, either. *Compare* Opposition at 14, *with* Compl. ¶¶ 4, 8-10, 42-45, 47, 52.

Plaintiffs-Relators cited in support of their allegations were "available on the FCC's public docket" or "publicly accessible on U.S. Cellular's website and . . . submitted for the FCC's review." 2022 WL 971290 at *5. These filings "would have given the Government sufficient notice to 'adequately investigate the case and to make a decision whether to prosecute.'" *Id.* (quoting *Davis*, 679 F.3d at 836). That conclusion has not changed.

The Amended Complaint deleted many of its citations to public filings but has kept most of the same allegations. *See* King Street Wireless, Inc., and Allison Cryor DiNardo Motion to Dismiss at 15-16, ECF No. 178-1 ("KSW MTD") (comparing the original and amended complaints). These changes do not avoid the public disclosure bar; the court cannot turn a blind eye to those filings, even if Plaintiffs-Relators do not cite to them. *See United States ex rel. Scott v. Pac. Architects & Engineers , Inc.*, No. CV 13-1844 (CKK), 2020 WL 224504 at *6 (D.D.C. Jan. 15, 2020) (noting that the plaintiffs-relators had "deleted most of their direct references to [a] State Department audit," but still considering the audit and determining that it triggered the bar). The existence of the filings therefore bars Plaintiffs-Relators' claims in the Amended as well as the original Complaint.

Plaintiffs-Relators' efforts to relitigate that conclusion are unavailing. First, they argue that because FCC licensing proceedings are decided on the papers, and not by live presentations, they are not "Federal criminal, civil, or administrative hearing[s]" within the meaning of FCA public disclosures. Opposition at 15-18 (quoting 31 U.S.C. § 3730(e)(4)(A)(i)). Even if that argument were not foreclosed by the court's prior Opinion, *see* 2022 WL 971290 at *5, it would run headlong into longstanding D.C. Circuit precedent. "For purposes of [the public disclosure bar], 'hearing' is roughly synonymous with 'proceeding'"—including "'paper' proceedings."

*United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 652 (D.C. Cir. 1994). FCC filings for licensing proceedings therefore qualify as public disclosures.

Second, Plaintiffs-Relators again dispute the court's conclusion that the FCC filings could have "alerted law-enforcement authorities to the likelihood of wrongdoing." Opposition at 20 (quoting *Settlemire*, 198 F.3d at 918). They assert that the FCC filings "did not include information exposing that Advantage was and is a *fraudulent* DE acting for U.S. Cellular." *Id.* However, they admit the existence of both (1) the FCC filings' summaries stating that there was no *de facto* control, and (2) the Advantage-U.S. Cellular agreements (and their attachments) upon which Plaintiffs-Relators have relied to show *de facto* control. *See* Opposition at 21-22; *see also id.* at 14. These are, respectively, the allegedly "misrepresented state of facts (X)" and "true state of facts (Y)" that together amount to the "allegation of fraud (Z)." 2022 WL 971290 at *4 (citing *United States ex rel. Shea v. Cellco P'ship*, 863 F.3d 923, 933 (D.C. Cir. 2017)). Because both sets of documents were publicly filed with the FCC, they triggered the public disclosure bar.

Plaintiffs-Relators' amendments have not altered the landscape. The only new documents that they purportedly rely upon, in addition to the FCC filings, are alleged "secret" agreements showing that Advantage's DE certification and compliance were fraudulent. *See* Opposition at 14 (citing Am. Compl. ¶¶ 4, 7, 52-53, 55-58, 60, 70-73, 83, 97, 101, 103-104, 106-110, 112-117, 135, 137, 141-142)). The Amended Complaint refers mainly to one such agreement: the 2011 Network Sharing Agreement between King Street Wireless and U.S. Cellular, which would allow U.S. Cellular to lease portions of King Street Wireless's spectrum to use for its own customers. *See, e.g.*, Am. Compl. ¶¶ 70-73. This is the "detail" from the related case that Plaintiffs-Realtors only incorporated by reference into their original complaint.

2022 WL 971290 at *4.  Plaintiffs-Relators contend that that agreement shows that U.S. Cellular controlled King Street Wireless, which in turn controlled Advantage—ergo, that U.S. Cellular controlled Advantage.  Even accepting that premise, though, it is not substantially dissimilar from the allegations arising from the FCC filings themselves.  Either way, at bottom lies the same core allegation: that U.S. Cellular controlled Advantage to fraudulently obtain and retain the 25% bid discount for DEs.  Moreover, other public documents—including statements from the FCC itself—have already revealed that U.S. Cellular and King Street agreed to share network around that time.  *See, e.g.*, *In the Matter of Promoting Interoperability in the 700 Mhz Comm'n. Spectrum*, 27 F.C.C. Rcd. 352 & n.77 (2012) (recognizing that that King Street Wireless had agreed to allow U.S. Cellular to share its spectrum); *see also* sources cited at KSW MTD at 18-19 & n.6.[3]  So, to the (questionable) extent that any inference of control can be drawn from the agreement to share spectrum, that fact is already public and has been for some time.  As a result, Plaintiffs-Relators' reliance on the 2011 Network Sharing Agreement fails to overcome the public disclosure bar.

The Amended Complaint also asserts that there were "other oral or implied agreements that were necessary to carry out the conspiracy."  Am. Compl. ¶ 141(f).  But that assertion cannot bear the weight Plaintiffs-Relators place on it.  In the first place, it is essentially the same assertion made in the original Complaint—that Defendant had "hidden the true agreements, understandings, and relationships between King Street and U.S. Cellular."  Compl. ¶ 52.

