# ATTACHMENT A

*Redline Comparison of Answer to First Amended Complaint to Answer to Second Amended Complaint*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* MARK J. O'CONNOR and SARA F. LEIBMAN,<br><br>Plaintiffs/Relators,<br><br>v.<br><br>UNITED STATES CELLULAR CORPORATION, *et al.*,<br><br>Defendants. | Case No. 20-CV-2070 (TSC) |

**DEFENDANTS UNITED STATES CELLULAR CORPORATION, USCC WIRELESS INVESTMENT, INC., TELEPHONE AND DATA SYSTEMS, INC., KING STREET WIRELESS, L.P., KING STREET WIRELESS, INC., ADVANTAGE SPECTRUM, L.P., FREQUENCY ADVANTAGE, L.P., SUNSHINE SPECTRUM, INC., AND NONESUCH, INC.'S ANSWER TO PLAINTIFFS/RELATORS' SECOND AMENDED COMPLAINT**

Pursuant to Federal Rule of Civil Procedure 12(a)(4)(A), Defendants United States Cellular Corporation, USCC Wireless Investment, Inc., Telephone and Data Systems, Inc., King Street Wireless, L.P., King Street Wireless, Inc., Advantage Spectrum, L.P., Frequency Advantage, L.P., Sunshine Spectrum, Inc., and Nonesuch, Inc. (collectively "Defendants") respond to the allegations in Plaintiffs' Second Amended Complaint ("Complaint") as set forth below.[1] By submitting this Answer, Defendants expressly reserve and do not waive any applicable rights, defenses, or objections. Defendants also expressly reserve the right to amend this Answer and their affirmative defenses based on discovery, factual developments, and

[1] Defendants note that United States Cellular Corporation sold its wireless operations and select spectrum to T-Mobile and changed its name to Array Digital Infrastructure, Inc. in August 2025. Defendants refer the Court to its LCvR 26.1 certificate filed at ECF 210 for an accurate statement of Defendants' present names and affiliations.

Defendants' ongoing investigation of Plaintiffs' claims. Unless expressly stated herein, nothing in this Answer should be construed as an admission that Defendants admit the existence of any facts alleged in the Complaint. Defendants make no representations, concessions, or admissions regarding the relevance or appropriateness of any facts alleged in the Complaint. Any allegation not expressly and explicitly admitted is denied. To the extent substantive factual allegations embodied in the boldface headings from the Complaint require a response, Defendants deny them.

## I. INTRODUCTION

1. Defendants admit that United States Cellular Corporation ("U.S. Cellular") was, at the time of the Complaint, a wireless company that served millions of customers across several states and markets in 2015. Defendants refer to U.S. Cellular's public filings with the Securities and Exchange Commission ("SEC") for a complete and accurate statement of its revenue, customers, and geographic information during the period identified in Paragraph 1. Defendants deny the allegations in Paragraph 1 to the extent they are inconsistent with those filings.

2. Denied.

3. Defendants admit that Advantage Spectrum, L.P. ("Advantage") submitted cumulative bids of $451,072,000 on 124 licenses for AWS-3 spectrum in FCC Auction No. 97, was the winning bidder for these licenses, was lawfully credited with $112,768,000 in bidding credits, and paid $338,304,000 for these licenses. Defendants deny all remaining allegations in Paragraph 3.

4. Denied.

5. Defendants admit that Advantage was the owner of 124 spectrum licenses and at different times had different addresses. Defendants deny all remaining allegations in Paragraph 5.

6. Denied.

7. Defendants admit that U.S. Cellular has—in accordance with all FCC rules and regulations governing designated entities—provided wireless service to its customers using licenses awarded to Advantage. Defendants deny all remaining allegations in Paragraph 7.

8. Denied.

9. Denied.

## II. THE PARTIES

10. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 10 and, on that basis, deny them.

11. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 11 and, on that basis, deny them.

12. Defendants admit that, at the time of the Complaint, Telephone and Data Systems, Inc. ("TDS") was a publicly held Delaware corporation with its principal place of business in Chicago, Illinois, that TDS was a majority owner of U.S. Cellular, that U.S. Cellular was the parent of USCC Wireless Investment, Inc., and that USCC Wireless Investment, Inc. was the parent of the limited partners of Advantage and King Street Wireless, L.P. Defendants otherwise refer to their public filings with the SEC for complete and accurate statements of their ownership, revenue, customers, and geographic information during the periods identified in

Paragraph 12. Defendants deny the allegations in Paragraph 12 to the extent they are inconsistent with those filings.[2]

13. Defendants admit that, at the time of the Complaint, U.S. Cellular was a publicly held Delaware corporation with its principal place of business in Chicago, Illinois, and which was majority owned by TDS. Defendants otherwise refer to their public filings with the SEC for complete and accurate statements of their ownership, revenue, customers, and geographic information during the periods identified in Paragraph 13. Defendants deny the allegations in Paragraph 13 to the extent they are inconsistent with those filings.

14. Defendants admit that USCC Wireless Investment, Inc. was incorporated in Delaware on November 1, 2000, and, at the time of the Complaint, was a wholly-owned subsidiary of U.S. Cellular.

15. Defendants admit that, at the time of the Complaint, USCC Wireless Investment, Inc. was the limited partner of Advantage. Defendants otherwise refer to their public filings with the SEC and FCC for complete and accurate statements of their ownership and organizational relationships and deny the allegations in Paragraph 15 to the extent they are inconsistent with those filings. Defendants also deny all remaining allegations in Paragraph 15.