---

[3] "A court may take judicial notice of facts contained in public records of other proceedings," *Detroit Int'l Bridge Co. v. Gov't of Canada*, 133 F. Supp. 3d 70, 84 (D.D.C. 2015) (citing *Abhe & Svoboda, Inc. v. Chao,* 508 F.3d 1052, 1059 (D.C. Cir. 2007)), along with other "government documents available from reliable sources," *id.* at 85 (citations omitted).

Further, the Amended Complaint supplies no allegations to support that assertion beyond information that is already publicly available. And in any event, Plaintiffs-Relators fail to allege how any additional secret agreements differ sufficiently from publicly available ones such that they could support allegations substantially distinct from those that the court has already identified and found to be barred. *See supra* Section III.A; 2022 WL 971290 at *4-6. Consequently, Plaintiffs-Relators' assertions of additional secret agreements cannot amount to more than "speculation" based on publicly existing information, and therefore cannot overcome the public disclosure bar. *Shea*, 863 F.3d at 934 (quoting *Oliver*, 826 F.3d at 479).

C.  **Plaintiffs-Relators still do not qualify as "original sources"**

Because the Amended Complaint is premised on "substantially the same allegations or transactions" that have already been publicly disclosed, Plaintiffs-Relators' suit must be dismissed unless they qualify as an "original source." Plaintiffs-Relators may so qualify only by obtaining and sharing "knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions." 31 U.S.C. § 3730(e)(4)(B). In its prior Opinion, the court concluded that Plaintiffs-Relators' proffered "surveillance and private investigations" failed to meet that standard. 2022 WL 971290 at *6. For similar reasons, the court reaches the same conclusion here.

Plaintiffs-Relators assert that their independent efforts have yielded seven new allegations supporting their claim:

> (1) in the past six years since the licenses were awarded, Advantage has never had a legitimate place of business; employed anyone other than Vail, or conducted itself in any way as if it were a business (¶¶ 87-88; 118-122, 133); (2) Advantage's bidding was conducted from King Street's offices, and under the control of U.S. Cellular and DiNardo/King Street27 (¶¶ 89, 92); (3) U.S. Cellular hired experts to educate Vail on the mechanics of placing bids (¶ 90); (4) one of the two Advantage designated bidders was a King Street employee with no known relationship with, or duty to, Advantage and controlled by

> DiNardo (¶ 91); (5) Advantage and U.S. Cellular entered into and concealed their agreement to transfer the licenses to U.S. Cellular (¶ 103); (6) pursuant to that undisclosed agreement, Advantage has transferred control of the licenses to U.S. Cellular through the purported spectrum manager leases (¶¶ 124-128); and (7) the spectrum manager lease for 76 licenses was falsely and fraudulently drafted to cover as little spectrum as possible to avoid the unjust enrichment payment, notwithstanding that U.S. Cellular already controlled the licenses. (¶ 126).

Opposition at 34 (internal citations are to paragraphs in the Amended Complaint). Ultimately, however, these allegations do not individually or collectively amount to a material addition to the publicly disclosed information and allegations.

The court has already considered and rejected the first, second, and fourth allegations. In its prior Opinion, it specifically acknowledged the allegations that Advantage was not using its offices, that Advantage conducted its bidding from King Street Wireless's offices, and that one of Advantage's designated bidders was a King Street Wireless employee. 2022 WL 971290 at *6. It is also no surprise that Advantage was not acting "as if it were a business": Advantage's own DE annual reports, which Plaintiffs-Relators attached to their Amended Complaint, state that Advantage had no customers and had not constructed any equipment. Am. Compl., Exs. 10-14, ECF Nos. 174-10-14. Once again, these allegations do "not significantly expand the court's understanding of the essential factual background of this case" or provide "information that might have otherwise influenced the Government, as shown by the fact that the Government elected not to intervene in this case." 2022 WL 971290 at *6.

The other allegations fare no better. The third, that U.S. Cellular hired experts to educate Advantage on how to bid, is merely a collateral detail to the already public fact that U.S. Cellular and King Street Wireless would "assist [Advantage] in the conduct [sic] the bidding activities." 2022 WL 971290 at *5 (citing the Advantage partnership agreement filed with the FCC). The fifth allegation refers to the existence of "secret" agreements which, as the court has already

explained, is no more than speculation based on public documents. *Supra* Section III.B. As for the sixth and seventh allegations, Advantage and U.S. Cellular specifically disclosed to the FCC the formation and nature of the spectrum manager leases upon which Plaintiff-Relators rely. *See* Am. Compl., Ex. 15, ECF No. 174-15 ("notify[ing] the Commission of a Long-Term Spectrum Manager Lease Agreement"). Ultimately, then, the Amended Complaint does not meaningfully support any of these allegations with non-public, independent knowledge uncovered by Plaintiffs-Relators' investigations. They therefore cannot qualify Plaintiffs-Relators for original-source status.[4]

### IV.   CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss (ECF Nos. 178, 179, & 180) will be **GRANTED**. This time, Plaintiffs-Relators' claims will be dismissed with prejudice. A corresponding order will accompany this Memorandum Opinion.

Date: March 9, 2023

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge

---

[4] Defendants again argue that a 2008 *qui tam* action brought by Plaintiff-Relator O'Connor's law firm is another public disclosure that would invoke the public disclosure bar. *See Lampert & O'Connor, P.C. v. Carroll Wireless, L.P.*, 07-cv-0800 (D.D.C. May 2, 2010). Because the court has found that bar already applies based on the public FCC filings, the court need not address this argument.