16. Defendants admit that Frequency Advantage, L.P. ("Frequency") was the general partner and partial owner of Advantage. Defendants otherwise refer to their public filings with the SEC and FCC for complete and accurate statements of their ownership and organizational relationships during the period identified in Paragraph 16. Defendants deny the allegations in Paragraph 16 to the extent they are inconsistent with those filings.

[2] As to Relators' allegations in Paragraphs 12 through 20, as noted above, Defendants refer the Court to its LCvR 26.1 certificate filed at ECF 210 for an accurate statement of Defendants' present names and affiliations.

17. Defendants admit that Sunshine Spectrum, Inc. was the general partner and majority owner of Frequency and was wholly owned by William Vail, who lived in Florida and had worked in telecommunications. Defendants otherwise refer to their public filings with the SEC and FCC for complete and accurate statements of their ownership and organizational relationships. Defendants deny the allegations in Paragraph 17 to the extent they are inconsistent with those filings.

18. Defendants admit that Nonesuch, Inc. was the limited partner and minority owner of Frequency and that Allison DiNardo was the sole shareholder of Nonesuch, Inc. Defendants otherwise refer to their public filings with the SEC and FCC for complete and accurate statements of their ownership and organizational relationships. Defendants deny the allegations in Paragraph 18 to the extent they are inconsistent with those filings.

19. Defendants admit that Allison DiNardo was the sole shareholder of King Street Wireless, Inc., which was the general partner of King Street Wireless, L.P. ("King Street"), which received bidding credits for spectrum licenses. Defendants otherwise refer to their public filings with the SEC and FCC for complete and accurate statements of their ownership, spectrum license interests, spectrum auction participation, and organizational relationships during the periods identified in Paragraph 19. Defendants deny the allegations in Paragraph 19 to the extent they are inconsistent with those filings. Defendants deny all remaining allegations in Paragraph 19.

20. Defendants admit that Allison DiNardo transferred her entire ownership interest in Nonesuch, Inc. to William Vail effective December 31, 2015. Defendants otherwise refer to their public filings with the SEC and FCC, as well as public FCC records and decisions, for complete and accurate statements of Defendants' ownership and organizational relationships,

and the FCC's actions upon review of the same, during the periods identified in Paragraph 20. Defendants deny the allegations in Paragraph 20 to the extent they are inconsistent with those filings and public records.

21. Defendants admit that Advantage was formed as a limited partnership under the laws of Delaware in August 2014, and that Frequency and USCC Wireless Investment, Inc. executed a limited partnership agreement prior to Auction 97. Defendants otherwise refer to their public filings with the SEC and FCC for complete and accurate statements of Defendants' business information and partnership agreements during the periods identified in Paragraph 21. Defendants deny the allegations in Paragraph 21 to the extent they are inconsistent with those filings and public records.

## III. JURISDICTION AND VENUE

22. Defendants admit that Relators purport to bring this action under the False Claims Act ("FCA") and that this Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 31 U.S.C. § 3732. Defendants deny any violations of the FCA.

23. Defendants do not contest personal jurisdiction for purposes of this action. Defendants deny that they performed acts in furtherance of a conspiracy, or performed any other act prohibited by 31 U.S.C. § 3729, and otherwise deny the allegations in Paragraph 23.

24. Defendants do not contest venue in this District. Defendants deny that they filed or caused the filing of any false or fraudulent claims, reports, or documents, and otherwise deny the allegations in Paragraph 24.

25. The allegations of Paragraph 25 constitute legal conclusions to which no response is required. To the extent Paragraph 25 contains factual allegations requiring a response,

Defendants deny those allegations. Defendants further deny that Relators' claims and this Complaint are not barred by the public disclosure bar under 31 U.S.C. § 3730(e)(4).

26. The allegations of Paragraph 26 constitute legal conclusions to which no response is required. To the extent Paragraph 26 contains factual allegations requiring a response, Defendants deny those allegations and deny that Relators are an "original source" under 31 U.S.C. § 3730(e)(4)(B).

## IV. RELEVANT STATUTES AND REGULATIONS

27. Paragraph 27 purports to quote or characterize statutes, regulations, or legal standards. The cited authorities are the best evidence of their complete text and legal effect and speak for themselves, and no response is required to legal conclusions. To the extent a response is required, Defendants deny any incomplete or inaccurate characterization in Paragraph 27 and deny any violation of, or liability under, the cited authorities.

28. Paragraph 28 purports to quote or characterize statutes, regulations, or legal standards. The cited authorities are the best evidence of their complete text and legal effect and speak for themselves, and no response is required to legal conclusions. To the extent a response is required, Defendants deny any incomplete or inaccurate characterization in Paragraph 28 and deny any violation of, or liability under, the cited authorities.

29. The allegations of Paragraph 29 constitute legal conclusions to which no response is required. To the extent Paragraph 29 contains factual allegations requiring a response, Defendants deny those allegations.

30. Paragraph 30 purports to quote or characterize statutes, regulations, or legal standards. The cited authorities are the best evidence of their complete text and legal effect and speak for themselves, and no response is required to legal conclusions. To the extent a response

is required, Defendants deny any incomplete or inaccurate characterization in Paragraph 30 and deny any violation of, or liability under, the cited authorities.

31. Paragraph 31 purports to quote or characterize statutes, regulations, or legal standards. The cited authorities are the best evidence of their complete text and legal effect and speak for themselves, and no response is required to legal conclusions. To the extent a response is required, Defendants deny any incomplete or inaccurate characterization in Paragraph 31 and deny any violation of, or liability under, the cited authorities.

32. Paragraph 32 purports to quote or characterize statutes, regulations, or legal standards. The cited authorities are the best evidence of their complete text and legal effect and speak for themselves, and no response is required to legal conclusions. To the extent a response is required, Defendants deny any incomplete or inaccurate characterization in Paragraph 32 and deny any violation of, or liability under, the cited authorities.

33. Paragraph 33 purports to quote or characterize statutes, regulations, or legal standards. The cited authorities are the best evidence of their complete text and legal effect and speak for themselves, and no response is required to legal conclusions. To the extent a response is required, Defendants deny any incomplete or inaccurate characterization in Paragraph 33 and deny any violation of, or liability under, the cited authorities.

34. Paragraph 34 purports to quote or characterize statutes, regulations, or legal standards. The cited authorities are the best evidence of their complete text and legal effect and speak for themselves, and no response is required to legal conclusions. To the extent a response is required, Defendants deny any incomplete or inaccurate characterization in Paragraph 34 and deny any violation of, or liability under, the cited authorities.

35. Paragraph 35 purports to quote or characterize statutes, regulations, or legal standards. The cited authorities are the best evidence of their complete text and legal effect and speak for themselves, and no response is required to legal conclusions. To the extent a response is required, Defendants deny any incomplete or inaccurate characterization in Paragraph 35 and deny any violation of, or liability under, the cited authorities.

36. Paragraph 36 appears to quote or characterize statutes, regulations, or legal standards. These authorities are the best evidence of their complete text and legal effect and speak for themselves, and no response is required to legal conclusions. To the extent a response is required, Defendants deny any incomplete or inaccurate characterization in Paragraph 36 and deny any violation of, or liability under, the cited authorities.

37. Paragraph 37 purports to quote or characterize statutes, regulations, or legal standards. The cited authorities are the best evidence of their complete text and legal effect and speak for themselves, and no response is required to legal conclusions. To the extent a response is required, Defendants deny any incomplete or inaccurate characterization in Paragraph 37 and deny any violation of, or liability under, the cited authorities.

38. Defendants admit that Advantage applied for bid credits as a very small business. Otherwise, Paragraph 38 purports to quote or characterize statutes, regulations, or legal standards. The cited authorities are the best evidence of their complete text and legal effect and speak for themselves, and no response is required to legal conclusions. To the extent a response is required, Defendants deny any incomplete or inaccurate characterization in Paragraph 38 and deny any violation of, or liability under, the cited authorities.

39. Paragraph 39 purports to quote or characterize statutes, regulations, or legal standards. The cited authorities are the best evidence of their complete text and legal effect and

speak for themselves, and no response is required to legal conclusions. To the extent a response is required, Defendants deny any incomplete or inaccurate characterization in Paragraph 39 and deny any violation of, or liability under, the cited authorities.

40. Paragraph 40 purports to quote or characterize statutes, regulations, or legal standards. The cited authorities are the best evidence of their complete text and legal effect and speak for themselves, and no response is required to legal conclusions. To the extent a response is required, Defendants deny any incomplete or inaccurate characterization in Paragraph 40 and deny any violation of, or liability under, the cited authorities.

41. Paragraph 41 and footnote 1 purport to quote or characterize statutes, regulations, or legal standards. The cited authorities are the best evidence of their complete text and legal effect and speak for themselves, and no response is required to legal conclusions. To the extent a response is required, Defendants deny any incomplete or inaccurate characterization in Paragraph 41 and footnote 1 and deny any violation of, or liability under, the cited authorities.

42. Paragraph 42 purports to quote or characterize statutes, regulations, or legal standards. The cited authorities are the best evidence of their complete text and legal effect and speak for themselves, and no response is required to legal conclusions. To the extent a response is required, Defendants deny any incomplete or inaccurate characterization in Paragraph 42 and deny any violation of, or liability under, the cited authorities.

43. Paragraph 43 purports to quote or characterize statutes, regulations, or legal standards. The cited authorities are the best evidence of their complete text and legal effect and speak for themselves, and no response is required to legal conclusions. To the extent a response is required, Defendants deny any incomplete or inaccurate characterization in Paragraph 43 and deny any violation of, or liability under, the cited authorities.

44. Paragraph 44 purports to quote or characterize statutes, regulations, or legal standards. The cited authorities are the best evidence of their complete text and legal effect and speak for themselves, and no response is required to legal conclusions. To the extent a response is required, Defendants deny any incomplete or inaccurate characterization in Paragraph 44 and deny any violation of, or liability under, the cited authorities.

45. Paragraph 45 purports to quote or characterize statutes, regulations, or legal standards. The cited authorities are the best evidence of their complete text and legal effect and speak for themselves, and no response is required to legal conclusions. To the extent a response is required, Defendants deny any incomplete or inaccurate characterization in Paragraph 45 and deny any violation of, or liability under, the cited authorities.

46. Paragraph 46 purports to quote or characterize statutes, regulations, or legal standards. The cited authorities are the best evidence of their complete text and legal effect and speak for themselves, and no response is required to legal conclusions. To the extent a response is required, Defendants deny any incomplete or inaccurate characterization in Paragraph 46 and deny any violation of, or liability under, the cited authorities.

47. Paragraph 47 purports to quote or characterize statutes, regulations, or legal standards. The cited authorities are the best evidence of their complete text and legal effect and speak for themselves, and no response is required to legal conclusions. To the extent a response is required, Defendants deny any incomplete or inaccurate characterization in Paragraph 47 and deny any violation of, or liability under, the cited authorities.

48. Paragraph 48 purports to quote or characterize statutes, regulations, or legal standards. The cited authorities are the best evidence of their complete text and legal effect and speak for themselves, and no response is required to legal conclusions. To the extent a response

is required, Defendants deny any incomplete or inaccurate characterization in Paragraph 48 and deny any violation of, or liability under, the cited authorities.

49. Paragraph 49 purports to characterize the FCC's internal decisional process. Defendants refer to the governing statutes, regulations, and public filings with the FCC, deny any incomplete or inaccurate characterization of the same in Paragraph 49, and deny that Defendants submitted false information to the FCC.

50. Paragraph 50 purports to quote or characterize statutes, regulations, or legal standards. The cited authorities are the best evidence of their complete text and legal effect and speak for themselves, and no response is required to legal conclusions. To the extent a response is required, Defendants deny any incomplete or inaccurate characterization in Paragraph 50 and deny any violation of, or liability under, the cited authorities.

51. Paragraph 51 purports to quote or characterize the FCC's "long-form application," the content of which speaks for itself. To the extent a response is required, Defendants deny any incomplete or inaccurate characterization in Paragraph 51.

52. Paragraph 52 purports to quote or characterize statutes, regulations, or legal standards. The cited authorities are the best evidence of their complete text and legal effect and speak for themselves, and no response is required to legal conclusions. To the extent a response is required, Defendants deny any incomplete or inaccurate characterization in Paragraph 52 and deny any violation of, or liability under, the cited authorities.

53. Paragraph 53 purports to quote or characterize statutes, regulations, or legal standards. The cited authorities are the best evidence of their complete text and legal effect and speak for themselves, and no response is required to legal conclusions. To the extent a response

is required, Defendants deny any incomplete or inaccurate characterization in Paragraph 53 and deny any violation of, or liability under, the cited authorities.

54. Paragraph 54 purports to characterize the FCC's internal decisional process. Defendants refer to the governing statutes, regulations, and public filings with the FCC, deny any incomplete or inaccurate characterization of the same in Paragraph 54, and deny that Defendants submitted false information to the FCC.

55. Paragraph 55 purports to quote or characterize statutes, regulations, or legal standards. The cited authorities are the best evidence of their complete text and legal effect and speak for themselves, and no response is required to legal conclusions. To the extent a response is required, Defendants deny any incomplete or inaccurate characterization in Paragraph 55 and deny any violation of, or liability under, the cited authorities.

56. Paragraph 56 purports to quote or characterize statutes, regulations, or legal standards. The cited authorities are the best evidence of their complete text and legal effect and speak for themselves, and no response is required to legal conclusions. To the extent a response is required, Defendants deny any incomplete or inaccurate characterization in Paragraph 56 and deny any violation of, or liability under, the cited authorities.

57. Paragraph 57 purports to quote or characterize statutes, regulations, or legal standards. The cited authorities are the best evidence of their complete text and legal effect and speak for themselves, and no response is required to legal conclusions. To the extent a response is required, Defendants deny any incomplete or inaccurate characterization in Paragraph 57 and deny any violation of, or liability under, the cited authorities.

58. Paragraph 58 purports to quote or characterize statutes, regulations, or legal standards. The cited authorities are the best evidence of their complete text and legal effect and

speak for themselves, and no response is required to legal conclusions. To the extent a response is required, Defendants deny any incomplete or inaccurate characterization in Paragraph 58 and deny any violation of, or liability under, the cited authorities.

59. Paragraph 59 purports to quote or characterize statutes, regulations, or legal standards. The cited authorities are the best evidence of their complete text and legal effect and speak for themselves, and no response is required to legal conclusions. To the extent a response is required, Defendants deny any incomplete or inaccurate characterization in Paragraph 59 and deny any violation of, or liability under, the cited authorities.

60. Paragraph 60 purports to quote or characterize statutes, regulations, or legal standards. The cited authorities are the best evidence of their complete text and legal effect and speak for themselves, and no response is required to legal conclusions. To the extent a response is required, Defendants deny any incomplete or inaccurate characterization in Paragraph 60 and deny any violation of, or liability under, the cited authorities.

61. Paragraph 61 purports to quote or characterize statutes, regulations, or legal standards. The cited authorities are the best evidence of their complete text and legal effect and speak for themselves, and no response is required to legal conclusions. To the extent a response is required, Defendants deny any incomplete or inaccurate characterization in Paragraph 61 and deny any violation of, or liability under, the cited authorities.

62. Defendants admit that the five-year unjust enrichment period applicable to Advantage’s licenses awarded in Auction 97 ended on July 5, 2021. The remainder of Paragraph 62 purports to characterize FCC regulations, which are the best evidence of their complete text and legal effect and speak for themselves, and no response is required to legal conclusions. To

the extent a response is required, Defendants deny any incomplete or inaccurate characterization in Paragraph 62 and deny any violation of, or liability under, the cited authorities.

63. Paragraph 63 purports to quote or characterize statutes, regulations, or legal standards. The cited authorities are the best evidence of their complete text and legal effect and speak for themselves, and no response is required to legal conclusions. To the extent a response is required, Defendants deny any incomplete or inaccurate characterization in Paragraph 63 and deny any violation of, or liability under, the cited authorities.

64. Paragraph 64 purports to quote or characterize statutes, regulations, or legal standards. The cited authorities are the best evidence of their complete text and legal effect and speak for themselves, and no response is required to legal conclusions. To the extent a response is required, Defendants deny any incomplete or inaccurate characterization in Paragraph 64 and deny any violation of, or liability under, the cited authorities.

65. Paragraph 65 purports to quote or characterize statutes, regulations, or legal standards. The cited authorities are the best evidence of their complete text and legal effect and speak for themselves, and no response is required to legal conclusions. To the extent a response is required, Defendants deny any incomplete or inaccurate characterization in Paragraph 65 and deny any violation of, or liability under, the cited authorities.

66. Admitted.

## V. FACTS

67. Defendants repeat and incorporate their responses to Paragraphs 1 through 66 as though fully set forth here.

68. Defendants admit that Allison DiNardo has been a shareholder of the general partner of Carroll Wireless, L.P., Barat Wireless, L.P., and King Street Wireless, L.P. (“King

Street"), and that these entities participated in FCC spectrum auctions as legitimate designated entities. Defendants deny all remaining allegations in Paragraph 68.

69. Defendants admit that King Street acquired 152 licenses in the 700 MHz band in FCC Auction 73 and lawfully received approximately $100.2 million in designated-entity bidding credits, and that the unjust-enrichment period ended in December 2014. Defendants deny all remaining allegations in Paragraph 69.

70. Denied.

71. Denied.

72. Denied.

73. Denied.

74. Defendants admit that FCC records reflect that, on May 19, 2014, the FCC announced Auction 97, involving 1,614 licenses in the 1695–1710 MHz, 1755–1780 MHz, and 2155–2180 MHz bands, which was scheduled to commence on November 13, 2014. The FCC rules governing AWS-3 license terms and performance requirements are the best evidence of their complete text and legal effect and speak for themselves, and no response is required to legal conclusions. To the extent a response is required, Defendants deny any incomplete or inaccurate characterization in Paragraph 74.

75. Denied.

76. Defendants deny that Advantage was formed to prevent FCC scrutiny or otherwise mislead the FCC, and deny that Vail was a "retired former telecommunications employee." Defendants otherwise admit the allegations in Paragraph 76.

77. Defendants admit that Advantage submitted an FCC Form 175 short-form application to participate in FCC Auction 97 as a very small business. Defendants refer to this

publicly filed application for a complete and accurate statement of its contents and deny the allegations in Paragraph 77 to the extent they are inconsistent with those filings. Defendants deny all remaining allegations in Paragraph 77.

78. Defendants admit that Advantage's short-form application indicated that Frequency Advantage, L.P., Sunshine Spectrum, Inc., and William Vail held the controlling general partner interests in Advantage. Defendants deny that there were any false or fraudulent certifications. Defendants refer to Advantage's application for a complete and accurate statement of its contents and deny the allegations in Paragraph 78 to the extent they are inconsistent with this publicly filed document. Defendants deny all remaining allegations in Paragraph 78.

79. Defendants admit that Advantage's ownership statement disclosed U.S. Cellular, USCC Wireless Investment, Inc., and Allison DiNardo as interest holders with indirect limited partner ownership in Advantage. Defendants deny that there were any false or fraudulent certifications. Defendants refer to the ownership statement for a complete and accurate statement of its contents and deny the allegations in Paragraph 79 to the extent they are inconsistent with this publicly filed document. Defendants deny all remaining allegations in Paragraph 79.

80. Defendants admit that Advantage's short-form application identified Frequency Advantage, L.P., Sunshine Spectrum, Inc., and the William S. Vail and Lorraine C. Vail Living Trust as affiliated entities. Defendants deny that there were any false or fraudulent certifications. Defendants refer to Advantage's application for a complete and accurate statement of its contents and deny the allegations in Paragraph 80 to the extent they are inconsistent with this publicly filed document. Defendants deny all remaining allegations in Paragraph 80.

81. Denied.

82. Denied.

83. Denied.

84. Defendants admit that USCC Wireless Investment, Inc., Frequency Advantage, L.P., and Advantage entered into a bidding protocol agreement regarding Auction 97, which was provided to the FCC as part of its publicly filed long-form Form 601 application. Defendants deny that there were any false or fraudulent certifications. Defendants otherwise refer to Advantage's application for a complete and accurate statement of its contents and deny the allegations in Paragraph 84 to the extent they are inconsistent with this publicly filed document. Defendants deny all remaining allegations in Paragraph 84.

85. Defendants aver that FCC records reflect that Auction 97 began on November 13, 2014, and closed on January 29, 2015, after 341 rounds.

86. Denied.

87. Defendants admit that the address set forth in Paragraph 87 was listed as Advantage's business address. Defendants lack knowledge or information sufficient to form a belief as to what Relators observed and, on that basis, deny all remaining allegations in Paragraph 87.

88. Defendants lack knowledge or information sufficient to form a belief as to what Relators observed or were told by a landlord and landlord's assistant and, on that basis, deny the allegations in Paragraph 88.

89. Defendants admit that, pursuant to an arrangement under the Frequency Advantage partnership agreement that was disclosed to the FCC, Advantage leased space in King Street's office at 526 King Street, Suite 209, Alexandria, Virginia, and conducted its Auction 97 bidding from that location. Defendants further admit that public records identified the King Street address for some entities owned by DiNardo that participated as very small businesses in

spectrum auctions. Defendants lack knowledge or information sufficient to form a belief as to Relators' alleged surveillance and, on that basis, deny that allegation. Defendants deny all remaining allegations in Paragraph 89.

90. Defendants admit that William Vail has experience in telecommunications, that Advantage worked with consultants to assist with Auction 97, and that William Vail had not previously participated in an FCC spectrum auction. Defendants deny all remaining allegations in Paragraph 90.

91. Defendants admit that Advantage's short-form application identified William Vail and Stephen Hinz as authorized bidders and that Stephen Hinz was a King Street employee. Defendants refer to Advantage's application for a complete and accurate statement of its contents and deny the allegations in Paragraph 91 to the extent they are inconsistent with this publicly filed document. Defendants deny all remaining allegations in Paragraph 91.

92. Defendants lack knowledge or information sufficient to form a belief as to what Relators observed or investigated and, on that basis, deny the allegations in Paragraph 92.

93. Paragraph 93 purports to quote or characterize Advantage's public filings with the FCC, which speak for themselves. Defendants refer to these filings for a complete and accurate statement of their contents and deny the allegations in Paragraph 93 to the extent they are inconsistent with these publicly filed documents. Defendants deny all remaining allegations in Paragraph 93.

94. Defendants admit that Advantage's licenses were in markets adjacent to or overlapping with U.S. Cellular service areas. Defendants deny all remaining allegations in Paragraph 94.

95. Defendants admit that Advantage was funded in part by U.S. Cellular and that, as FCC records reflect, Advantage was the winning bidder for 124 licenses in Auction 97, representing approximately 7.7% of the licenses available in the auction, with aggregate gross bids of $451,072,000, aggregate net bids of $338,304,000 after a 25% bidding credit, and bidding credits totaling $112,768,000. Defendants deny all remaining allegations in Paragraph 95.

96. Defendants admit that Advantage submitted a Form 601 long-form application in February 2015, refer to that publicly filed document for a complete and accurate statement of its contents, and deny all remaining allegations in Paragraph 96.

97. Defendants admit that Advantage's long-form application indicated that Advantage had not entered into any agreements impacting its Designated Entity status, refer to that publicly filed document for a complete and accurate statement of its contents, and deny all remaining allegations in Paragraph 97.

98. Defendants admit that Advantage's long-form application indicated that Advantage was eligible to obtain DE licenses as a very small business, refer to that publicly filed document for a complete and accurate statement of its contents, and deny all remaining allegations in Paragraph 98.

99. Defendants admit that Advantage's long-form application listed Advantage's controlling interests as Frequency, Sunshine Spectrum, Inc., and William Vail, refer to that publicly filed document for a complete and accurate statement of its contents, and deny all remaining allegations in Paragraph 99.

100. Defendants admit that Advantage's long-form application listed Advantage's affiliates, refer to that publicly filed document for a complete and accurate statement of its contents, and deny all remaining allegations in Paragraph 100.

101. Defendants admit that Advantage's long-form application disclosed the Bidding Protocol Agreement, refer to the publicly filed long-form application for a complete and accurate statement of its contents, and deny all remaining allegations in Paragraph 101.

102. Defendants admit that Advantage's long-form application contains the quoted language, refer to the publicly filed long-form application for a complete and accurate statement of its contents, and deny all remaining allegations in Paragraph 102.

103. Denied.

104. Paragraph 104 purports to characterize the requirements and contents of Advantage's long-form application, which was publicly filed with the FCC and speaks for itself. Defendants refer to this filing for a complete and accurate statement of its contents and deny the allegations in Paragraph 104 to the extent they are inconsistent with this publicly filed document. Defendants deny all remaining allegations in Paragraph 104.

105. Defendants admit that Allison DiNardo transferred her entire ownership interest in Nonesuch, Inc. to William Vail effective December 31, 2015 and deny all remaining allegations in Paragraph 105.

106. Defendants admit that William Vail filed certifications with the FCC in January 2016 and March 2016 containing the quoted language and deny all remaining allegations in Paragraph 106 and footnotes 2–4.

107. Defendants admit that the certification referenced in Paragraph 107 contains the quoted language but refer to this publicly filed document for a complete and accurate statement of its contents.

108. Denied.

109. Defendants admit that Advantage's long-form application contains the quoted language, refer to this publicly filed document for a complete and accurate statement of its contents, and deny all remaining allegations in Paragraph 109.

110. Denied.

111. Defendants admit that the FCC properly issued Advantage its licenses with bid credits on July 5, 2016, and that the unjust enrichment period ended on July 5, 2021. Defendants deny all remaining allegations in Paragraph 111.

112. Defendants admit that Advantage submitted a DE Annual Report in September 2016, which contains the quoted language, and refer to this publicly filed document for a complete and accurate statement of its contents. Defendants deny all remaining allegations in Paragraph 112.

113. Defendants admit that Advantage submitted a DE Annual Report in September 2017, which provided that it had not entered into agreements relating to its eligibility for DE benefits and reported that Nonesuch, Inc. and Frequency Advantage, L.P. were no longer in existence. Defendants refer to this publicly filed document for a complete and accurate statement of its contents. Defendants deny all remaining allegations in Paragraph 113.

114. Defendants admit that Advantage submitted a DE Annual Report in September 2018, which referred to its 2017 report and contains the quoted language. Defendants refer to this

publicly filed document for a complete and accurate statement of its contents. Defendants deny all remaining allegations in Paragraph 114.

115. Defendants admit that Advantage's report submitted in 2018 contains the quoted language, refer to this publicly filed document for a complete and accurate statement of its contents, and deny all remaining allegations in Paragraph 115.

116. Defendants admit that Advantage submitted a DE Annual Report in September 2019, whose text is substantially similar to that of the 2018 report. Defendants refer to this publicly filed document for a complete and accurate statement of its contents. Defendants deny all remaining allegations in Paragraph 116.

117. Defendants admit that Advantage submitted a DE Annual Report in September 2020, whose text is substantially similar to that of the 2018 and 2019 reports, and which contained the quoted language in a footnote. Defendants refer to this publicly filed document for a complete and accurate statement of its contents. Defendants deny all remaining allegations in Paragraph 117.

118. Defendants admit that Advantage won 124 licenses in Auction 97. Defendants deny that Advantage lacked the capability or intent to conduct its licensed business, deny that it failed to disclose any agreement required by FCC rules, and otherwise deny the allegations in Paragraph 118.

119. Defendants admit that Advantage had no formal management committee. Defendants deny all remaining allegations in Paragraph 119.

120. Defendants admit that the Florida addresses set forth in Paragraph 120 have been listed as Advantage's business addresses. Defendants deny all remaining allegations in Paragraph 120.

121. Defendants admit that Advantage's filings with the FCC have listed phone numbers associated with William Vail, the owner of the general partner of Advantage. Defendants deny all remaining allegations in Paragraph 121.

122. Defendants admit that Advantage controlled 124 spectrum licenses and at different times had different business addresses. Defendants deny all remaining allegations in Paragraph 122.

123. Paragraph 123 purports to characterize Advantage's obligations under FCC regulations, which are the best evidence of their complete text and legal effect and speak for themselves, and no response is required to legal conclusions. To the extent a response is required, Defendants admit that July 5, 2022, is one year after the expiration of Advantage's unjust enrichment period, and deny all remaining allegations in Paragraph 123.

124. Defendants admit that U.S. Cellular's wholly owned subsidiary USCC Services, LLC and Advantage entered into three Spectrum Manager Leases. Defendants deny all remaining allegations in Paragraph 124.

125. Defendants admit that Advantage sought approval of the leases beginning on July 9, 2020. To the extent Paragraph 125 purports to characterize Advantage's obligations under FCC regulations, which are the best evidence of their complete text and legal effect and speak for themselves, no response is required. To the extent a response is required, Defendants deny all remaining allegations in Paragraph 125.

126. Defendants admit that U.S. Cellular, through its wholly owned subsidiary USCC Services, LLC, and Advantage entered into a lease for 76 licenses that gave U.S. Cellular authority to use less than 50% of available spectrum in geographic areas with less than 50% of

each market's total population, resulting in a lease for less than 25% of the spectrum in each market. Defendants deny all remaining allegations in Paragraph 126.

127. Defendants admit that the lease notifications, which the FCC accepted, stated that Advantage would retain de jure and de facto control over the licenses during the term of the Spectrum Manager Lease, as defined in the Commission's Rules. Defendants deny all remaining allegations in Paragraph 127.

128. Defendants admit that Advantage certified that U.S. Cellular was not a controlling interest holder or affiliate of Advantage, deny that this certification was false or fraudulent, and refer to Advantage's public FCC filings for a complete and accurate statement of their contents. Defendants deny all remaining allegations in Paragraph 128.

129. Defendants admit that Advantage has filed construction notices that contain the quoted language. Defendants deny all remaining allegations in Paragraph 129.

130. Defendants admit that Advantage has filed construction notices that contain the quoted language. Defendants refer to their public FCC filings for a complete and accurate statement of their contents. Defendants deny all remaining allegations in Paragraph 130.

131. Defendants lack knowledge or information sufficient to form a belief as to the first four words of Paragraph 131. Defendants deny all remaining allegations in Paragraph 131.

132. To the extent Paragraph 132 contains conclusions of law, no response is required. To the extent Paragraph 132 contains factual allegations requiring a response, Defendants deny all allegations in Paragraph 132.

133. Denied.

134. Denied.

135. Denied.

136. Denied.

137. Denied.

## VI. COUNTS

138. Defendants admit that Relators purport to bring this action on behalf of the United States under the FCA. Defendants deny any violations of the FCA.

139. Defendants repeat and incorporate their responses to the preceding paragraphs of the Complaint as though fully set forth here.

140. Denied.

141. Defendants admit that the Bidding Protocol Agreement disclosed to the FCC prioritized markets adjacent to or overlapping with U.S. Cellular's service areas, that Advantage was formed to participate as a Designated Entity in Auction 97, that Nonesuch, Inc. held a 49% limited-partner interest in Frequency Advantage, and that DiNardo transferred her entire ownership interest in Nonesuch, Inc. to William Vail effective December 31, 2015. Defendants deny all remaining allegations in Paragraph 141.

142. Denied.

143. Denied.

144. Denied.

145. Denied.

146. Denied.

147. Defendants repeat and incorporate their responses to the preceding paragraphs of the Complaint as though fully set forth here.

148. Denied.

149. Defendants admit that Advantage received approximately $113 million in DE bidding credits. Defendants deny all remaining allegations in Paragraph 149.

150. Denied.

151. Defendants repeat and incorporate their responses to the preceding paragraphs of the Complaint as though fully set forth here.

152. Denied.

153. Denied.

154. Denied.

155. Defendants repeat and incorporate their responses to the preceding paragraphs of the Complaint as though fully set forth here.

156. Denied.

157. Denied.

## PRAYER FOR RELIEF

Defendants deny any and all factual allegations contained in Relators' prayer for relief, deny that Relators are entitled to any relief, and request that Relators take nothing in this suit and that this matter be dismissed with prejudice, with costs and fees awarded to Defendants.

## DEFENSES AND AFFIRMATIVE DEFENSES

Without waiving and hereby expressly reserving the right to assert any and all defenses based on discovery and factual developments, Defendants aver the following defenses and affirmative defenses to the claims asserted in the Complaint and do not concede that they have the burden of proof with respect to these defenses.

**FIRST DEFENSE**
**(NO FALSITY OR FRAUD)**

The challenged applications, certifications, reports, notices, records, and statements were true, accurate, and not fraudulent.

**SECOND DEFENSE**
**(COMPLIANCE WITH GOVERNING LAW & FCC REQUIREMENTS)**

Defendants complied with applicable statutes, FCC rules, authorizations, reporting obligations, and FCC-approved or FCC-filed arrangements.

**THIRD DEFENSE**
**(NO KNOWLEDGE OR SCIENTER)**

Defendants did not knowingly present or cause to be presented a false claim, knowingly use a false record or statement, act in deliberate ignorance or reckless disregard, or act with any intent to deceive the FCC or the United States.

**FOURTH DEFENSE**
**(NO MATERIALITY)**

Any alleged misstatement or omission was not material to the Government's payment or approval decision. The FCC's knowledge, review, licensing actions, and continued regulatory oversight, and the FCC's subsequent qualification and transaction determinations negate materiality.

**FIFTH DEFENSE**
**(NO PRESENTMENT, PAYMENT, OR CAUSATION)**

Relators cannot prove that any Defendant presented or caused the presentment of a false claim for payment or approval, that the United States paid money to a Defendant because of an alleged false claim, or that any alleged statement caused a cognizable Government loss.

**SIXTH DEFENSE**
**(NO REVERSE-FALSE-CLAIM OBLIGATION)**

No established and enforceable obligation to pay or transmit money or property to the Government existed as alleged, and no Defendant knowingly concealed, avoided, or decreased any such obligation.

**SEVENTH DEFENSE**
**(NO CONSPIRACY)**

No Defendant entered or joined any agreement to violate the FCA, and no Defendant knowingly committed an overt act in furtherance of an FCA conspiracy.

**EIGHTH DEFENSE**
**(GOVERNMENT & AGENCY KNOWLEDGE / GOOD-FAITH RELIANCE)**

Officials and other personnel at the FCC received and reviewed all relevant structures, ownership interests, agreements, financing, applications, reports, leases, construction filings, and wireless service operations in complete, accurate, and public filings submitted by Defendants. Defendants acted in good faith to comply with their subjective and objectively reasonable understanding of all applicable federal law, and reasonably relied on governing agreements, FCC rules, FCC filings, agency action, and other applicable federal law, which negates falsity, scienter, materiality, causation, damages, and penalties.

**NINTH DEFENSE**
**(PUBLIC DISCLOSURE BAR)**

Relators' claims are barred in whole or in part by 31 U.S.C. § 3730(e)(4), and Relators do not qualify as original sources. Defendants preserve appellate review of prior adverse rulings on these issues.

**TENTH DEFENSE**
**(SEPARATION OF POWERS)**

Relators' claims are barred as inconsistent with the U.S. Constitution, insofar as Relators purport to exercise significant executive authority pursuant to the laws of the United States without proper appointment and in violation of the Appointments Clause, Take Care Clause, and Vesting Clause of Article II. Defendants preserve all constitutional and statutory objections to this non-intervened qui tam action and preserve appellate review of prior adverse rulings on these issues.

**ELEVENTH DEFENSE**
**(STATUTES OF LIMITATIONS)**

The claims and requested relief are barred in whole or in part by the applicable statutes of limitations and any other governing temporal limitations.

**TWELFTH DEFENSE**
**(NO DAMAGES; OFFSET AND VALUE RECEIVED)**

The United States suffered no compensable loss. Any recovery must account for the licenses, spectrum deployment, services, regulatory compliance, payments made, value received by the Government and public, and all lawful offsets, credits, and limitations on duplicative recovery.

**THIRTEENTH DEFENSE**
**(CONSTITUTIONAL LIMITS ON PENALTIES)**

Any civil penalties must comply with the applicable statutory period, due process, proportionality principles, the Excessive Fines Clause, and prohibitions on duplicative or retroactive punishment.

**FOURTEENTH DEFENSE**
**(SEPARATE ENTITIES & INDIVIDUALIZED PROOF)**

Relators may not impose collective, alter-ego, agency, vicarious, or successor liability without proving the elements applicable to each Defendant. The separate legal status, conduct, knowledge, and role of each Defendant must be respected.

**FIFTEENTH DEFENSE**
**~~(UNCLEAN HANDS)~~**

~~Relators' claims against Defendants are barred by the defense of unclean hands to the extent Relators engaged in misconduct related to Auction 97, including in connection with their alleged investigation of Defendants.~~

**~~SIXTEENTH DEFENSE~~**
**(FAILURE TO STATE A CLAIM)**

Relators' claims are barred, in whole or in part, because Relators have failed to state a claim upon which relief can be granted.

Dated: ~~August 31~~November 3, 2026

Respectfully submitted,

/s/ *Frank R. Volpe*

Frank R. Volpe (D.C. Bar No. 458791)
Kwaku A. Akowuah (D.C. Bar No. 992575)
Victor T. Hiltner (D.C. Bar No. 90005590)
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, DC 20005
Telephone: 202-736-8000
Fax: 202-736-8711
fvolpe@sidley.com
kakowuah@sidley.com
vhiltner@sidley.com

Neil H. Conrad (*pro hac vice*)
Gina R. Bohannon (*pro hac vice*)
SIDLEY AUSTIN LLP
1 S. Dearborn Street
Chicago, IL 60603
Telephone: (312) 853-7000
Fax: (312) 853-7063
nconrad@sidley.com
gbohannon@sidley.com

*Counsel for Defendants U.S. Cellular Corp., USCC Wireless Investment, Inc., Telephone and Data Systems, Inc., King Street Wireless, L.P., King Street Wireless, Inc., Advantage Spectrum, L.P., Frequency Advantage, L.P., Sunshine Spectrum, Inc., and Nonesuch, Inc.*